**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:26-cv-20504-DAMIAN**

NALEXUS SHIELDS, on behalf of herself
and all others similarly situated,

        Plaintiffs,

    v.

ADTALEM GLOBAL EDUCATION INC.
and ADTALEM GLOBAL HEALTH, INC.
d/b/a AMERICAN UNIVERSITY OF THE
CARIBBEAN SCHOOL OF MEDICINE,

        Defendants.

**DEFENDANTS' MOTION TO DISMISS, INCORPORATED**
**MEMORANDUM OF LAW, AND REQUEST FOR HEARING**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

    A.    AUC Is A Medical School That Prepares Students For Success On Required Exams, Including The USMLE..............................................................2

    B.    AUC Is Transparent About, And Students Are Aware Of, The Comp Requirements And The USMLE Pass Rate Calculations .......................................3

    C.    Plaintiff Does Not Allege She Saw AUC's USMLE Step 1 Pass Rates Before Making The Decision To Enroll At AUC.....................................................5

    D.    Plaintiff Files Two Fraud-Based Claims Against Defendants After Failing The Comp.........................................................................................................5

LEGAL STANDARD.............................................................................................................6

ARGUMENT ........................................................................................................................7

I.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ..........................................................................7

    A.    Plaintiff's Claims Are Barred By The Statute Of Limitations................................7

    B.    The Complaint Fails To Satisfy Federal Rule Of Civil Procedure 9(b) ..................8

    C.    Plaintiff Fails To Allege Facts That Trigger The FDUTPA .................................12

    D.    Plaintiff's Complaint Fails To State A Claim Under The FDUTPA .....................14

    E.    The Complaint Fails To State A Claim For Unjust Enrichment............................20

    F.    Plaintiff's Claims Are Impermissible Claims Of Educational Malpractice..........21

CONCLUSION....................................................................................................................23

REQUEST FOR HEARING...................................................................................................23

i

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Am. Home Assur. Co. v. Weaver Aggregate Trans., Inc.*,
  773 F. Supp. 2d 1317 (M.D. Fla. 2011) .....................................................................................20

*Armstrong v. Data Processing Inst., Inc.*,
  509 So. 2d 1298 (Fla. Dist. Ct. App. 1987) ..............................................................................22

*Arndt v. Twenty-One Eighty-Five*,
  LLC, 448 F. Supp. 3d 1310 (S.D. Fla. 2020)............................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................................6

*Berenguer v. Warner-Lambert Co.*,
  2003 WL 24299241 (Fla. Cir. Ct. 13th Jud. Cir. Hillsborough Cnty. July 31,
  2003) .........................................................................................................................................18

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
  116 F.3d 1364 (11th Cir. 1997) ...........................................................................................8, 12

*Carrier v. Jordaan*,
  746 F. Supp. 2d 1341 (S.D. Ga. 2010).....................................................................................18

*Casey v. Fla. Coastal Sch. of L., Inc.*,
  2015 WL 10096084 (M.D. Fla. Aug. 11, 2015) ............................................................. *passim*

*City First Mortg. Corp. v. Barton*,
  988 So. 2d 82 (Fla. Dist. Ct. App. 2008) .................................................................................19

*Coastal Physician Servs. of Broward Cnty., Inc. v. Ortiz*,
  764 So. 2d 7 (Fla. Dist. Ct. App. 1999) ...................................................................................12

*Cooper Lighting, LLC v. Cordelia Lighting, Inc.*,
  2017 WL 11629195 (N.D. Ga. Nov. 13, 2017) ........................................................................14

*Davila v. Delta Air Lines, Inc.*,
  326 F.3d 1183 (11th Cir. 2003) ..................................................................................................7

*Doral Collision Ctr., Inc. v. Daimler Tr.*,
  341 So. 3d 424 (Fla. Dist. Ct. App. 2022) ...............................................................................20

*Five for Ent. S.A. v. Rodriguez*,
   877 F. Supp. 2d 1321 (S.D. Fla. 2012) ..............................................................6, 12, 13

*Hennegan Co. v. Arriola*,
   855 F. Supp. 2d 1354 (S.D. Fla. 2012) ...................................................................18, 19

*Hugh's Concrete & Masonry Co. v. Se. Pers. Leasing, Inc.*,
   2013 WL 5798638 (M.D. Fla. Oct. 28, 2013) .............................................................21

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
   603 F. Supp. 3d 1183 (S.D. Fla. 2022) ........................................................................12

*In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*,
   649 F. Supp. 3d 1245 (S.D. Fla. 2022) ...................................................................21, 22

*In re US Cap. Holdings, LLC*,
   2013 WL 5297352 (Bankr. S.D. Fla. Aug. 5, 2013)....................................................20

*In re Wright Med. Tech. Inc., Conserve Hip Implant Prods. Liability Litig.*,
   127 F. Supp. 3d 1306 (N.D. Ga. 2015)........................................................................13

*Inouye v. Adidas Am., Inc.*,
   2023 WL 2351654 (M.D. Fla. Mar. 3, 2023) ..............................................................18

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
   2021 WL 3666312 (S.D. Fla. Aug. 18, 2021).................................................... *passim*

*Koski v. Carrier Corp.*,
   347 F. Supp. 3d 1185 (S.D. Fla. 2017) .....................................................................7, 20

*Lewis v. Governor of Alabama*,
   944 F.3d 1287 (11th Cir. 2019) ......................................................................................3

*Marrache v. Bacardi U.S.A., Inc.*,
   17 F.4th 1084 (11th Cir. 2021) .....................................................................................19

*Matthews v. Am. Honda Motor Co.*,
   2012 WL 2520675 (S.D. Fla. June 6, 2012) ..................................................................7

*Millennium Commc'ns & Fulfillment, Inc., v. Off. of Att'y Gen., Dep't of Legal Affs., State of Fla.*,
   761 So. 2d 1256 (Fla. Dist. Ct. App. 2000) ...................................................14, 15, 17

*Next Century Commc'ns Corp. v. Ellis*,
   318 F.3d 1023 (11th Cir. 2003) ....................................................................................10

*Oce Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*,
   760 So. 2d 1037 (Fla. Dist. Ct. App. 2000) .................................................................12

iii

*Parziale v. HP, Inc.*,
　445 F. Supp. 3d 435 (N.D. Cal. 2020) ................................................................16, 17

*Pop v. LuliFama.com LLC*,
　145 F.4th 1285 (11th Cir. 2025) ...................................................................... *passim*

*Pop v. LuliFama.com LLC*,
　2024 WL 1194485 (M.D. Fla. Mar. 20, 2024) ................................................20, 21

*Priority Healthcare Corp. v. Surajit Chaudhuri, M.D., P.A.*,
　2008 WL 4459041 (M.D. Fla. Oct. 1, 2008) ...........................................................21

*Prohias v. Pfizer, Inc.*,
　485 F. Supp. 2d 1329 (S.D. Fla. 2007) ...................................................................21

*Sanchez v. Team Health, LLC*,
　2020 WL 12188439 (S.D. Fla. May 18, 2020) ....................................................8, 12

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*,
　2014 WL 1745050 (S.D. Fla. Apr. 30, 2014) ............................................................7

*Sweeney v. Kimberly-Clark Corp.*,
　2016 WL 727173 (M.D. Fla. Feb. 22, 2016) ...........................................................20

*Trump v. Clinton*,
　161 F.4th 671 (11th Cir. 2025) ..................................................................................7

*Tubell v. Dade Cty. Pub. Sch.*,
　419 So. 2d 388 (Fla. Dist. Ct. App. 1982) ..............................................................21

*Vallina v. Mansiana Ocean Residences LLC*,
　2011 WL 11674441 (S.D. Fla. June 17, 2011) ........................................................11

*Zhang v. Emory Univ.*,
　2025 WL 1482873 (11th Cir. May 23, 2025) ............................................................3

*Ziemba v. Cascade Int'l, Inc.*,
　256 F.3d 1194 (11th Cir. 2001) ..................................................................................8

**STATUTES**

Fla. Stat.
　§ 95.11.........................................................................................................................7
　§ 501.211(2)...............................................................................................................18
　§ 501.2105..................................................................................................................23

## RULES

Fed. R. Civ. P. 9(b) ............................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6).............................................................................................6, 7

Defendants Covista Inc., formerly known as Adtalem Global Education Inc.,[1] and Covista Global Health, Inc., formerly known as Adtalem Global Health, Inc.,[2] d/b/a American University of The Caribbean School of Medicine ("AUC") (together, "Defendants") submit this motion to dismiss Plaintiff Nalexus Shields' Complaint.

## INTRODUCTION

Plaintiff's case is built on a single, faulty premise: that AUC deceived students by publishing exam-pass rates that overstated the number of students who passed a particular exam. The Complaint must be dismissed for several reasons, but the simplest is that Defendants not only published the correct pass rates, but also published the methodology used to calculate those rates. In other words, there was no deception, and Plaintiff's entire case falls away.

The Complaint must be dismissed for at least six reasons. First, both of Plaintiff's claims are barred by the statute of limitations.

Second, Plaintiff fails to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, which applies because both of Plaintiff's claims sound in fraud. Rule 9(b) requires the who, what, when, where, and how of the alleged fraud. But the Complaint never identifies when or where Plaintiff saw any allegedly misleading statement, or how they caused her to enroll. The Complaint does not even allege that Plaintiff *saw any of the challenged marketing materials* before enrolling at AUC. Rule 9(b) requires dismissal.

Third, Plaintiff does not plead facts supporting the notion that the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA") applies to her claims. Plaintiff is a Texas resident who enrolled in a medical school in Sint Maarten. One defendant (Covista) is a Delaware corporation with its principal place of business in Illinois, and the other (AUC) is a medical school in Sint Maarten. Plaintiff does not allege sufficient facts to plead that the offending conduct took place predominantly or entirely in Florida. The Court need not go further.

---

[1] On February 5, 2026, Adtalem Global Education Inc. changed its name to "Covista Inc." *See* Covista Inc., Form 8-K (filed Feb. 5, 2026), https://www.sec.gov/Archives/edgar/data/730464/000110465926011611/atge-20260205x8k.htm.

[2] On February 18, 2026, Adtalem Global Health, Inc. filed a certificate of amendment to change its name to "Covista Global Health." *See* New York Department of State Division of Corporations, Covista Global Health, Inc. Name History (last visited Feb. 18, 2026), https://apps.dos.ny.gov/publicInquiry/NameHistory.

Even assuming *arguendo* the FDUTPA applied, Plaintiff fails to allege a deceptive or unfair trade practice. No reasonable consumer—certainly not a college graduate exploring medical schools—could be misled by AUC's pass rates as put forth by the Complaint. Likewise, Plaintiff fails to plead causation or actual damages under the FDUTPA. She does not allege she ever saw the challenged statements, what she would have done differently without them, what school she would have attended instead, or how any of her harm traces directly to Defendants. Nowhere in the Complaint does she allege that she was unaware of the curriculum's requirements before enrollment. That is fatal under the FDUTPA.

Next, Plaintiff fails to plead an unjust enrichment claim. To start, the claim is a carbon copy of her FDUTPA claim, which requires dismissal under Florida law. Moreover, Plaintiff offers no allegations supporting any inequity given the circumstances, providing an independent basis to dismiss the claim.

Finally, Florida's educational malpractice doctrine bars both of Plaintiff's claims. At bottom, both claims turn on Plaintiff's apparent belief that her education was worth less than what she paid. But Florida courts have repeatedly refused to sit in judgment over the quality or value of educational services.

Plaintiff's Complaint is legally deficient many times over. It should be dismissed with prejudice.

## BACKGROUND

### A.    AUC Is A Medical School That Prepares Students For Success On Required Exams, Including The USMLE

AUC provides a four-year medical doctoral program in the heart of the island of Sint Maarten. Compl. ¶¶ 22, 26. Through courses in Sint Maarten, followed by clinical rotations at teaching hospitals abroad, AUC offers comprehensive medical training designed to prepare aspiring physicians for practice in the United States, Canada, and beyond. Compl. ¶¶ 26–27. This training prepares AUC students for licensing examinations that are required to obtain a medical license in the United States. Compl. ¶¶ 5, 24, 26–27.

AUC's curriculum essentially proceeds in two parts. The first two years consist of five semesters of basic medical sciences coursework traditionally conducted in Sint Maarten. Compl. ¶¶ 25–27. Students then take the first USMLE exam, called USMLE Step 1, which graduates must pass to qualify to practice in the United States. Compl. ¶¶ 24–27. After passing USMLE Step 1,

students move on to the clinical portion of the program, which includes five semesters at affiliated hospitals internationally, including in the United States.  Compl. ¶¶ 5, 24–27.  This clinical portion culminates in students taking the required USMLE Step 2 exam.  *Id.*

AUC's curriculum is designed to prepare students for the USMLE exams.  Compl. ¶¶ 35, 37.  The curriculum involves benchmark tests that students must pass to prepare for and progress to the USMLE exams, including a standard, comprehensive basic medical sciences exam called the Comprehensive Exam—known commonly as the "Comp."  Compl. ¶¶ 39, 48.  Passing the Comp is required before students take USMLE Step 1.  *Id.*  Students who do not pass the Comp may repeat courses and retake the Comp exam.  Compl. ¶¶ 49, 52.  Historically, anywhere from 92–96% of AUC's medical students who complete the curriculum requirements and sit for the USMLE Step 1 exam have passed it.  Compl. ¶¶ 36–40.

> **B.      AUC Is Transparent About, And Students Are Aware Of, The Comp Requirements And The USMLE Pass Rate Calculations**

AUC makes it clear that students must pass these AUC curriculum requirements, including the Comp exam, and is clear about the requirements to sit for USMLE Step 1.  *See, e.g.*, Compl. ¶ 39 (AUC explaining "[i]n order to sit for the USMLE Step 1 exam students must successfully complete the Medical Sciences curriculum").  For instance, the Student Handbook[3] specifies that the Medical Sciences Curriculum, "[i]ncludes [the] National Board of Medical Examiners (NBME) Subject and **Comprehensive** Exams."  *See* Ex. A, American University of the Caribbean

---

[3] AUC's Student Handbook is incorporated into the Complaint by reference as the Complaint includes quotes and screenshots from the Student Handbook.  *See* Ex. A; Compl. ¶ 50; *see Lewis v. Governor of Alabama*, 944 F.3d 1287, 1298 n.7 (11th Cir. 2019) ( "[W]hen a complaint quotes part of a document . . . the full text is 'incorporated into the amended complaint by reference' and is thus properly considered in deciding a Rule 12 motion."); *Zhang v. Emory Univ.*, 2025 WL 1482873, at *6 (11th Cir. May 23, 2025) ("[W]hen a party has introduced part of a writing, an adverse party may require the introduction of any other part which ought in fairness to be considered contemporaneously" and holding that "because the partial quote of the email exchange was in the amended complaint" and the whole exchange "was central to the appellants' claims, the district court permissibly considered the full email exchange" as is "consistent with the common law rule of completeness . . . .") (citation omitted).  While the Complaint does not specify which edition of the AUC Student Handbook is cited, the January 2020 Handbook was in effect when Plaintiff enrolled and matches the portion quoted in the Complaint.  *See* Ex. A at 79 and Compl. ¶¶ 50, 52.

3

School of Medicine, AUC Course Catalog and Student Handbook (Jan. 2020) (hereinafter "AUC Handbook" or "Student Handbook") at 37–38, 70 (emphasis added).

As detailed in the Student Handbook, the fifth semester of the Medical Sciences curriculum (the first half of the program) includes a required course, Introduction to Clinical Medicine VI ("ICM VI"). *See* Ex. A at 37. The Student Handbook explains that as part of the ICM VI course, which is designed to prepare students for the USMLE Step 1, students will take "two NBME Comprehensive Basic Science Exams (i.e., Comp 1 and Comp 2)." *Id.* at 45–46.

The ICM VI course's use of the Comp is critical for preparing students to succeed on the USMLE Step 1 exam, as the school warns students that "multiple attempts on any USMLE examination may have long-term consequences with respect to eligibility for licensure in certain states as many state medical licensing authorities limit the number of attempts allowed to pass each USMLE." *See* Ex. A at 105. Thus, AUC is explicit that students must complete the Medical Sciences Curriculum, including the Comp, to qualify to sit for the USMLE Step 1 exam. *Id.* at 37–38, 70, 112.[4] There is also a Comp exam required before students take the USMLE Step 2 exam. The Student Handbook continues that "[a]ll students are required to both *take and pass* the NBME Clinical Comprehensive Examination ('the COMP') before taking the USMLE Step 2 Clinical Knowledge (CK) examination." *Id.* at 73.

AUC's marketing statements also describe in detail the USMLE Step 1 pass rate. *See, e.g.*, Compl. ¶ 39. AUC explained, "[i]n order to sit for the USMLE Step 1 exam students must successfully complete the Medical Sciences Curriculum." *Id*. The Medical Sciences Curriculum includes taking and passing Comp. *See supra* at 3–4. Moreover, the same description specifies that AUC's USMLE Step 1 pass rate is calculated by dividing the "number of students passing the USMLE Step 1 exam on the[ir] first attempt [by] the number of students whose first attempt was [during the measured period]." *Id*. In other words, AUC described the exact methodology for calculating the statistic that Plaintiff claims were somehow misleading. *Id*.

---

[4] While the Complaint cherry-picks one paragraph on page 79 of the Student Handbook, *see* Compl. ¶ 50, Plaintiff ignores that elsewhere the Student Handbook explains, "[i]n addition to the requirements for ECFMG certification, . . . to take the USMLE Step 1 [] a student must complete the Medical Sciences portion of the curriculum [which includes the Comp exam] with an AUC cumulative GPA greater than or equal to 70 percent. All students are required to pass the USMLE Step 1 before proceeding to clinical rotations." *See* Ex. A at 70.

4

C.      **Plaintiff Does Not Allege She Saw AUC's USMLE Step 1 Pass Rates Before Making The Decision To Enroll At AUC**

Plaintiff Nalexus Shields "is [a] resident of Lubbock, Texas, currently residing in Marseille, France." Compl. ¶ 12. She enrolled at AUC in January 2020. Compl. ¶ 52. Notably absent from the Complaint is any indication of why she enrolled at AUC, what she saw about AUC before enrolling, what she knew about the school before enrolling, or what representations made by AUC (if any) caused her to enroll at AUC, as opposed to another school. She does not allege:

- That she saw any representation about AUC's USMLE Step 1 pass rate before enrolling at AUC;
- That she spoke with anyone at AUC about the USMLE Step 1 pass rate statistic;
- That she went to the website and saw a statement about the USMLE Step 1 pass rate;
- That she reviewed a Student Handbook that had the USMLE pass rate statistic;
- That she saw any social media post on any social media platform about the pass rate;
- That any source of information led her to believe every student who enrolls actually qualifies to take the USMLE Step 1 or that there were no curriculum requirements a student had to complete in order to take the exam;
- When she first learned about AUC's curriculum and exam requirements;
- What she would have done differently had it not been for the alleged existence of AUC marketing materials; or
- Any other comparator school she would have attended instead.

Nor does Plaintiff allege that once she learned about the requirements to take the USMLE Step 1 exam (assuming such discovery indeed took place after she enrolled) that she wanted to leave AUC. In fact, one of the few facts she does allege about herself is that she took the Comp exam in Fall 2022, failed, and repeated her courses so that she could take the Comp exam again and sit for the USMLE Step 1 exam. Compl. ¶ 52.

D.      **Plaintiff Files Two Fraud-Based Claims Against Defendants After Failing The Comp**

Plaintiff brought this purported class action against Covista Inc., a Delaware corporation headquartered in Chicago, Illinois, and Covista Global Health, Inc., a New York corporation with office space in Florida. Compl. ¶¶ 13–16. Plaintiff broadly asserts that Defendants "operate" and

5

exercise "control over AUC" through unidentified executives and employees, without any particulars alleging any individuals, communications, or conduct in Florida connected to Plaintiff's claims.  Compl. ¶¶ 2, 33, 51.[5]

Plaintiff also seeks to represent a putative class involving *eight years* of students who enrolled at AUC and did not pass the Comp on their first try.  Compl. ¶ 56.  This class definition captures, among other things, every student who did not pass a curriculum's exam on the first attempt, regardless of whether the student: (1) eventually passed the Comp on a subsequent attempt and then passed the USMLE; (2) understood the Comp requirements at the time they enrolled; or (3) failed the Comp or USMLE for a myriad of highly individualized reasons, such as illness or personal circumstances.  *Id.*

Plaintiff also relies on a series of selectively chosen, alleged statements from purported marketing materials, student handbooks, online postings, and acceptance materials.  Compl. ¶¶ 35–40, 50.  Plaintiff does not identify where many of these statements were published, when they were circulated, what manner they were made, or any detail regarding whether any plaintiff actually saw such statements before enrolling.

## LEGAL STANDARD

Federal Rule 12(b)(6) requires dismissal of an action where, as here, the Complaint does not contain allegations sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[6] While a court must accept as true the factual allegations contained in the complaint, the allegations must rise above "the speculative level" and a court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Twombly*, 550 U.S. at 555–56; *Iqbal*, 556 U.S. at 678.  A complaint is too speculative where there is an "obvious alternative explanation" for the factual allegations.  *Iqbal*, 556 U.S. at 682.  "[C]onclusory

---

[5] As to Plaintiff's allegations of conduct that have no connection to Florida, those would not state a claim under the FDUTPA.  *See Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012) ("the Court shares the Defendants' concern that the Complaint does not contain sufficient specificity for the location of the conduct giving rise to the FDUTPA claim.  FDUTPA applies only to actions that occurred within the state of Florida.") (citations omitted).

[6] In a case filed as a class action, a court may rule on a Rule 12(b)(6) motion to dismiss before deciding class certification.  *Casey v. Fla. Coastal Sch. of L., Inc.*, 2015 WL 10096084, at *8 (M.D. Fla. Aug. 11, 2015).

allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Moreover, cases that sound in fraud have a heightened pleading standard and must allege the "who, what, when[,] where, and how of the fraudulent conduct" to survive dismissal. *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293–94, 1296 (11th Cir. 2025).

## ARGUMENT

I. **PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Both of Plaintiff's claims can be independently dismissed for the reasons below.

### A. Plaintiff's Claims Are Barred By The Statute Of Limitations

On the face of the Complaint, the claims are barred by the statute of limitations. Dismissal under Rule 12(b)(6) is appropriate if it is apparent from the face of the complaint that the claim is time-barred. *Trump v. Clinton*, 161 F.4th 671, 684 (11th Cir. 2025). A claim under the FDUTPA and a claim of unjust enrichment are both governed by a four-year statute of limitations. Fla. Stat. § 95.11; *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014) (FDUTPA); *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1195 (S.D. Fla. 2017) (unjust enrichment). A claim accrues under the FDUTPA when a plaintiff purchases a product—here, when Plaintiff enrolled at AUC. *Speier-Roche*, 2014 WL 1745050, at *6 (FDUTPA claim time-barred because claim accrued at time of purchase of the product); *Koski*, 347 F. Supp. 3d at 1192, 1195 (FDUTPA and unjust enrichment claims time-barred and noting the "statute of limitations accrues at the time the product at issue is purchased"); *Matthews v. Am. Honda Motor Co.*, 2012 WL 2520675, at *4 (S.D. Fla. June 6, 2012) ("[U]nder FDUTPA, Plaintiffs suffered damages when they purchased something that was not what they were led to believe they were purchasing. Therefore, Plaintiffs' FDUTPA claim accrued when they purchased the [product], not when they discovered that the [product] was unusable.") (citation omitted). To the extent that the FDUTPA and unjust enrichment claims of Plaintiff, or any members of the proposed class, arose before January 26, 2022, those claims are barred by the statute of limitations. Compl. ¶ 52. Plaintiff's claims are barred because the Complaint alleges she enrolled at AUC in January 2020—two years before the limitations period. *Id.*

### B.       The Complaint Fails To Satisfy Federal Rule Of Civil Procedure 9(b)

Claims that sound in fraud, whether rooted in common law or statute, implicate the heightened pleading standard of Rule 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Pop*, 145 F.4th at 1293–94, 1296; *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at *7–8 (S.D. Fla. Aug. 18, 2021); *Sanchez v. Team Health, LLC*, 2020 WL 12188439, at *2 (S.D. Fla. May 18, 2020). Courts apply Rule 9(b) to FDUTPA claims and unjust enrichment claims. *Pop*, 145 F.4th at 1293–94; *Jackson*, 2021 WL 3666312, at *7–8. While there is no "all-embracing" definition of fraud, "the basic conduct that common law fraud targets is misrepresenting or concealing material facts." *Pop*, 145 F.4th at 1294–95 (internal quotations and citations omitted).

Rule 9(b)'s particularity requirement is critical in cases such as this, because it "alert[s] defendants to the precise misconduct with which they are charged." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotations and citation omitted). As such, Rule 9(b) is also not satisfied where the complaint lumps defendants together without particularity. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997); *Sanchez*, 2020 WL 12188439, at *3.

Rule 9(b) is satisfied only if "the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba*, 256 F.3d at 1202 (internal quotations and citations omitted). In short, "Rule 9(b) requires the plaintiff to allege the who, what, when[,] where, and how of the fraudulent conduct." *Pop*, 145 F.4th at 1296 (internal quotations and citations omitted).

Here, Rule 9(b) applies to Plaintiff's claims because both sound in fraud. At bottom, the wrongful conduct Plaintiff complains of is that Defendants allegedly fraudulently misrepresented its USMLE pass rates in order to induce prospective students to enroll at AUC. *See, e.g.*, Compl. ¶¶ 4–5, 9, 11, 46. These allegations form the basis for both of Plaintiff's claims and clearly sound in fraud. *See, e.g.*, Compl. ¶¶ 4 ("Defendants *induced students* to enroll at AUC with *false assurances of success* by advertising *inflated and misleading outcomes* that were calculated by

8

excluding large numbers of unsuccessful students") (emphasis added); 5 ("Defendants have and continue to lure potential students with *false assurances* of passing the United States Medical Licensing Examination") (emphasis added); 9 ("By *concealing* the fact that their USMLE calculation excludes the many students who do not take the exam, Defendants *deceive prospective students* about the absolute and relative (as compared to U.S. institutions) quality and value of AUC's education") (emphasis added); 11, 46, 68, 73 (similarly sounding in fraud based on allegations of failure to disclose, concealment, misrepresentations or deception).

Courts routinely apply Rule 9(b) to FDUTPA and unjust enrichment claims. For example, in *Pop*, the Eleventh Circuit applied Rule 9(b) where a plaintiff alleged that he purchased swimwear after seeing various social media influencers wearing the swimwear on social media when it was not disclosed that the influencers were paid for the endorsements. *Pop*, 145 F.4th at 1288. The allegations in *Pop* sounded in fraud because plaintiff alleged a deceptive misrepresentation by omission. *Id.* at 1295. The court affirmed the dismissal of the FDUTPA claim under Rule 9(b) because, although the plaintiff had alleged to be following the influencers on social media and that he "believed" the influencers' "honest advice" about the products, "the complaint did not specify many details, including which defendants' posts [plaintiff] saw, when he saw those posts, which products the defendants were promoting, or exactly how the defendants were promoting the products." *Id.* at 1290. Fatal to the complaint under Rule 9(b) was that plaintiff "did not identify a single Instagram post that he or any putative class members saw and relied on," nor if he saw the posts before purchasing the products or how the posts caused him to purchase the products at issue. *Id.* at 1296–97.

As to unjust enrichment, *Jackson* is instructive. There, the court dismissed a FDUTPA claim and an unjust enrichment claim that alleged defendants misrepresented the authenticity and ownership of a beer in advertisements in order to deceive consumers. *Jackson*, 2021 WL 3666312, at *1–2, 6–8, 20. When dismissing the claims, the court noted that although a complaint alleges "facts as to the substance of Defendants' alleged misrepresentations and concealments" that is not enough to pass muster under Rule 9(b) when the complaint "fails to allege with specificity the time at which they occurred" and fails to state "when Plaintiff viewed the alleged misrepresentations on Defendants' website, or even whether it—or any other consumer—viewed them at all before purchasing the allegedly defective products." *Id.* at *13 (citation omitted). Here, as Plaintiff's allegations about Defendants' statements regarding the USMLE sound in fraud due to allegations

of deceptive misrepresentations in advertising, Plaintiff's Complaint is subject to Rule 9(b)'s heightened pleading standard and Plaintiff must allege the who, what, when, where, and how of the fraudulent conduct to survive dismissal of both claims.

The Complaint here suffers the same flaws as in *Pop* and *Jackson*. First, it does not state with particularity: (1) where or when the alleged fraudulent statements were made; (2) who received, viewed, or heard the statements (let alone any details regarding where and when the information was received); (3) what other information was included with the statements; (4) how the statements misled Plaintiff; (5) what Plaintiff would have done differently if not for the advertising; or (6) what the Defendants obtained as a result of the statements that they would have not otherwise obtained. The core of the allegations appears in paragraph 37 of the Complaint. There, Plaintiff lists various alleged statements made by AUC that—besides being true statements about the school's caliber—are non-quantifiable, and non-actionable,[7] such as AUC is a "top international medical school," has "expert faculty," "AUC curriculum is designed to prepare students to succeed on important exams" and offers a "rigorous academic experience designed to prepare students to succeed," along with some pass rate statistics that AUC allegedly stated at some unalleged date, in some unalleged publication(s), and without any allegations of anybody actually seeing the statements, who saw the statements, when the statements were seen, if anyone saw them before enrolling, or how the statements impacted any individual. *See e.g.*, Compl. ¶ 37 ("'In 2017, 96% of AUC students passed Step 1 of the USMLE on first attempt' and the '5 year cumulative first-time pass rate of USMLE Step 1 is 94%'"; "'In 2018, 94.63% of AUC students passed Step 1 of the USMLE on the first attempt' and the '5 year cumulative first-time pass rate for USMLE Step 1 exam is 93.2%'" ); *id.* (similar statistics for the years 2019-2023). The same *Jackson* court admonition applies here: while Plaintiff may have alleged generally the substance of alleged fraudulent statements, that is insufficient under Rule 9(b) when Plaintiff does not say when they occurred, when Plaintiff viewed them, or whether indeed anyone actually viewed them before enrolling. The remaining allegations fare no better. To start, the same lack of specificity plagues the non-specific AUC "marketing brochure" in paragraph 39. Compl. ¶ 39. Paragraphs 38, 40, and 50 do at least identify purported sources for the pass rate statements, listing an AUC

---

[7] *See Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1028 (11th Cir. 2003) ("strong" performance was not actionable because it was "not the sort of empirically verifiable statement that can be affirmatively disproven").

"2020-2021 Acceptance Packet," a 2021 AUC Marketing Brochure, and the "Student Handbook" (though notably not which version), but these statements are similarly deficient under 9(b) in the rest of the ways, including critically by failing to allege that anyone actually saw these statements before enrolling. Compl. ¶¶ 38, 40, 50.

Importantly, the Complaint lacks allegations regarding the individualized reasons Plaintiff chose to enroll in AUC and to remain enrolled, her performance at the school, her knowledge of the facts involving the USMLE or the marketing materials, her knowledge of AUC's curriculum or medical school curriculum generally, her individual efforts regarding the Comp or USMLE exams, what she would have done differently if not for the alleged fraudulent marketing, nor how she was damaged directly by Defendants.[8] *See supra* at 5. Most egregiously, the Complaint does not allege that Plaintiff *even viewed any of the alleged misleading materials at issue*. Notably, the detail involving the Plaintiff makes up a single paragraph, and is divorced from any detail regarding the alleged fraudulent marketing statements or their impact on Ms. Shields. Compl. ¶ 52 (alleging only that "Ms. Shields enrolled at AUC in January 2020. She took the Comp exam in Fall 2022, but was unable to pass. As a result, AUC forced her to repeat (and pay for) her Fall 2022 classes during the January 2023 semester before she could take the Comp exam again and sit for the USMLE Step 1."). Nowhere does Plaintiff allege she viewed any of Defendants' allegedly misleading marketing, nor that she did not know about AUC's curriculum requirements— including Comp—before enrollment. These allegations do not meet Rule 9(b)'s heightened pleading standard. For those reasons alone, Plaintiff's Complaint should be dismissed. *See e.g.*, *Pop*, 145 F.4th at 1297; *Jackson*, 2021 WL 3666312, at *13, *20; *Vallina v. Mansiana Ocean Residences LLC*, 2011 WL 11674441, at *8, *10 n.9 (S.D. Fla. June 17, 2011) (dismissing fraud claims under Rule 9(b) when a named plaintiff fell short of the specificity standard and stating "[i]t is well-settled that when a claim fails, the class, as it relates to the claim, also fails").

As to Covista Inc., formerly known as Adtalem Global Education Inc. ("AGE"), the allegations are even more deficient under Rule 9(b). Plaintiff's pleading lacks specific information of then-AGE's involvement in any specific alleged misrepresentations—a fatal flaw under Rule 9(b). The Complaint alleges generically that AGE "know[s] that most of the students who enroll

---

[8] As to the proposed class, such allegations would highlight the individualized nature of every student's unique academic experience, and the consequent futility of a motion for class certification in this case.

will not make it through even the first half of the USMLE and even those who do will only do so after paying for repeat courses," "AGE exercises control over AUC through its senior executives and employees and provides administrative assistance and oversight. Employees for AUC often perform tasks for both AGE's AUC and Ross University," "AUC orchestrated a false marketing scheme to induce students—including Plaintiff and the members of the Class—to enroll in AUC's M.D. program, which is controlled by AGE" and that "AGE exploits control over AUC to orchestrate and profit from this deceptive scheme against medical doctorate students. Many of the employees who market to prospective AUC students also handle tasks for AGE's Ross University." Compl. ¶¶ 11, 33–34, 51. None of these allegations specify what AGE supposedly did (let alone when) in connection with any of the allegedly deceptive statements raised in the Complaint. That conclusory pleading approach does not meet Rule 9(b)'s exacting standard. *See Brooks*, 116 F.3d at 1381; *Sanchez*, 2020 WL 12188439, at \*3. Covista Inc. should be dismissed.

## C.     Plaintiff Fails To Allege Facts That Trigger The FDUTPA

The sparse, non-specific allegations in the Complaint create another fatal flaw for Plaintiff: Plaintiff fails to allege Florida-specific facts that support the notion that the FDUTPA applies. Florida state courts have found that the FDUTPA does *not apply to non-Florida residents*, as other states can protect their own citizen consumers. *Oce Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*, 760 So. 2d 1037, 1042 (Fla. Dist. Ct. App. 2000) ("Other states can protect their own residents . . . only in-state consumers can pursue a valid claim under the Unfair Trade Act."); *Coastal Physician Servs. of Broward Cnty., Inc. v. Ortiz*, 764 So. 2d 7, 8 (Fla. Dist. Ct. App. 1999) (similar). While it is unclear where Plaintiff actually claims residence, as she alleges she is a "resident of Lubbock, Texas, currently residing in Marseille, France", Compl. ¶ 12, what is clear is that *she is not a resident of Florida*. The FDUTPA should not apply to her, whether she lives in Texas or France.

Some federal courts applying the FDUTPA have applied the statute to non-Florida residents, but only where the alleged misconduct occurred within Florida. *See Five for Ent. S.A.*, 877 F. Supp. 2d at 1330 ("FDUTPA applies only to actions that occurred within the state of Florida"); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1212 (S.D. Fla. 2022) ("FDUTPA applies to non-Florida residents if the offending conduct took place predominantly or entirely in Florida"). Here, Plaintiff alleges no facts to suggest the

12

complained-of conduct occurred in Florida, let alone occurred predominantly or entirely in Florida. Indeed, the school at issue here is not even located in the United States—it is located in Sint Maarten.  Compl. ¶ 26.

What is left, then, is who made the marketing statements and where the alleged marketing statements were made.  As to Covista Inc., none of the allegations specify any supposed conduct by Covista related to any alleged marketing statement.  *See supra* at 11–12.  But what Plaintiff does allege in no uncertain terms is that Covista *is not located in Florida either*—it is alleged to be based in Illinois.  Compl. ¶ 13.  As alleged, then, there are insufficient facts to give rise to a FDUTPA claim against an Illinois defendant, when there is a non-Florida Plaintiff.  *See Five for Ent. S.A.*, 877 F. Supp. 2d at 1331 (dismissing a FDUTPA claim when the location where the statements at issue were made was not pled).  For that additional reason, the FDUTPA claim should be dismissed as to Covista.  As to AUC, the Complaint's allegations about the Florida connection to AUC are tenuous at best.  The school is located in Sint Maarten, Compl. ¶ 26, on a "nine-acre campus" that "includes 240,000 square feet of academic, student-life, and student residence facilities."  *See* Adtalem Global Education, Inc. Form 10-K for Fiscal Year Ended June 30, 2025, https://www.sec.gov/ix?doc=/Archives/edgar/data/0000730464/000155837025010780/atge-20250630x10k.htm.[9]  Meanwhile, AUC's primary operations and objectives are simply "supported by administrative staff located in office space in Miramar, Florida."  *Id.*  While the Complaint does allege in conclusory, unsupported allegations that AUC made certain statements, *see supra* at 3–4, 10–11, and also alleges in a conclusory manner that AUC has "principal offices in Coral Gables and Miramar, Florida"[10] and Defendants "operate" AUC from "their offices in the Southern District of Florida", Compl. ¶¶ 2, 16, the Complaint does not allege that any statement

---

[9] The Court may take judicial notice of statements from Covista Inc.'s filings with the Securities and Exchange Commission.  *See In re Wright Med. Tech. Inc., Conserve Hip Implant Prods. Liability Litig.*, 127 F. Supp. 3d 1306, 1352 n.45 (N.D. Ga. 2015).

[10] *But see* Adtalem Global Education, Inc. Form 10-K for Fiscal Year Ended June 30, 2025, https://www.sec.gov/ix?doc=/Archives/edgar/data/0000730464/000155837025010780/atge-20250630x10k.htm ("AUC's nine-acre campus is located in St. Maarten. The campus is owned and includes 240,000 square feet of academic, student-life, and student residence facilities. In addition to classrooms and auditoriums, educational facilities include a gross anatomy lab, a multi-purpose learning lab, library and learning resource centers, offices, cafeteria, and recreational space facilities. The AUC campus is also supported by administrative staff located in office space in Miramar, Florida.").

was made or created in Florida, as opposed to Illinois or Sint Maarten.[11]  The FDUTPA claim should be dismissed as to AUC as well.

### D.  Plaintiff's Complaint Fails To State A Claim Under The FDUTPA

Independent of Rule 9(b) and the lack of Florida facts, Plaintiff did not plead facts supporting the elements of a FDUTPA claim.  To plead a FDUTPA violation, a plaintiff must adequately allege a (1) deceptive or unfair trade practice, (2) causation, and (3) actual damages.  *Pop*, 145 F.4th at 1291.  Here, Plaintiff's FDUTPA claim should be dismissed for several reasons.

#### 1.  Plaintiff Fails To Plausibly Allege A Deceptive Or Unfair Trade Practice Or That A Reasonable Consumer Would Likely Be Misled By The Alleged Statements

First, Plaintiff does not plausibly allege a deceptive or unfair trade practice.  Whether an alleged act or practice is deceptive or unfair may be decided as a matter of law.  *Casey*, 2015 WL 10096084, at *6.  An "unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Jackson*, 2021 WL 3666312, at *11 (internal quotations and citations omitted).  An act is unfair only if it causes consumer injury that is "(1) substantial, (2) not outweighed by any countervailing benefits to consumers or competition, and (3) one that consumers themselves could not have reasonably avoided."  *Casey*, 2015 WL 10096084, at *6.  An injury is reasonably avoidable if consumers "have reason to anticipate the impending harm and the means to avoid it."  *Id*. (internal quotations and citations omitted).  Deception under the FDUTPA arises if the representation, omission, or practice is "likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Millennium Commc'ns & Fulfillment, Inc., v. Off. of Att'y Gen., Dep't of Legal Affs., State of Fla*., 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000) (internal quotations and citations omitted).  That standard requires a showing of "probable, not possible, deception that is likely to cause injury to a reasonable relying consumer."  *Casey*, 2015 WL 10096084, at *6.

Generally, factual marketing statements are less likely to mislead a reasonable consumer.  *Millennium Commc'ns & Fulfillment, Inc.*, 761 So. 2d at 1264 (reversing temporary injunction

---

[11] Relatedly, the Complaint fails to allege sufficient facts to permit Defendants to assess whether venue is proper at this stage.  Defendants reserve the right to challenge venue at a later stage of this litigation.  *See Cooper Lighting, LLC v. Cordelia Lighting, Inc.*, 2017 WL 11629195, at *2 (N.D. Ga. Nov. 13, 2017).

14

under the FDUTPA because the court could "discern nothing from the language contained on the [advertising] which would [be] likely to mislead a consumer acting reasonably under the circumstances" when it was "undisputed that the assertions on the postcard were factual"); *Jackson*, 2021 WL 3666312, at \*15 (plaintiffs failed to state a FDUTPA claim because statement that beer was "Miami-born" was "factually accurate" as the beer was brewed in Miami in part). It is unreasonable for a consumer to claim to be misled when a defendant discloses alleged omitted information, whether contemporaneously or after-the-fact. *Millennium Commc'ns & Fulfillment, Inc.*, 761 So. 2d at 1264 (no FDUTPA deception when defendant disclosed to consumers the alleged omitted information).

*Casey* is instructive. There, law students alleged that a Florida law school publicized deceptive and unfair employment data. The proposed class argued that the employment and salary data published by the school was deceptive because it was obtained via surveys it sent to recent graduates and the data did "not disclose the percentage of graduates who were employed in jobs that were not either temporary, part-time, voluntary, or JD required/JD preferred, and did not disclose the percentage of graduates who actually reported salary information." *Casey*, 2015 WL 10096084, at \*2. The court found no deceptive or unfair trade practice in part because there was no allegation that the school published false survey results. *Id.* at \*15 (plaintiffs did not allege that the law school "ever affirmatively and wrongfully stated that the employment rate was based on a limited subset of lucrative jobs"). The *Casey* court then noted that the "FDUTPA does not require companies to be wholly transparent or prohibit them from publishing facts in the light most conducive to business," stating further that "[b]asic deductive reasoning . . . informs a reasonable person that the employment statistic includes all employed graduates, not just those who obtained or started full-time legal positions." *Id*. at 13–15 (citations and quotations omitted). Additionally, the court opined that a person considering law school is "college-educated and may be reasonably expected to perform some due diligence that goes beyond glancing at a for-profit enterprise's self-serving numbers before plunging into substantial debt." *Id*. at 15. Taken together, the court held that it was unreasonable for a prospective law student to have read the law school's published data to include only full-time, permanent, non-solo-practitioner, non-school-created, amply paid jobs for which a J.D. is required or preferred. *Id.* The student would have to set aside common sense and believe "there was an almost unlimited supply of those jobs for nearly all graduates of a law school placing in the bottom 5 percent of accredited law schools[.]" *Id.*

15

As in *Casey*, Plaintiff has not alleged a deceptive act or unfair trade practice.  Indeed, Plaintiff offers no facts to support that it was probable that a "reasonable consumer in the same circumstances" would have been deceived or that such deception could not have been reasonably avoided—Plaintiff does not contend with the applicable reasonable standards *at all*.  Plaintiff alleges that "Caribbean medical schools provide students an alternative pathway to becoming a doctor, typically admitting applicants with lower GPAs and MCAT scores than their United States counterparts. As a result, Caribbean medical schools are often perceived as less attractive to students than their mainland counterparts." Compl. ¶ 3.  She then alleges that Defendants "induced students to enroll at AUC with false assurances of success by advertising inflated and misleading outcomes that were calculated by excluding large numbers of unsuccessful students." Compl. ¶ 4. And she alleges that the 93% to 96% first-time pass rate AUC has allegedly claimed in advertising is deceptive.  Compl. ¶¶ 6–7.  More specifically, she alleges the data to be deceptive because Defendants allegedly do not disclose that not all students sit for the exam, with some students dropping out of the program or with some students not qualifying to take the exam by not passing Comp.  *Id.*

But, as in *Casey*, the notion of alleged deception does not pass the smell test.  It is unreasonable for the students, who have college degrees and taken countless exams before the USMLE Step 1, to think that a test pass rate consists of anything but the students who actually take the exam—especially where AUC's materials explain how the pass rate is calculated.  *See Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 445 (N.D. Cal. 2020) (FDUTPA claim failed where alleged deception "defie[d] common sense"); *Casey*, 2015 WL 10096084, at \*15 (no FDUTPA violation in part because college educated consumers are reasonably expected to perform due diligence before enrolling in school and the alleged deception defied "common knowledge").  It is also unreasonable for the students, again college-educated people who have taken courses at other colleges or universities, to think that there are no curriculum or testing requirements for students to get to the point of qualifying for USMLE Step 1—a test that happens *two years* into the program. Compl. ¶¶ 25–27.  Indeed, such a belief runs afoul of *Casey's* lesson that student consumers "may be reasonably expected to perform some due diligence that goes beyond glancing at a for-profit enterprise's self-serving numbers before plunging into substantial debt."  *Casey,* 2015 WL 10096084, at \*15; Compl. ¶¶ 11, 29 (alleging that students pay "significant money to attend AUC" including more than $33,000 per semester in tuition and housing).  Such a belief is also "reasonably

16

avoidable" by the simple due diligence of looking up AUC's curriculum requirements, as detailed, for example, in the very Student Handbook Plaintiff cites, or a quick review of the very explanation AUC provided for its pass rate calculations as cited in this Complaint. *See supra* at 3–4; Compl. ¶ 39; *see also Parziale*, 445 F. Supp. 3d at 447 (no FDUTPA violation when company included alleged omitted information in a Support Page, as it allowed a "reasonable consumer to anticipate any impending harm" and consumers had the means to avoid the impending injury); *Casey*, 2015 WL 10096084, at *15 (finding that consumers could have reasonably avoided injury caused by allegedly misleading representations and omissions where sources providing accurate information were available to consumers). Importantly, Plaintiff does not allege that Defendants ever said that their USMLE pass rates were made up of all students, including non-test takers, that attrition does not impact the scores, or that there were no requirements to sit for the exam. *See Casey*, 2015 WL 10096084, at *15.

Further, as in *Casey*, Plaintiff here does not allege that Defendants published false data. Plaintiff does not allege that the numbers are wrong—their allegation, as noted above (*supra* at 15–16 ), is instead that the school did not explain that the USMLE pass rate numbers are made up of only test takers, and that test takers could only include those who passed school requirements. *See* Compl. ¶ 7. But that is belied by Plaintiff's own allegations, and falls short of both the reasonable consumer standard and plain common sense. Plaintiff's own allegations demonstrate that Defendants *did explain* that the pass rate was made up of students who attempted the exam. *See id*. ¶ 39 (alleged AUC Marketing Brochure stating "First-time pass rate is the number of students passing the USMLE Step 1 exam on the first attempt divided by the number of students whose first attempt was in 2017-2021. In order to sit for the USMLE Step 1 exam students must successfully complete the Medical Sciences curriculum."). Additionally, the Student Handbook that Plaintiff cites goes into great detail about the requirements students must pass to sit for the USMLE exams, including passing certain courses and taking Comp. AUC Handbook at 37–38, 46, 70, 73–75, 105. With such explanations, it is unreasonable to believe that the USMLE pass rate is made up of every person in the class or that there were no requirements to sit for the exam, and such a belief is reasonably avoidable. *See, e.g.*, *Millennium Commc'ns & Fulfillment, Inc.*, 761 So. 2d at 1263. Lacking any deceptive or unfair practice as alleged, the FDUTPA claim should be dismissed.

17

2.    Plaintiff Fails To Plausibly Allege That Defendants Caused An Injury Under The FDUTPA

Plaintiff has also failed to plausibly allege that she was harmed by Defendants.  To succeed on a FDUTPA claim, a plaintiff must allege that the deceptive or unfair practice *caused* the claimed harm.  *Berenguer v. Warner-Lambert Co.*, 2003 WL 24299241, at *2 (Fla. Cir. Ct. 13th Jud. Cir. Hillsborough Cnty. July 31, 2003) ("FDUTPA requires proof of causation" and as such "plaintiffs must plead that they were exposed to the Defendants' advertising and marketing materials alleged to constitute a deceptive trade practice and that they suffered actual damages as a result of the misrepresentations in those materials.") (quotations omitted).  This requirement comes from the statute itself.  Fla. Stat. § 501.211(2) (requiring "loss as a result of" the FDUTPA violation to recover actual damages).  This means that causation must be direct, rather than remote or speculative.  *See Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012).

As noted above, Plaintiff fails to allege facts supporting the notion that the alleged misrepresentations would have deceived an objectively reasonable consumer under the circumstances—*i.e.*, a college-educated individual who is exploring medical schools and doing their due diligence—thereby eliminating any potential "causation."  *See supra* at 14–17; *Carrier v. Jordaan*, 746 F. Supp. 2d 1341, 1351 (S.D. Ga. 2010) (Plaintiff failed to plead causation under the FDUTPA where the complaint only alleged that plaintiff "relied on these false representations, to their detriment" without addressing the reasonable consumer standard.) (alterations adopted).  Compounding this deficiency, Plaintiff fails to allege she (or any plaintiff for that matter) even viewed any of the alleged misrepresentations at all before enrolling, let alone the details surrounding such viewing, which is fatal under the causation prong.  *See Inouye v. Adidas Am., Inc.*, 2023 WL 2351654, at *4 (M.D. Fla. Mar. 3, 2023) (dismissing a FDUTPA claim for failure to sufficiently plead the causation element because plaintiff failed to allege whether he viewed the alleged misrepresentations before purchasing the product); *Berenguer*, 2003 WL 24299241, at *2 (dismissing with prejudice a FDUTPA claim when plaintiffs could not allege they saw any of the challenged advertisements, therefore failing to allege causation).

Here, Plaintiff's pleadings do not allege which materials were viewed (if any at all), when or where the materials were viewed, how any of the materials informed Plaintiff about the quality of the education she was to receive or the USMLE process, or how the education or USMLE process fell short of Plaintiff's expectations and *directly* caused harm.  Indeed, as it stands, Plaintiff

18

has not alleged any facts that would demonstrate the reason she enrolled at AUC—or subsequently failed Comp—was not because of any of the myriad of personal reasons students pick a school and subsequently succeed or fail. *See Hennegan Co.*, 855 F. Supp. 2d at 1361 (finding no FDUTPA violation when evidence showed that independent reasons, unrelated to defendant, caused plaintiffs' harm). Plaintiff does not allege what she would have done differently absent the alleged deceptive advertising— for example, nowhere does she allege she would have attended a different school. She also does not allege that Plaintiff would not otherwise fall into the percentage of students that do not pass USMLE, as alleged to be disclosed by AUC (i.e., the students outside the 92-96% pass rate). For this additional reason, the Court should dismiss the FDUTPA claim.

### 3.     Plaintiff Fails to Plausibly Allege Actual Damages

Plaintiff's FDUTPA claim separately fails because she does not allege actual damages. A plaintiff cannot state a cause of action under the FDUTPA if the consumer fails to plead that they suffered actual damages. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021). Actual damages "are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Id.* (quotations omitted). The FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Id*. (quoting *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008)).

Besides the causation problems noted above, *see* supra at 18–19, nowhere does Plaintiff plead the market value of the education she received in light of the alleged deceptive advertising. Plaintiff states in conclusory fashion that, as a "direct and proximate result of Defendants' FDUTPA violations, Plaintiff and the members of the Class have been damaged in an amount to be proven at trial." Compl. ¶ 70. But Plaintiff does not point to any medical school tuition that might serve as a comparator or substitute in the market or any method by which a theoretical difference could be calculated (let alone how to overcome the hurdle of the doctrine of educational malpractice, *see infra* at 21–22, to do so). Not only that, Plaintiff alleges that after she failed her Comp exam, she repeated her courses so that she could take the Comp exam again and sit for the USMLE Step 1 exam. Compl. ¶ 52. Any damages after choosing to remain enrolled at AUC, knowing that she needed to pass the Comp in order to take the USMLE Step 1 exam, would be too

19

speculative for a FDUTPA claim. *See Sweeney v. Kimberly-Clark Corp.*, 2016 WL 727173, at *5–6 (M.D. Fla. Feb. 22, 2016) ("[T]he fact that the Plaintiffs continue to purchase and use the Defendants' [product] makes their theory of damages too speculative" for a FDUTPA claim.).

### E.      The Complaint Fails To State A Claim For Unjust Enrichment

Likewise, independent of its failure under Rule 9(b), the unjust enrichment claim fails because Plaintiff does not allege that (i) she lacks an adequate remedy at law and (ii) the circumstances would render it "inequitable" for Defendants to retain any supposed benefit allegedly conferred.[12]

An unjust enrichment claim should be dismissed where the claim "relies upon the same factual predicates as a plaintiff's legal causes of action" because it is "not a true alternative theory of relief but rather is duplicative of those causes of action." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017) (quotations omitted) (dismissing unjust enrichment claim that relies on the same factual predicate as other claims, including the FDUTPA); *In re US Cap. Holdings, LLC*, 2013 WL 5297352, at *8 n.12 (Bankr. S.D. Fla. Aug. 5, 2013) (cataloguing cases where "[t]he overwhelming majority of Florida state and federal cases" hold that "[t]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy.") (alterations adopted and quotations omitted); *see generally Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So. 3d 424, 429 (Fla. Dist. Ct. App. 2022) ("A party, however, cannot use [unjust enrichment] to circumvent the specific requirements of a statute"). In *Pop*, the court dismissed the unjust enrichment claim that was predicated on a failure to disclose an advertising relationship in marketing because it was based on the same wrongdoing as the FDUTPA claim. *Pop v. LuliFama.com LLC*, 2024 WL 1194485, at *7 (M.D. Fla. Mar. 20, 2024) (dismissing unjust

---

[12] Florida federal courts sitting in diversity apply Florida choice-of-law rules. *See Arndt v. Twenty-One Eighty-Five, LLC*, 448 F. Supp. 3d 1310, 1315 (S.D. Fla. 2020). As quasi-contract claims, Florida courts apply *lex loci contractus* to claims for unjust enrichment, and look to the law of the forum where the contract was created. *Am. Home Assur. Co. v. Weaver Aggregate Trans., Inc.*, 773 F. Supp. 2d 1317, 1324 (M.D. Fla. 2011). Given the lack of any facts in the Complaint as to where Plaintiff may have (1) accepted her offer of enrollment, (2) paid tuition, or (3) any other facts sufficient to allege where Plaintiff's and Defendants' final act of agreement occurred, Defendants apply Florida law at this phase as a case in Florida federal court invoking a Florida statute. Defendants reserve the right to challenge the law applicable to Plaintiff or any other member of the purported class at a later stage, should this matter proceed.

20

enrichment claim in part because "unjust enrichment claim [was] based on the same wrong that underlies [plaintiff's] FDUTPA claim"). Here, Plaintiff offers no distinguishing facts for the two claims and seeks compensatory damages[13] under the FDUTPA and for unjust enrichment, without alleging that the FDUTPA's compensatory damages would be somehow inadequate. *See* Compl. ¶¶ 71, 74. For this independent reason, the unjust enrichment claim should be dismissed.

Plaintiff also fails to allege a separate element of the unjust enrichment claim: that it would be "inequitable" for Defendants to retain any alleged payments from Plaintiff. Under Florida law, the elements of an unjust enrichment claim are: "(1) [the] plaintiff conferred a benefit on the defendant; (2) [the] defendant voluntarily accepted and retained the benefit; and (3) it would be inequitable for [the] defendant to retain the benefit without paying the value of the benefit to the plaintiff." *Pop*, 2024 WL 1194485, at *5 (quotations and citation omitted). To plead inequitable circumstances, Plaintiff must allege she "was harmed in some way." *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007). Here, for the same reasons that Plaintiff has failed to allege a deceptive or unfair trade practice, causation, and damages under the FDUTPA, she has failed to allege that her perceived harm has any relationship to Defendants' alleged conduct. *See supra* at 14–20. This allegation fails to plead a harm that requires equitable relief. *Id.*

## F.  Plaintiff's Claims Are Impermissible Claims Of Educational Malpractice

Both of Plaintiff's claims rest on a theory of damages that is based on the difference between the value of the education she received and the allegedly more valuable education she thought she would get because of alleged deceptive marketing. These are quintessential claims for educational malpractice that should be dismissed. *See supra* at 19–20; *see Tubell v. Dade Cty. Pub. Sch.*, 419 So. 2d 388, 389 (Fla. Dist. Ct. App. 1982); *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 649 F. Supp. 3d 1245, 1255 (S.D. Fla. 2022) (unjust enrichment claim barred

---

[13] Plaintiff seeks punitive damages for the unjust enrichment claim. Compl. ¶ 74. However, under Florida law, punitive damages are not available for unjust enrichment claims. *See Priority Healthcare Corp. v. Surajit Chaudhuri, M.D., P.A.*, 2008 WL 4459041, at *5 (M.D. Fla. Oct. 1, 2008) (no punitive damages claim from an unjust enrichment action); *Hugh's Concrete & Masonry Co. v. Se. Pers. Leasing, Inc.*, 2013 WL 5798638, at *7 (M.D. Fla. Oct. 28, 2013) ("Florida courts have found that awards for unjust enrichment are not punitive, and allowing a plaintiff recovery for more than the benefit conferred would result in an unwarranted windfall."). Plaintiff's request for punitive damages is therefore improper under law.

by doctrine of educational malpractice when students argued that their education was less valuable than they paid for).

Florida state and federal courts applying Florida law grant educational institutions wide deference, and as such, courts are barred from examining and evaluating the quality of the education that was provided to a plaintiff under the doctrine of educational malpractice. *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 649 F. Supp. 3d at 1255 ("In order to adjudicate[] Plaintiffs' tuition based-claim for unjust enrichment, this Court would have to examine and evaluate the quality of the education that was provided to Plaintiffs. This is precisely what Florida's educational malpractice doctrine prohibits.") (alterations adopted and citations omitted). Claims amounting to a claim of "educational malpractice," even if pleaded under another name, are not cognizable. *Armstrong v. Data Processing Inst., Inc.*, 509 So. 2d 1298, 1299 (Fla. Dist. Ct. App. 1987) ("Regardless of the nomenclature, the gravamen of [the claim] is a cause of action for educational malpractice which is not cognizable in Florida."); *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 649 F. Supp. 3d at 1255 (barring unjust enrichment claim under the doctrine).

While not the picture of clarity, Plaintiff's claims under the FDUTPA and for unjust enrichment seemingly amount to an attack on AUC's program by Plaintiff's own words, including the "nature of the program," "the learning environment of the program," "the success of the program," and "the absolute and relative (as compared to U.S. institutions quality and value of AUC's education," *see, e.g.*, Compl. ¶¶ 9, 34—an attack which Florida courts are meant to shield against under the doctrine of educational malpractice. Plaintiff's theories of recovery for both claims appear to rest on allegations that the education Plaintiff received was of diminished value relative to what Plaintiff thought she would receive based on allegedly deceptive marketing statements by Defendants. *See, e.g.*, Compl. ¶ 34 (alleging that AUC was "lying to students about the nature of the program, the learning environment of the program, and the success of the program"). Demanding a court to quantify that difference in value is precisely what the educational malpractice doctrine forecloses, and thus, warrants dismissal. *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 649 F. Supp. 3d at 1255. To the extent Plaintiff argues her education was less valuable than what she bargained for under Florida law, her claims should be barred by the educational malpractice doctrine. For this independent reason, the Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims with prejudice. Defendants reserve the right to seek reasonable attorneys' fees pursuant to Florida Statute § 501.2105.

## REQUEST FOR HEARING

In accordance with Local Rule 7.1(b)(2), Defendants respectfully request that the Court hear oral argument on their Motion to Dismiss because Defendants believe oral argument would further the Court's understanding of the grounds for dismissal with prejudice.  Defendants submit that thirty minutes per side is sufficient for the parties to argue the issues presented.

Dated: March 23, 2026

Respectfully submitted,

*/s/ Martin B. Goldberg*
MARTIN B. GOLDBERG
Florida Bar No. 827029
Primary: mgoldberg@lashgoldberg.com
Secondary: rdiaz@lashgoldberg.com

Lynnette Cortes Mhatre
Florida Bar No. 1052015
Primary: lmhatre@lashgoldberg.com
Secondary: obencomo@lashgoldberg.com

**LASHGOLDBERG**
Lash Goldberg Fineberg LLP
Miami Tower, Suite 1200
100 S.E. 2nd Street
Miami, FL 33131
Telephone: (305) 347-4040
Fax: (305) 347-4050

Sean M. Berkowitz (*pro hac vice*)
Eric R. Swibel (*pro hac vice*)
Caitlin E. Dahl (*pro hac vice*)
Shelby L. Dedo (*pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700

23

sean.berkowitz@lw.com
eric.swibel@lw.com
caitlin.dahl@lw.com
shelby.dedo@lw.com

Delia Tasky (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
delia.tasky@lw.com


*Attorneys for Defendants*

24