IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 1:26-cv-20504-MD

NALEXUS SHIELDS,

       Plaintiff,

v.

ADTALEM GLOBAL EDUCATION INC.
and ADTALEM GLOBAL HEALTH INC.
d/b/a AMERICAN UNIVERSITY OF THE
CARIBBEAN SCHOOL OF MEDICINE,

       Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO STAY DISCOVERY PENDING THE DISPOSITION OF
<u>DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

Introduction                                                                                    1

Argument                                                                                        1

  A. It is not appropriate to stay discovery pending resolution of Defendants' MTD        1

  B. Defendants' Rule 12(b)(6) arguments are without merit                                 5

    i. The Statute of Limitations is No Bar to the Complaint                       5

    ii. A Preliminary Peek Refutes Defendants' 9(b) Argument                       6

    iii. Defendants Other Rule 12(b)(6) Arguments are without Merit               9

      a. The USMLE Step 1 Passage Rate Claim is Deceptive and Unfair     9

      b. Causation and Damages are Adequately Pled                      11

      c. Curtailing FDUTPA Geographically is Contrary to its Plain Language   13

      d. The Unjust Enrichment Claim is Well Pled                        14

      e. The Educational Malpractice Assertion is a Red Herring          15

  C. Plaintiff's discovery is narrowly tailored and should proceed                        16

  D. Plaintiff will be prejudiced and the public interest will not be served by a stay     20

Conclusion                                                                                      20

**TABLE OF AUTHORITIES**

**Cases**                                                                    Page(s)

*American Airlines, Inc. v. Spada*,                                              8
    2024 WL 2797380 (S.D. Fla. Feb. 23, 2024)

*Am. Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc.*,                 13
    484 F. App'x 322 (11th Cir. 2012)

*Bank of Am., N.A. v. Zaskey*,                                                 13, 14
    2016 WL 2897410 (S.D. Fla. May 18, 2016)

*Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*,                          14
    2012 WL 1570057 (S.D. Fla. May 2, 2012)

*Boise v. ACE USA, Inc.*,                                                       3
    2015 WL 4077433 (S.D. Fla. July 6, 2015)

*Cabrera v. Progressive Behavioral Science, Inc.*,                           1, 2, 20
    331 F.R.D. 185 (S.D. Fla. 2019)

*Carriuolo v. General Motors Co.*,                                            *passim*
    823 F.3d 977 (11th Cir. 2016)

*Casey v. Florida Coastal School of Law, Inc.*,                                 9
    2015 WL 10096084 (M.D. Fla. Aug. 11, 2015)

*Chudasama v. Mazda Motor Corp.*,                                              3, 4
    123 F.3d 1353 (11th Cir. 1997)

*City First Mortg. Corp. v. Barton*,                                            9
    988 So.2d 82 (Fla. 4th DCA 2008)

*Coghlan v. Wellcraft Marine Corp.*,                                           12
    240 F.3d 449 (5th Cir. 2001)

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*,                            11
    332 F. App'x 565 (11th Cir. 2009)

*Coleman v. CubeSmart*,                                                        7, 9, 11
    328 F. Supp. 3d 1349 (S.D. Fla. 2018)

*Costa v. Kerzner Intern. Resorts, Inc.*,                                      14
    2011 WL 2519244 (S.D. Fla. June 23, 2011)

*Cuhaci v. Kouri Group, LP*,                                                    4
    540 F. Supp. 3d 1184 (S.D. Fla. 2021)

*Davis v. Powertel, Inc.*,                                                     12
    776 So.2d 971 (Fla. 1st DCA 2000)

*Echevarria v. Expedia Group Inc.*,                                           2, 20
    2025 WL 3496164 (S.D. Fla. Dec. 4, 2025)

*Feldman v. Flood*,
176 F.R.D. 651 (M.D. Fla. 1997) — 2, 20

*Felice v. Invicta Watch Company of America, Inc.*,
2017 WL 3336715 (S.D. Fla. Aug. 4, 2017) — 12

*Fitzpatrick v. General Mills, Inc.*,
635 F.3d 1279 (11th Cir. 2011) — 11, 12

*F.T.C. v. Corpay, Inc.*,
164 F.4th 807 (11th Cir. 2026) — 7, 10, 11

*F.T.C. v. Cyberspace.com LLC*,
453 F.3d 1196 (9th Cir. 2006) — 11

*F.T.C. v. DeVry Education Group, Inc.*,
2016 WL 6821112 (C.D. Cal. May 9, 2016) — 11, 15

*Fruitstone v. Spartan Race Inc.*,
464 F. Supp. 3d 1268 (S.D. Fla. 2020) — 15

*Goldstein v. Costco Wholesale Corporation*,
2021 WL 2827757 (S.D. Fla. July 8, 2021) — 4

*Horsley v. Feldt*,
304 F.3d 1125 (11th Cir. 2002) — 4

*Horsley v. Feldt*,
128 F. Supp. 2d 1374 (N.D. Ga. 2000). — 4

*In re Mednax Servs., Inc.*,
2021 WL 10428229 (S.D. Fla. Oct. 9, 2021) — 4

*Isaiah v. JPMorgan Chase Bank*,
960 F.3d 1296 (11th Cir. 2020) — 4

*Karhu v. Vital Pharmaceuticals, Inc.*,
2013 WL 4047016 (S.D. Fla. Aug. 9, 2013) — 14

*Lendinara v. Swedish Match North America, LLC* ,
2025 WL 3699694 (S.D. Fla. 2025) — 6, 8

*Letidas Logistics, LLC v. Citibank, N.A.*,
2024 WL 6468422 (S.D. Fla. Oct. 21, 2024) — 3, 16, 19, 20

*Lewis v. Mercedes-Benz USA, LLC*,
530 F. Supp. 3d 1183 (S.D. Fla. 2021) — 8

*Little v. CSRA, Inc.*,
834 F. App'x 495 (11th Cir. 2020) — 4

*Lord v. University of Miami*,
2021 WL 9859769 (S.D. Fla. Oct. 27, 2021) — 19

*Makaeff v. Trump University, LLC*,
2010 WL 3988684 (S.D. Cal. Oct. 12, 2010) — 16

*Matus v. Sport Squad*,
  2024 WL 5135678 (S.D. Fla. Dec. 17, 2024) .......................................... 14, 15

*Medimport S.R.L. v. Cabreja*,
  929 F. Supp. 2d 1302 (S.D. Fla. 2013) .......................................... 8

*Millennium Communications & Fulfillment, Inc. v. Office of Attorney General,
  Dept. of Legal Affairs, State of Fla.*,
  761 So. 2d 1256 (Fla. 3d DCA 2000) .......................................... 13

*McCabe v. Foley*,
  233 F.R.D. 683 (M.D. Fla. 2006) .......................................... 4

*Mcturk v. Lottery.com, Inc.*,
  2024 WL 5681470 (S.D. Fla. Oct. 29, 2024) .......................................... *passim*

*MSP Recovery Claims, Series LLC v. Amerisure Insurance Co.*,
  2021 WL 4992560 (S.D. Fla. Mar. 8, 2021) .......................................... 2

*Nelson v. Mead Johnson Nutrition Co.*,
  270 F.R.D. 689 (S.D. Fla. 2010) .......................................... 6, 8

*Pop v. LuliFama.com LLC*,
  145 F.4th 1285 (11th Cir. 2025) .......................................... 6

*Ray v. Spirit Airlines*, *Inc.*,
  2012 WL 5471793 (S.D. Fla. 2012) .......................................... 4

*Richert v. Calderin*,
  2025 WL 263454 (S.D. Fla. Jan. 22, 2025). .......................................... 5

*Roberts v. FNB S. of Alma, Georgia*,
  716 F. App'x 854 (11th Cir. 2017) .......................................... 4

*Romacorp, Inc. v. Prescient, Inc.*,
  2011 WL 2312563 (S.D. Fla. June 8, 2011) .......................................... 4

*Skuraskis v. NationsBenefits Holdings, LLC*,
  717 F. Supp. 3d 1221 (S.D. Fla. 2023) .......................................... 4

*Star-Brite Distributing, Inc. v. Gold Eagle Co.*,
  2016 WL 4470093 (S.D. Fla. Jan. 25, 2016) .......................................... 6

*State Farm Mutual Automobile Ins. Co. v. Physicians Injury Care Center, Inc.*,
  427 F. App'x 714 (11th Cir. 2011) .......................................... 15

*State Farm Mutual Automobile Insurance Co. v. Williams*,
  824 F.3d 1311 (11th Cir. 2014) .......................................... 15

*State, Office of Attorney General, Dept of Legal Affairs v. Commerce
  Commercial Leasing, LLC,*
  946 So.2d 1253 (Fla. 1st DCA 2007) .......................................... 12

*Terra Towers Corporation v. American Tower International, Inc.*,
  2024 WL 454886 (S.D. Fla. Jan. 4, 2024) .......................................... 4

iv

*Trump v. British Broadcasting Corp.*,      19, 20
   2026 WL 403823 (S.D. Fla. Feb. 12, 2026)

*Varcamp Properties, LLC v. City of Miami Beach*,      5
   2022 WL 19731865 (S.D. Fla. Dec. 22, 2022)

*Water Intern. Network, U.S.A., Inc. v. East*,      8
   892 F. Supp 1477 (M.D. Fla. 1995)

*Zamber v. American Airlines, Inc.*,      16
   2017 WL 5202748 (S.D. Fla. Feb. 17, 2017)

*Zarnesky v. Adidas American, Inc.*,      16
   2021 WL 3729230 (M.D. Fla. June 10, 2021)

**Rules**

S.D. Fla. L.R. 7.1(a)      5

S.D. Fla. L.R. 7.1(c)      5

Fed. R. Civ. P. 12(b)      5, 9

Fed. R. Civ. P. 9(b)      6, 7, 8

Fed. R. Civ. P. 26(c)      2

Fed. R. Civ. P. 26(d)      16

Fed. R. Civ. P. 26(f)      16

## INTRODUCTION

Defendants' Motion to Stay ("MTS") discovery rests on familiar but unpersuasive tactics: ignoring the standard, claiming their scattershot Motion to Dismiss ("MTD") raises meritorious bars to Plaintiff's claims, and asserting the discovery they have not even attempted to negotiate or respond to is too burdensome. Though not apparent from their filing, granting the MTS requires Defendants meet a heavy burden. With the Court only taking a preliminary peak, the Defendants must prove dismissal is a foregone conclusion. This is a showing which they do not come close to making here.

There are no clearly availing grounds likely to dispose of the case, a fact underscored by Defendants leading with a flawed statute of limitations argument that, even were it valid (and it isn't), would seldom warrant dismissal at this stage. Defendants' remaining dismissal arguments fare no better and are not developed whatsoever in the MTS, providing independent reasons to deny the MTS. Because Defendants have not made a strong showing here that their MTD is likely to dispose of the case, there is no basis to halt discovery.

As to the burdensomeness of the discovery, Defendants provide no basis to eschew the well-established discovery-dispute procedures where particularized discovery issues are raised on a case-by-case basis. In making their case for an indiscriminate blanket stay of discovery, Defendants vastly inflate the number of requests and distort what they seek.

## ARGUMENT

### A. It is not appropriate to stay discovery pending resolution of Defendants' MTD

Defendants suggest that staying discovery pending resolution of a motion to dismiss is routine and appropriate as a matter of course. Quite the opposite. In this District, such relief is "rarely appropriate," and "the exception rather than the rule." *Cabrera v. Prog. Behav. Science, Inc.,* 331 F.R.D. 185, 186 (S.D. Fla. 2019); *Mcturk v. Lottery.com, Inc.*, 2024 WL 5681470, at *2

(S.D. Fla. Oct. 29, 2024) ("[M]otions to stay discovery pending ruling on a motion to dismiss are generally disfavored in this District."). "Courts in this District routinely deny motions to stay discovery where it is unclear if a motion to dismiss is truly case dispositive." *Echevarria v. Expedia Grp. Inc.*, 2025 WL 3496164, at \*2 (S.D. Fla. Dec. 4, 2025) (collecting cases). Because a motion to stay discovery is tantamount to a request for a protective order under Fed. R. Civ. P. 26(c), the moving party bears the burden of showing "good cause" and "reasonableness" for such an order. *Feldman v. Flood,* 176 F.R.D. 651, 652-53 (M.D. Fla. 1997); *Mcturk*, 2024 WL 5681470, at \*1.

A stay should not be granted unless there is a "strong likelihood" that the dismissal motion will be granted with prejudice disposing of the *entire* case and eliminating the need for *any* discovery. *See Cabrera,* 331 F.R.D. at 186 ("A request to stay discovery pending a resolution of a motion is rarely appropriate unless resolution of the motion will dispose of the entire case."). This is because "the delay and prolongation of discovery can...create case management and scheduling problems and unfairly hold up the prosecution of the case." *Cabrera,* 331 F.R.D. at 186. "[M]otions to stay discovery pending ruling on a motion to dismiss are generally disfavored in this District." *Mcturk*, 2024 WL 5681470, at \*2 (citation omitted).

A stay is "not favored because when discovery is delayed or prolonged it can...impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Feldman*, 176 F.R.D. at 152. Where the court "cannot say dismissal of the claims… is a foregone conclusion," the motion to stay should be denied. *MSP Recovery v. Amerisure Ins. Co.*, 2021 WL 4992560, at \*1 (S.D. Fla. Mar. 8, 2021). To determine whether dismissal is a "foregone conclusion" justifying a stay, *Cabrera,* 331 F.R.D. at 186, the Court must take a "preliminary peek" at the merits of the motion to dismiss "to see if it appears to be clearly meritorious and truly case dispositive." *Feldman,* 176 F.R.D. at 652-53. In so doing, courts analyze four factors: (1) the

2

likelihood the moving party ultimately prevails on the merits; (2) the extent the moving party is irreparably harmed; (3) the potential for harm to the opposing party if the stay is issued; and (4) whether issuing a stay is in the public interest. *See Boise v. ACE USA, Inc.*, 2015 WL 4077433, at *2 (S.D. Fla. July 6, 2015). After the "preliminary peek" at the merits, if the Court is not convinced the case "will certainly be dismissed," the motion to stay should be denied. *Id.*

Defendants seek a stay on the premise that their MTD may result in complete dismissal of the Complaint. But both the requested stay *and* complete dismissal are at odds with the customs and caselaw of this District. The Complaint is unlikely to be dismissed but even if it were, there would almost certainly be leave to amend. "This Court cannot agree with Defendants that they will succeed in obtaining a dismissal with prejudice of all of Plaintiffs' claims. It is customary to grant leave to amend where the Court grants a motion to dismiss an initial pleading for failure to state a claim." *Mcturk*, 2024 WL 5681470, at *2. "To the extent Defendant's motion to dismiss challenges the sufficiency of Plaintiff's allegations, 'leave to amend will be liberally granted, thereby failing to dispose of the case.'" *Letidas Logistics, LLC v. Citibank, N.A.*, 2024 WL 6468422, at *2 (S.D. Fla. Oct. 21, 2024). Notably, the Defendant in *Letidas* asserted dismissal was "likely" in the putative class action and a stay would avoid "unnecessary costs and motions practice," and "promote[] judicial economy." *Id*. Defendants argue the same here. *Letidas* rejected the arguments, noting "[t]hese proffered reasons, which are true in every class action, do not tip the balance in favor of a stay." *Id*.

Defendants ignore the overwhelming authority disfavoring stays and instead rely heavily upon *Chudasama v. Mazda Motor Corporation*, 123 F.3d 1353 (11th Cir. 1997), and its progeny. That reliance is entirely misplaced. *Chudasama* presented unique circumstances not present here—namely, an especially dubious claim, overly broad discovery, and substantial delay by the district

3

court in ruling on a potentially dispositive motion. *See Mcturk*, 2024 WL 5681470, at *2 (citing

*Cuhaci v. Kouri Grp.*, 540 F. Supp. 3d 1184, 1187 (S.D. Fla. 2021) (collecting cases and denying

motions to stay discovery where the case did "not present the type of an 'especially dubious' claim

faced by the *Chudasama* Court.)). As courts in this District have repeatedly recognized,

"*Chudasama* does not stand for the broad proposition that a court must stay discovery when there

is a pending motion to dismiss." *Romacorp, Inc. v. Prescient, Inc.*, 2011 WL 2312563, at *2 (S.D.

Fla. June 8, 2011); *Ray*, 2012 WL 5471793, at *3 ("as many district courts have recognized,

*Chudasama* involved particularly egregious facts which one hopes will be seldom, if ever,

duplicated again."). The other cases cited by Defendants, where they include factual and legal

background, also present exceptional circumstances and are inapposite here.[1]

---

[1] In *Horsley v. Feldt*, the stay discussion was confined to a footnote. 304 F.3d 1125, 1131 n.2 (11th Cir. 2002). The underlying case presented a pro se, anti-abortion activist who engaged in abusive discovery practices. *Horsley*, 128 F. Supp. 2d 1374, 1380-81 (N.D. Ga. 2000). Likewise, in *Isaiah v. JPMorgan Chase Bank*, the Eleventh Circuit affirmed a stay only after the district court had the benefit of a prior ruling dismissing nearly identical claims against another bank, and where the complaint raised threshold standing and legal-sufficiency defects arising from a receiver's attempt to pursue claims that properly belonged to creditors rather than the receivership entities. 960 F.3d 1296, 1310 (11th Cir. 2020). *Little v. CSRA, Inc.*, did not involve a stay, but rather dismissal of a pro se employment case where the complaint failed to satisfy basic Rule 8 and exhaustion requirements, with claims also barred by res judicata. 834 F. App'x 495 (11th Cir. 2020); *see also Roberts v. FNB S. of Alma, Georgia*, 716 F. App'x 854 (11th Cir. 2017) (pro se complaint with clearly deficient allegations); *McCabe v. Foley*, 233 F.R.D. 683 (M.D. Fla. 2006) (staying discovery was "rarely appropriate" but was in shareholder derivative action subject to the heightened pleading requirements of Rule 23.1 with conclusory allegations unsupported by particularized facts); *Terra Towers Corp. v. Am. Tower Int'l, Inc.*, 2024 WL 454886 (S.D. Fla. Jan. 4, 2024) (granting stay in single count breach of contract case but noting "*Chudasama*, however, does not indicate a broad rule that discovery should be deferred or stayed whenever there is a pending motion that is potentially dispositive. Rather, *Chudasama* and its progeny stand for the much narrower proposition that courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount.")(cleaned up); *In re Mednax Servs., Inc.*, 2021 WL 10428229 (S.D. Fla. Oct. 9, 2021) (multi-district class action data breach litigation with jurisdictional issues and numerous potential classes/subclasses of over one million people); *Skuraskis v. NationsBenefits Holdings, LLC*, 717 F. Supp. 3d 1221 (S.D. Fla. 2023) (same); *Goldstein v. Costco Wholesale Corp.*, 2021 WL 2827757 (S.D. Fla. July 8, 2021) (case presented "a dearth of case law on these novel issues [with] dismissal of nearly identical suits").

4

### B. **Defendants' Rule 12(b)(6) arguments are without merit**

Defendants argue this case should be stayed because they have a pending Rule 12(b)(6) motion to dismiss, but that motion is meritless. Defendants do not bother to show how a preliminary peak is availing in their MTS. Instead, Defendants largely rely on incorporating swaths of the MTD. MTS at 7-8 (incorporating MTD at 7-22).[2] Defendants here failed to show good cause and carry their heavy burden. Plaintiff's claims are unlikely to be dismissed because Defendants' Rule 12(b)(6) arguments fail as a matter of law.

> i.     *The Statute of Limitations is No Bar to the Complaint.*

Defendants' MTD leads with a flawed statute of limitations argument. "Generally, the statute of limitations is raised as an affirmative defense rather than by way of a motion to dismiss." *Varcamp Props., LLC v. City of Miami Beach,* 2022 WL 19731865, at *4 (S.D. Fla. Dec. 22, 2022) (collecting cases). Defendants do not address within the MTS why that general rule should be excepted here. "A court may dismiss a complaint as time barred only if it appears **beyond a doubt** that the plaintiff can prove no set of facts showing the claims are timely." *Id.* (cleaned up) (emphasis supplied). Defendants fall far short of this burden.

In their MTD, Defendants argue that the claims accrued when Plaintiff enrolled at AUC in January 2020 because her "claim accrues under the FDUTPA when a plaintiff purchases a product—here, when Plaintiff enrolled at AUC." MTD at 7. That is incorrect. Because of Defendants' "continuous use of alleged false and misleading statements, the alleged violations are

---

[2] Under the Local Rules, motions must incorporate a memorandum of law citing supporting authorities and that memorandum is limited to twenty pages, *see* S.D. Fla. L.R. 7.1(a)(1) and (c)(2). Here, Defendants have written eleven pages in the instant memorandum and also incorporate pages 7-22 of their narrowly spaced MTD in an apparent effort to circumvent the page limits and foist onto the Court and Plaintiff the burden of searching through a paper maze. That alone provides grounds to deny their MTS. *Richert v. Calderin*, 2025 WL 263454, at *1 (S.D. Fla. Jan. 22, 2025).

ongoing and therefore the statute of limitations is not an issue, at least for the statutory period preceding the filing date." *Star-Brite Distrib., Inc. v. Gold Eagle Co.*, 2016 WL 4470093, at *3 (S.D. Fla. Jan. 25, 2016). Even were that not the case, several of Plaintiff's purchases clearly fall within the statute of limitations. Defendants ignore that each semester of attendance constitutes a separate purchase transaction – in AUC's case there is a January, May, and September semester each year – and that tuition is charged each semester. *Compl.* ¶¶ 26, 29, and 30. There is no meritorious argument that the purchases made from January 2022 on are not within the limitations period. *See Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 696 (S.D. Fla. 2010) (even where earlier purchases of product predate limitations period, period is reset for subsequent purchases)(citation omitted). Clearly, the purchases at issue for the Statute of Limitations would include the January 2022 Semester and thereafter. Here, it is expressly alleged that Plaintiff purchased the Fall 2022 and January 2023 semesters. *Compl*. at ¶ 52. Dismissal based on the statute of limitations argument is not a foregone conclusion, it is highly unlikely.

ii. *A Preliminary Peek Refutes Defendants' 9(b) Argument.*

Defendants' next ground for dismissal in the MTD requires the Court to go beyond a preliminary peak in order to resolve this MTS in their favor. In the MTD, Defendants argue that Plaintiff's FDUTPA claim sounds in fraud. Rule 9(b) applies to a FDUTPA claim when the claim "sounds in fraud." *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1292-94 (11th Cir. 2025).[3] To rule for Defendants on that basis here, the Court would first have to ascertain whether the allegations

---

[3] In an order with lengthy analysis and application of *Pop*, Judge Dimitrouleas observed: "*Pop* did not categorically find that all FDUTPA claims are subject to the 9(b) particularity standard." *Lendinara v. Swedish Match N. Am., LLC*, 2025 WL 3699694, at *4 (S.D. Fla. Dec. 15, 2025). There, the court held that "[b]ased upon the allegations in the Second Amended Complaint, the Court finds the allegations are not subject to 9(b)." *Id.*

sound in fraud, and then whether they satisfy the heightened pleading required by Rule 9(b). Dismissal is not a foregone conclusion: should the Court be inclined to extend its preliminary peek, it will see the allegations are quintessential FDUTPA allegations focusing on the effect on the consumer rather than common law fraud focused on the intent of the fraudster.

Although this issue requires far more than a preliminary peek, it is facially clear that the core allegations here do not track the elements of common law fraud. The gravamen of this case is that Defendants, a for-profit medical school and its corporate parent, used deceptive practices to lure students in. The Complaint leaves open the possibility that the USMLE Step 1 passage rate published by the Defendants was technically true but still misleading, which alone is enough to support a FDUTPA claim. *Coleman v. Cubesmart,* 328 F.Supp.3d 1349, 1361 (S.D. Fla. 2018) (Martinez, J.). FDUTPA and unjust enrichment, after all, can apply where conduct is deceptive even if not fraudulent. The allegations here emphasize, among other things, the omission of the complete methodology for the passage rate, the omission of AUC's high attrition rate that vastly exceeded comparable rates at U.S. Medical Schools, and the failure to disclose the gatekeeping effect of the pre-test which effectively served to prevent certain students from taking the USMLE Step 1 and thus artificially inflated AUC's published rate. *Compl.* at ¶¶ 41-49. The allegation that AUC "heavily promoted a 93% to a 96% first-time passage rate on the USMLE Step 1 exam by AUC students" – even if technically or literally true – created the misleading and deceptive net impression that "virtually every student at AUC passes the USMLE Step 1 on their first attempt." *Compl*. ¶6. The Complaint adequately alleges deceptive practices and Defendants' intent need not be alleged or proven. "A practice may qualify as deceptive without proof of intent." *F.T.C. v. Corpay, Inc.,* 164 F.4th 807, 834 (11th Cir. 2026) (citation omitted).[4]

---

[4] In evaluating a FDUTPA claim, Florida courts must give "due consideration and great weight"

7

These are quintessential FDUTPA allegations that do not sound in fraud. "A review of the statute, as interpreted by the Florida Supreme Court, makes clear that knowledge of a deceptive act is not required to state a claim under FDUTPA." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1232 (S.D. Fla. 2021) (citation omitted).[5] To paraphrase Judge Dimitrouleas who applied *Pop* in an analogous case, whether closely scrutinized or peaked at, "[t]hese allegations do not substantively track the elements of a claim for common law fraud. They are 'not necessarily premised on intentional deception' but instead on the consumer's experience with the product." *Lendinara*, 2025 WL 3699694, at *3.

Even if Rule 9(b) did apply, the allegations here are sufficiently particular to satisfy it. *See Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1318 (S.D. Fla. 2013); *see also, American Airlines, Inc. v. Spada,* 2024 WL 2797380, at *3 (S.D Fla. Feb. 23, 2024) (Damian, J.) (noting Rule 9(b) may be "applied less stringently" where "the alleged fraud occurred over an extended period" and involved numerous acts…"[i]n such cases, plaintiffs need only allege 'some examples of actual false claims to lay a complete foundation for the rest of [the] allegations.'").[6]

To the extent Rule 9(b) applies, its purpose of ensuring fair notice is easily satisfied here. To cite just one example of the particulars that give Defendants fair notice of the claims against them, the misleading claim AUC published in its 2020-2021 Acceptance Packet, provided to

---

to FTC and federal court interpretations of the FTC Act. *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010).

[5] Judge Ruiz continues: "The Florida Supreme Court teaches that a deceptive act occurs when there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. Thus, the Act focuses on whether an act is deceptive, not whether a defendant knew that the allegedly violative conduct was occurring." 530 F. Supp. at 1232 (citation omitted).

[6] Where the defendant was a corporation, it was sufficient under Rule 9(b) to allege that the corporation failed to disclose material facts. *See, e.g., Water Inter. Net., U.S.A., Inc. v. East*, 892 F. Supp 1477, 1481 (M.D. Fla. 1995) (finding that fraud claim against corporation based upon material omission stated a cause of action).

Plaintiff, is pasted in a screenshot in the Complaint and provides: "The first-time USMLE Step 1 pass rate for AUC in 2019 was 94%." *Compl.* ¶38. Omitted from that representation is any methodology, details on attrition, or context about the Comp as a gatekeeper. The remaining, detailed allegations throughout the sixty-one paragraphs of the Complaint further develop the allegations as will be fleshed out in Plaintiff's Response to the MTD.

>        *iii.     Defendants Other Rule 12(b)(6) Arguments are without Merit.*

Defendants cursorily contend that "Plaintiff does not plead facts supporting the elements of a viable claim under the FDUTPA—or whether the FDUTPA applies to her allegations at all." MTS at 8. Quite the contrary.  As will be fleshed out in greater detail in Plaintiff's Response to the MTD, Plaintiff has pled a quintessential FDUTPA claim based on deceptive practices emanating from Florida.

To state a FDUTPA claim, a plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983–84 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*, 988 So.2d 82, 86 (Fla. 4th DCA 2008)). Although Defendants' MTS addresses none of these elements, the MTD attacks each of them. However, those arguments fail because the Complaint adequately alleges all three.

>        a.   The USMLE Step 1 Passage Rate Claim is Deceptive and Unfair

The MTD contends, as it must to obtain dismissal at this stage, that AUC's representations can be deemed not deceptive or unfair as a matter of law. MTD at 14 (citing the magistrate judge's unpublished report and recommendation in *Casey v. Fla. Coastal Sch. of L., Inc.*, 2015 WL 10096084 (M.D. Fla. Aug. 11, 2015)). In support of this argument, Defendants cite to cases outside this District. And with good reason. In this District, "how a reasonable consumer would interpret a term is an issue of fact." *Cubesmart*, 328 F.Supp.2d at 1361 (citation omitted).

The Eleventh Circuit has held that whether a representation, omission, or practice is misleading presents a question of fact and is thus not properly resolved on a motion to dismiss. "Generally, whether an advertisement is likely to mislead reasonable consumers presents a question of fact. But we may resolve that question on summary judgment 'if the evidence is so one-sided that there can be no doubt about how the question should be answered.'" *Corpay*, 164 F.4th at 834 (citations omitted). It is for "the factfinder [to] determine whether [an advertisement] would deceive an objectively reasonable observer[.]" *Carriuolo*, 823 F.3d at 986.

For Defendants to prevail as a matter of law, the Court would have to credit Defendants' contentions – outside the allegations of the Complaint – that Defendants published the "correct pass rates" and "published the methodology used to calculate those rates." MTD at 1. As to the correct passage rate, Plaintiff alleges "AUC's true success rate is unknown" and that what is published is "artificially inflate[d]." *Compl*. ¶¶47, 49.[7] As to purportedly publishing the methodology, the allegations refute that, as do the very advertisements AUC publishes. *Id*. at ¶¶ 40, 41, 46. The context of the passage rate representations by Defendants is key. As alleged, there was undisclosed data that was unavailable to prospective students who had insufficient information to properly contextualize the claims. *Id* at ¶¶ 43, 44, 47, and 48.

The Complaint also contains representations where neither the passage rates nor the methodology are disclosed whatsoever. *Compl*. at ¶¶ 38 and 40. Defendants ask the factfinder to simply credit that these advertisements had words that they do not have.[8] And even if the

---

[7] This again illustrates that the FDUTPA claims do not sound in fraud: the crux of the allegations is the net impression left on the consumer rather than Defendants' intent.

[8] In response to other advertisements, such as the one at *Compl*. ¶39, Defendants attach a Student Handbook (ECF No. 22-1, Ex. A) to their MTD which purportedly provides context to the fine-print medical sciences curriculum asterisk at ¶39. As will be unpacked in the MTD, the Handbook does not provide adequate context to the deceptive passage rate representation. Further, and fatal to the MTS and the MTD, attaching the Handbook concedes that understanding the representation

10

methodology was published – which it was not – it would have to have been published in a sufficiently clear manner to leave a net impression that was not misleading. Disclaimers do not dispel misleading marketing "when a disclaimer is small, ambiguous, or contradicted by the body of the ad." *Corpay*, 164 F.4th at 836 (citing *F.T.C. v. Cyberspace.Com LLC*, 453 F.3d 1196, 1200–01 (9th Cir. 2006) ("A solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures.")); *F.T.C. v. Devry*, 2016 WL 6821112, at *5 (C.D. Cal. May 9, 2016) (whether "small print" disclaimer sufficient to dispel misleading representations is an issue for the trier of fact).

Therefore, for Defendants' to prevail, the Court must also find as a matter of law that their advertisements were not misleading as to their net impressions. "In determining whether a representation is likely to mislead consumers acting reasonably, courts consider the net impression created. If the statements are likely to mislead reasonable consumers, then it makes no difference if the statements are technically or literally true." *CubeSmart*, 328 F. Supp. 3d at 1361. The *CubeSmart* order noted that "how a reasonable consumer would interpret a term is an issue of fact." *Id*. Thus, for several independent reasons, Defendants' MTS falls far short of the mark.

b. <u>Causation and Damages are Adequately Pled</u>

FDUTPA applies to both deceptive representations and omissions and the plaintiff "need not show actual reliance on the representation or omission at issue." *Carriuolo*, 823 F.3d at 984. "FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct." *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,* 332 Fed. Appx. 565, 567 (11th Cir.2009) (quotation omitted). In *Fitzpatrick v. Gen. Mills, Inc.*, the Eleventh Circuit reaffirmed that "recovery under

---

is context-dependent, thus a fact question. And the Handbook, which supposedly clarifies at ¶39, has no bearing on the passage rate screenshots of ¶38 or ¶40 of the Complaint, which have no asterisk or reference to the curriculum.

the FDUTPA does not hinge on whether a particular plaintiff actually relied on [Defendant's deceptive representation]; rather, whether that allegedly deceptive conduct would deceive an objective reasonable consumer." 635 F.3d 1279, 1282–83 (11th Cir. 2011) (cleaned up).[9]

Here, the Complaint alleges, inter alia, that the inflated USMLE Step 1 passage rate representations, coupled with the omission of AUC's high attrition rate were "material to prospective students' decision to enroll at AUC." *Compl.* at ¶ 46. The Complaint likewise alleges damages, including that as a result of Defendants' wrongful conduct, "each Class member [including Plaintiff] has sustained damage" because each "paid for a medical education that was deceptively advertised to allow the overwhelming majority of students to pass the USMLE Step 1 after two years of coursework." *Id.* at ¶ 60. FDUTPA damages are measured by "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Carriuolo*, 823 F.3d at 986; *see also Coghlan v. Wellcraft Marine Corp.,* 240 F.3d 449, 453 (5th Cir. 2001) ("the value of the product as promised minus the value of the product delivered."). At the pleading stage, Plaintiff need only present a "plausible theory of damages." *Felice v. Invicta Watch Co. of Am., Inc.*, 2017 WL 3336715 (S.D. Fla. Aug. 4, 2017). The

---

[9]The Eleventh Circuit partially vacated the district court's order because "the definition of the class it certified was in conflict with [its] analysis" in that it did include an element of reliance. *Fitzpatrick*, 635 F.3d at 1283. The Eleventh Circuit described the district court's analysis that reliance was not required as "sound and in accord with federal and state law." *Id.*  Notably, in support of this holding, the Court cited favorably *Davis v. Powertel, Inc.,* 776 So.2d 971, 973 (Fla. 1st DCA 2000) ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue") and *State, Office of Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC,* 946 So.2d 1253, 1258 (Fla. 1st DCA 2007) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.") (quotation omitted).

Complaint clearly does so, including by alleging that "AUC forced [plaintiff] to repeat (and pay for) her Fall 2022 classes during the January 2023 semester." *Compl*. at ¶ 52.

> c. Curtailing FDUTPA Geographically is Contrary to its Plain Language and Southern District of Florida Caselaw

Defendants also paint themselves as foreigners to Florida, citing links of their corporate parent to Illinois and the school itself to the Netherlands. But these claims of a tenuous connection to Florida are contrary to the well-pled allegations of the Complaint, and are belied by the evidentiary and procedural record available.[10] In the MTD, Defendants claim this supports their contention that FDUTPA does not cover their conduct because the Plaintiff is a non-resident. Defendants cite Florida Second and Fourth District Court of Appeal cases but omit that a Third District Court of Appeals ruled to the contrary. *See Millennium Commc'ns & Fulfillment, Inc. v. Off. of Att'y Gen., Dep't of Legal Affs., State of Fla.*, 761 So. 2d 1256, 1257 (Fla. 3d DCA 2000). Defendants do acknowledge that "some federal courts applying the FDUTPA have applied the statute to non-Florida residents, but only where the alleged misconduct occurred within Florida." MTD at 12 (citations omitted). That is less than half the story.

In fact, the *Millenium* holding is more persuasive and ends Defendants' arguments. As Judge Rosenberg summarized in *Bank of Am., N.A. v. Zaskey*:

> It appears that **all of the federal courts in the Southern District of Florida that**

---

[10] Exhibit A in Defendants' MTD (which they allege is incorporated to the Complaint) admits they are not foreigners to Florida; AUC is run in part from its administrative offices which are located in the Southern District of Florida. ECF No. 22-1: 12 of 139. Further, AUC on behalf of itself and several medical students availed itself of the same forum to bring a breach of contract case against a foreign (New York) corporation where it argued its contractual obligations to provide medical clerkships to its students were undertaken and obligated from the very administrative offices whose import Defendants now seeks to downplay. *See Am. Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc.*, 484 F. App'x 322, 324, 327, n.3 (11th Cir. 2012) (noting its satellite office was in Coral Gables, Florida, that "AUC alleged that the hospitals negotiated the contract in Florida, owed their guaranty obligation there" and that AUC's Florida "satellite office" was more central to the operations at issue than the "home office" in the Caribbean).

13

> **have considered this issue have followed *Millennium* and held that "FDUTPA applies to non-Florida residents if the offending conduct took place predominantly or entirely in Florida."** *Karhu v. Vital Pharma., Inc.*, Case No. 13-60768-CIV, 2013 WL 4047016 (S.D. Fla. Aug. 9, 2013) ("The Court finds that the reasoning in *Millennium* and its progeny provides the fairest reading of FDUTPA's text and stated purpose. Nothing in the language of the statute suggests that it is limited to transactions involving Florida consumers."); *see also Barnext Offshore, Ltd. v. Ferretti Group, USA, Inc.*, Case No. 10-23869-CIV, 2012 WL 1570057, *6 (S.D. Fla. May 2, 2012) ("The Court is unpersuaded that the FDUTPA provides relief only to Florida consumers....[N]othing in *Millennium* suggests that the FDUTPA applies *only* when conduct occurs entirely within Florida.").

*Bank of Am., N.A. v. Zaskey*, 2016 WL 2897410, at *9 (S.D. Fla. May 18, 2016) (emphasis supplied). Indeed, courts in this District have held that allegations materially similar to those here—namely, that the defendant operated from Florida and the challenged representations or communications emanated from Florida—are enough to allow a FDUTPA claim to proceed, even where the plaintiff resides elsewhere. *See Zaskey*, 2016 WL 2897410, at *10 ("Given the allegation that Green Tree was conducting business in Florida during the relevant time period, it is a fair inference that these communications originated in Florida."); *Costa v. Kerzner Int'l Resorts, Inc.*, 2011 WL 2519244, at *3-4 (S.D. Fla. June 23, 2011) (FDUTPA claim could be maintained in a putative nationwide class action with non-resident Plaintiff where defendants were citizens of Florida for diversity purposes and operated a centralized website or reservation call center out of Florida). The preliminary peak shows that dismissal on this basis is not a foregone conclusion.

### d. The Unjust Enrichment Claim is Well Pled

A claim for unjust enrichment has three elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained the benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Matus v. Sport Squad*, 2024 WL 5135678, at *4 (S.D. Fla. Dec. 17, 2024). In the MTS, citing their MTD, Defendants attack the third element that there is no allegation that the

14

Defendants retaining the benefit would be inequitable. Defendants also argue there is no allegation there is not an adequate remedy at law. MTD at 20-21.

The allegations do plead it would be inequitable for the Defendants to retain the consideration that has been received because it was obtained "through misrepresentations and deception." *Compl*. at ¶¶ 73-74. This states a claim for unjust enrichment. *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1289-91 (S.D. Fla. 2020) (denying dismissal of unjust enrichment claim where plaintiff alleged defendant retained money obtained through deceptive representations and omissions).

Defendants also ignore precedent that the rule that "equitable remedies are not available under Florida law when adequate legal remedies exist .... does not apply to unjust enrichment claims." *State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011), *rev'd in part on other grounds*, 824 F.3d 1311 (11th Cir. 2014); *see also*, *Matus*, 2024 WL 5135678, at *4 ("[Plaintiff] may allege, in the alternative, a claim for unjust enrichment even though [his] FDUTPA claim might provide an adequate legal remedy."). The unjust enrichment count is therefore highly unlikely to be dismissed.

e.   The Educational Malpractice Assertion is a Red Herring

Defendants attempt to rewrite Plaintiff's claims into educational malpractice assertions. MTD at 21-22. Defendants cite two inapposite cases decided at summary judgment. *Id*. Defendants (mis)frame what is at issue in this case as a measure of the effectiveness of the education compared to what was advertised. *Id*. This is not correct.[11]  What is at issue is whether the alleged marketing practices – done to induce students to attend the school and pay tuition – were misleading such

---

[11] Were this doctrine to apply as broadly as Defendants assert, educational institutions would be impervious to FTC or FDUTPA claims based on misrepresentations about their school, which they are not. *See Compl*. ¶ 15 and *F.T.C. v. Devry*, 2016 WL 6821112.

15

that they would deceive an objectively reasonable observer. *Carriuolo*, 823 F.3d at 986. The inquiry will not be into pedagogical methods but whether Defendants' marketing misled or deceived students. Indeed, in a case involving "false representations," the court declined to apply the doctrine because "[r]uling on these issues would not require an inquiry into pedagogical methods, the quality of Defendant's instructors and curriculum, or an evaluation of Plaintiffs' 'progress or achievement, or the reasons for their success or failure.'" *Makaeff v. Trump Univ., LLC*, 2010 WL 3988684, at *3 (S.D. Cal. Oct. 12, 2010).

## C. Plaintiff's discovery is narrowly tailored and should proceed

In making the case against having to expend resources on this case, Defendants point to certain RFPs as being aimed at merits. MTS at 1 ("Plaintiff served 130 discovery requests before the parties even had an opportunity to finalize their Rule 26 conference materials. These requests plainly go to the merits of the case[.]"). This argument provides no basis for a blanket stay. The Parties' agreed schedule does not contemplate bifurcated class and merits discovery, and Defendants have neither requested nor moved for such relief.[12]

Defendants also improperly imply Plaintiff served discovery prematurely on February 25, 2026. MTD at 2-3. That is incorrect. The Rule 26(f) conference took place on February 18, 2026, and Rule 26(d)(1) expressly permits discovery after that conference. At the conference Defendants stated they intended to seek a stay, and Plaintiff responded that any such motion would be opposed

---

[12] Defendants reliance on *Zarnesky v. Adidas Am., Inc.*, 2021 WL 3729230 (M.D. Fla. June 10, 2021) and *Zamber v. Am. Airlines, Inc.*, 2017 WL 5202748 (S.D. Fla. Feb. 17, 2017) is misplaced because they turned on unusual facts. In *Zarnesky*, the court found "expansive and far reaching discovery," a novel technical claim, and a motion to dismiss with "serious merit," making the "rare situation" justifying a stay. 2021 WL 3729230, at *3. And the *Zamber* court emphasized a "procedural twilight zone" in which the motion could "conceivably ... go either way." 2017 WL 5202748, at *1-2 (S.D. Fla. Feb. 17, 2017). This case presents no similar circumstances. *See Letidas*, 2024 WL 6468422, at 2 (rejecting "unnecessary costs," "motions practice," and "judicial economy" as reasons that "are true in every class action" and do not justify a stay).

and encouraged Defendants to file it promptly if they intended to pursue their clearly disfavored request. Defendants instead waited to file the MTS alongside their responsive pleading to the Complaint, the MTD. Further, on March 11, 2026, Plaintiff agreed to Defendants' request for an extension of their responses to discovery by 30 days to April 27, 2026. For Defendants to lodge a prematurity argument – neither grounded in the federal rules nor the case's procedural posture – is puzzling, to say the least. In any event, these issues provide no grounds for a blanket stay of discovery.

Defendants grossly mischaracterize the volume and nature of Plaintiff's discovery requests. They *combine* the number of requests for production of documents ("RFPs") *and* interrogatories ("Rogs") served on two separate Defendants to exaggerate the alleged burden which discovery would place on them. In fact, Plaintiffs propounded 47 RFPs and 13 Rogs to AUC (60 total requests) and 60 RFPs and 10 Rogs to the Corporate Parent Defendant. But the requests propounded to the Corporate Parent are largely duplicative of those propounded upon AUC and both defendants are represented by the same counsel. The duplicative discovery is necessary to ensure the responsive records are addressed. The corporate structure associated with the for-profit medical school model and the repeated "rebranding" in changing the names [*see Compl*. ¶¶ 14-15 and MTS, n. 1] masks some of the responsibilities and renders less than transparent which functions are handled by AUC at the school level and which functions are handled at the corporate level. As the Complaint alleges, the Corporate Parent Defendant "exercises control over AUC through its senior executives and employees and provides administrative assistance and oversight." *Compl*. ¶ 33. In fact, AUC relies on shared employees who also work for another for-profit medical school operated by the corporate parent Defendant. *Id*.

Further, to take but one of the numerous examples of misstatements related to the effort to

17

paint the requests as overbroad and burdensome, Defendants point to requests related to SEC filings. MTS at 4. Defendants claim Plaintiff seeks documents "not remotely relate[d]" to the claims such as "all documents regarding statements in Adtalem Global Education, Inc.'s SEC filings from 2018 to 2023." *Id.* As framed by Defendants, this set of requests *is* overbroad. But Defendants' framing is in service of a rhetorical point divorced from reality. It is, in a word, deceptive. This framing undermines the reliability of their affidavit which estimates costs based not on the discovery propounded but the intentional distortion of it. Contrary to Defendants' express claim, Plaintiff has not sought "all documents regarding statements made Adtalem Global Education, Inc.'s SEC Filings." Far from it. The corporate parent Defendant, a public company, made certain representations in its Form 10-K SEC Filings that directly relate to the claims at issue in this case, and Plaintiff is seeking those. *See, e.g.*, ECF No. 23-1, RFP #53 (Exhibit A to MTS) ("All documents and communications relating to the representation You made in your Form 10-K SEC Filing for the fiscal year ending June 30, 2020 **with respect to AUC that "AUC students achieved a 95% and 94% first-time pass rate on the USMLE Step 1 exam in 2018 and 2019, respectively," which appears on page 5**.") (emphasis supplied).

This is a tailored request, limited to documents related to the claim that is at the heart of this case, namely that "AUC students achieved a 95% and 94% first-time pass rate on the USMLE Step 1 exam."[13] This doesn't call for all documents related to statements in SEC Filings, but simply those related to the sanguine but false USMLE Step 1 passage statistic representation. The respective page number the claim appears on in Defendant's 10-K is identified within the request,

---

[13] In fact, this SEC Filing belies the lead argument Defendants rely upon in their MTD, where they claim that Defendants made the claims in unambiguous context rather than deceptively. MTD at 1. Despite their claim that the passage rate was paired with the publication of the methodology, the SEC filing at issue in the discovery request, like advertising done elsewhere, discloses no methodology for that deceptive claim.

further easing Defendant Adtalem Global Education, Inc.'s burden.[14]

In any event, the discovery was propounded in February and rather than work with Plaintiff to make discovery more manageable and otherwise negotiate the requests, Defendants have chosen to file their MTS nearly a month after the discovery was propounded. Plaintiff's discovery requests are narrowly tailored, or at least intended to be. To the extent Defendants disagree, Plaintiff is available to negotiate in good faith. The SEC examples above illustrate that and prove Defendants are distorting them for rhetorical effect. If the parties fail to reach agreement, Defendants "may raise appropriate objections to unduly burdensome discovery requests." *Lord v. Univ. of Miami*, 2021 WL 9859769, at *3 (S.D. Fla. Oct. 27, 2021) (motion to stay denied). "This more calibrated system of discovery can certainly protect Defendant from incurring unjustified expense." *Id*. In this District, "[w]e have a set of well-established, discovery-dispute procedures, which will allow our magistrate judge to resolve any discovery issues expeditiously. And our courts have long believed that allowing a magistrate judge to address 'particularized discovery issues ... on a case-by-case basis' is 'a more prudent approach than an indiscriminate blanket stay of discovery.'" *Trump v. BBC*, 2026 WL 403823, at *2 (S.D. Fla. Feb. 12, 2026) (citation omitted) (motion to stay denied). The "[magistrate judge] is well equipped to handle any discovery issues that might arise." *Letidas*, 2024 WL 6468422, at *2.

---

[14] The SEC-related discovery is directed only to the corporate parent and largely accounts for the non-duplicative RFPs. There is no blanket call for documents related to statements made concerning AUC, let alone, all statements the Defendant made in the 10-K. There is only a call for documents central to the misrepresentation claim at the heart of this case. In addition to those sanguine, but false statistics, there is another material claim for which Plaintiff seeks documents. The RFPs also seek documents for the specific claim Adtalem made in its 10-Ks, with page numbers identified, involving some version of the statement that "AUC's … medical education program[] [is] comparable to the educational programs offered at U.S. medical schools as evidenced by student performance on the U.S. Medical Licensing Examination ('USMLE') tests." RFP #49.

The particularized discovery concerns should be addressed with the Court where the parties cannot resolve them.

### D.      Plaintiff will be prejudiced and the public interest will not be served by a stay

Defendants' requested stay would prejudice Plaintiff and the sizable putative class of students by unfairly delaying their meritorious, fact-driven claims. Defendants point to the proposed joint schedule to suggest that no prejudice would result from delay, but that schedule was agreed upon by Plaintiff *without* contemplating a stay, and has not yet been entered by the Court. In fact, in meeting and conferring on the schedule, counsel for Plaintiff noted stays are disfavored in the District and proposed that Defendants should file their stay request at as early a time as possible so the case could proceed to the actual issues. Defendants now try to turn that agreed schedule against Plaintiff to argue that a stay is warranted. The public interest is not served by any delay of Plaintiffs' meritorious claims.

It is precisely these considerations of fairness and undue delay, among the other factors enumerated herein, which have led federal courts to consistently reject the pendency of a motion to dismiss as grounds for a blanket stay of discovery. *See, e.g., Cabrera*, *supra*; *Feldman*, *supra*; *Mcturk, supra; Echevarria, supra* (collecting cases); *Letidas*, *supra*; *Trump, supra.*

### CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Stay.

Dated: April 6, 2026.                                    Respectfully submitted,

                                                         BUCKNER + MILES
                                                         2020 Salzedo Street, Ste. 302
                                                         Coral Gables, Florida 33134
                                                         Tel.: (305) 964-8003
                                                         Fax: (786) 523-0585

20

/s/Seth Miles, Esq.
Seth Miles, Esq., FBN 385530
seth@bucknermiles.com
David M. Buckner, Esq. FBN 60550
david@bucknermiles.com
Brett E. von Borke, Esq., FBN 0044802
vonborke@bucknermiles.com
Jonathan E. Kobrinski, Esq., FBN 1029120
jkobrinski@bucknermiles.com

and

DOLAN DOBRINSKY ROSENBLUM BLUESTEIN LLP
2665 S. Bayshore Drive, Suite 603
Miami, Florida 33133
Tel.:. (305) 371-2692
Fax: (305) 371-2691

Manuel Leon Dobrinsky, Esq., FBN 775525
MDobrinsky@DDRLawyers.com
Eric Bluestein, Esq., FBN 58240
EBluestein@DDRLawyers.com
Laura Navia, Esq., FBN 1058283
LNavia@DDRLawyers.com

*Counsel for Plaintiff and the Proposed Class*

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and served electronically on April 6, 2026  on all counsel or parties of record on the Service List below.

/s/ Seth Miles

Seth Miles, Esq., FBN 385530

seth@bucknermiles.com

22

**SERVICE LIST**

Martin B. Goldberg, Esq.
Lash & Goldberg
100 SE 2nd Street, Suite 1200
Miami, Florida 33131
mgoldberg@lashgoldberg.com

Caitlin E. Dahl, Esq.
Eric R. Swibel, Esq.
Sean M. Berkowitz, Esq.
Shelby L. Dedo, Esq.
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
caitlin.dahl@lw.com
eric.swibel@lw.com
sean.berkowitz@lw.com
shelby.dedo@lw.com

Delia Tasky, Esq.
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
delia.tasky@lw.com

Lynnette Cortes Mhatre, Esq.
Lash Goldberg Fineberg LLP
2500 Weston Road, Suite 220
Weston, Florida 33331
lmhatre@lashgoldberg.com

*Counsel for Defendants Adtalem Golbal Education, Inc.*
*and Adtalem Global Health Inc.*

23