**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:26-cv-20504-DAMIAN**

NALEXUS SHIELDS, on behalf of herself
and all others similarly situated,

        Plaintiffs,

    v.

ADTALEM GLOBAL EDUCATION INC.
and ADTALEM GLOBAL HEALTH, INC.
d/b/a AMERICAN UNIVERSITY OF THE
CARIBBEAN SCHOOL OF MEDICINE,

        Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO STAY DISCOVERY PENDING THE**
**<u>DISPOSITION OF DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

I.   DEFENDANTS SATISFY THE STANDARD TO STAY DISCOVERY .........................1

II.  PLAINTIFF'S CLAIMS FAIL FOR MULTIPLE INDEPENDENT REASONS, WHICH SUPPORTS A DISCOVERY STAY ......................................................3

    A.   Plaintiff's Claims Are Barred By The Statute of Limitations.................................3

    B.   Plaintiff's Complaint Is Governed By, And Falls Short of Rule 9(b) .....................4

    C.   Plaintiff Fails To Plead The Elements Of Her FDUTPA Claim..............................5

    D.   Plaintiff Cannot Avail Herself Of The FDUTPA .....................................................6

    E.   Plaintiff's Unjust Enrichment Claim Does Not Support Initiating Broad Discovery .................................................................................................................7

    F.   Plaintiff's Claims Violate Florida's Educational Malpractice Doctrine..................7

III. PLAINTIFF'S OVERBROAD DISCOVERY REQUESTS FORTIFY DEFENDANTS' STAY REQUEST...................................................................................8

CONCLUSION......................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc.*,
484 F. App'x 322 (11th Cir. 2012) ....................................................................................7

*Boise v. ACE USA, Inc.*,
2015 WL 4077433 (S.D. Fla. July 6, 2015)......................................................................1

*Cabrera v. Progressive Behav. Sci., Inc.*,
331 F.R.D. 185 (S.D. Fla. 2019).......................................................................................2

*Carriuolo v. General Motors Co.*,
823 F.3d 977 (11th Cir. 2016) ..........................................................................................8

*Chudasama v. Mazda Motor Corp.*,
123 F.3d 1353 (11th Cir. 1997) .....................................................................................1, 2

*Echevarria v. Expedia Grp. Inc.*,
2025 WL 3496164 (S.D. Fla. Dec. 4, 2025)......................................................................2

*Feldman v. Flood*,
176 F.R.D. 651 (M.D. Fla. 1997).......................................................................................2

*FTC v. DeVry Educ. Grp., Inc.*,
2016 WL 6821112 (C.D. Cal. May 9, 2016) .....................................................................8

*Hipp v. Liberty Nat'l Life Ins. Co.*,
252 F.3d 1208 (11th Cir. 2001) .........................................................................................3

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
2021 WL 10428229 (S.D. Fla. Oct. 9, 2021).....................................................................1

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) ..............................................................................6

*In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*,
649 F. Supp. 3d 1245 (S.D. Fla. 2022) ..............................................................................8

*Letidas Logistics, LLC v. Citibank, N.A.*,
2024 WL 6468422 (S.D. Fla. Oct. 21, 2024)......................................................................2

*Makaeff v. Trump University, LLC*,
2010 WL 3988684 (S.D. Cal. Oct. 12, 2010) .....................................................................8

*Marrache v. Bacardi U.S.A., Inc.*,
    17 F.4th 1084 (11th Cir. 2021) ..................................................................................6

*McTurk v. Lottery.com, Inc.*,
    2024 WL 5681470 (S.D. Fla. Oct. 29, 2024)..............................................................2

*Montgomery v. New Piper Aircraft, Inc.*,
    209 F.R.D. 221 (S.D. Fla. 2002)................................................................................6

*MSP Recovery Claims, Series LLC v. Amerisure Insurance Co.*,
    2021 WL 4992560 (S.D. Fla. Mar. 8, 2021).............................................................2

*Nelson v. Mead Johnson Nutrition Co.*,
    270 F.R.D. 689 (S.D. Fla. 2010)................................................................................4

*Pop v. LuliFama.com LLC*,
    145 F.4th 1285 (11th Cir. 2025) ................................................................................4

*Star-Brite Distrib., Inc., v. Gold Eagle Co.*,
    Case No. 14-cv-61841, Dkt. 21 (Sept. 18, 2014).......................................................4

*Trump v. Brit. Broad. Corp.*,
    2026 WL 403823 (S.D. Fla. Feb. 12, 2026) .............................................................3

## STATUTES

Fla. Stat. Ann. § 501.211(2).......................................................................................................5

## RULES

S.D. Fla. L.R. 5.1(a)(4) ............................................................................................................3

iii

Defendants have readily cleared the bar to stay discovery given Plaintiff's barebones Complaint; and Plaintiff's Opposition does not meaningfully grapple with the legitimate challenges to her pleading, each of which support dismissal and, in turn, Defendants' request to stay discovery. Plaintiff also cannot hide from the fact that the sweeping discovery she seeks would unduly burden Defendants before the pleadings are even settled. Put simply, Defendants satisfied their burden to stay discovery, and Plaintiff's Opposition does not show otherwise.

A temporary stay of discovery in this case is warranted, as (1) courts can and do grant temporary discovery stays pending a dispositive motion in circumstances such as these, (2) Defendants have put forth multiple, independent and meritorious arguments that would dispose of the entire action, and (3) Plaintiff's overbroad discovery would unduly burden Defendants.

## I.      DEFENDANTS SATISFY THE STANDARD TO STAY DISCOVERY

Plaintiff first argues—based on a distortion of Defendants' Motion—that Defendants applied the wrong standard in seeking to stay discovery. *See* Opp. at 1-4. She claims that Defendants argued that discovery stays are "appropriate as a matter of course." Opp. at 1. To the contrary, citing binding Eleventh Circuit authority and its progeny, Defendants explained that where, as here, a party presents "legitimate" challenges to the adequacy of the complaint, discovery stays are appropriate, particularly in complex putative class actions like this one. Opp. at 4 n.1; *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2021 WL 10428229, at *2–3 (S.D. Fla. Oct. 9, 2021); *see also* Mot. at 5-10 (collecting cases).[1]

Plaintiff's contention that a discovery stay would be "at odds with the customs and caselaw of this District" is out of lockstep with the case law. Opp. at 3. Indeed, Plaintiff herself cites a class case where the court *granted* a motion to stay proceedings, in part because—as Defendants argue here—the defendant "w[ould] be forced to endure onerous discovery and significant expenses." *Boise v. ACE USA, Inc.*, 2015 WL 4077433, at *5–6 (S.D. Fla. July 6, 2015); *see* Opp. at 2-3.

---

[1] Plaintiff faults Defendants for relying on *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997), claiming it is inapposite because it involved a "dubious claim, overly broad discovery, and substantial delay" in ruling on a dispositive motion. Opp. at 3-4. Yet Plaintiff's claims are dubious, *see* Mot. to Dismiss at *passim*; she seeks overbroad discovery, *see* Mot. at 4, 9-10; and there is no date set for the Court to rule on Defendants' pending dismissal motion.

Plaintiff relies primarily on non-class cases that are readily distinguishable from the broad putative class action that she filed.[2]  And the two remaining putative class actions that Plaintiff cites are misplaced.  In *MSP Recovery Claims, Series LLC v. Amerisure Insurance Co.*, the court denied a stay request after plaintiff filed a *third amended complaint* that "address[ed] the deficiencies" in earlier pleadings, which, of course, is not present here.  2021 WL 4992560, at *1 (S.D. Fla. Mar. 8, 2021).  Furthermore, in *Letidas Logistics, LLC v. Citibank, N.A.*, the movant did "not cite any specific prejudice it might suffer" absent a stay or "supply the Court w[ith] an affidavit attesting to expenditures or resource consumption rendering discovery unduly burdensome."  2024 WL 6468422, at *2 (S.D. Fla. Oct. 21, 2024).  Here, by contrast, Defendants submitted a sworn declaration with good-faith estimates of the significant time and cost it would take to respond to Plaintiff's discovery requests as drafted.  *See* Mot. at Ex. B.  In short, Plaintiff does little to grapple with the significant discovery concerns facing putative class action defendants that underscore Defendants' request for a discovery stay.  *See* Mot. at 6-7 (collecting cases).

---

[2] *See Feldman v. Flood*, 176 F.R.D. 651, 653 (M.D. Fla. 1997) (denying stay motion because dismissal was not likely and because discovery could help resolve motion to dismiss); *Cabrera v. Progressive Behav. Sci., Inc.*, 331 F.R.D. 185, 186 (S.D. Fla. 2019) (denying stay motion involving single employee's claim against her employer, without analyzing the burden imposed by the requested discovery); *Echevarria v. Expedia Grp. Inc.*, 2025 WL 3496164, at *1–2 (S.D. Fla. Dec. 4, 2025) (related case, *Echevarria I*, had gone to trial, with 68,000 pages of discovery already produced); *McTurk v. Lottery.com, Inc.*, 2024 WL 5681470, at *1 (S.D. Fla. Oct. 29, 2024) (acknowledging "[i]n this Circuit, motions to stay discovery pending ruling on a motion to dismiss are guided by *Chudasama*, 123 F.3d at 1367, wherein the Eleventh Circuit instructed that '[f]acial challenges to the legal sufficiency of a claim or defense … should ... be resolved before discovery begins,'" but nonetheless denying stay motion in a two-page opinion without significant analysis) (citation omitted).

## II.   PLAINTIFF'S CLAIMS FAIL FOR MULTIPLE INDEPENDENT REASONS, WHICH SUPPORTS A DISCOVERY STAY

A preliminary "peek" at Defendants' Motion to Dismiss—as required by the case law[3]—shows that Plaintiff's claims are likely to be dismissed, thus buttressing Defendants' Motion to Stay.[4]

### A.   Plaintiff's Claims Are Barred By The Statute of Limitations

Plaintiff offers two arguments to overcome the statute-of-limitation issue that dooms her Complaint, both of which fail. *First*, she asserts that Defendants' "continuous use of" the statements at issue permits her to file a claim that accrued before the limitations period. Opp. at 5-6 (citation omitted). But that ignores Eleventh Circuit law to the contrary. *See, e.g.*, *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221–22 (11th Cir. 2001) (a plaintiff cannot "revive a stale claim simply because the allegedly discriminatory policy still exists and is being enforced against others").[5]

*Second*, Plaintiff attempts to re-write her Complaint, claiming that *even if* her initial enrollment at AUC fell outside the limitations period (it does, based on the face of the Complaint), "each semester of attendance constitutes a separate purchase transaction," and *some* of those transactions are not time barred. Opp. at 6. That is not what the Complaint alleges. The Complaint alleges that Defendants orchestrated a "scheme" to lure "*prospective* students" to "enroll" at AUC based on purportedly misleading ads about certain passage rates. Compl. ¶¶ 9, 34, 43, 46, 49, 50-

---

[3] Plaintiff quibbles that Defendants cited their Motion to Dismiss in the Motion to Stay. *See* Opp. at 5 n.2. As Plaintiff admits, however, the applicable standard requires a "preliminary peak [sic]" into Defendants' dismissal motion. *Id.* at 5. It thus is standard for motions to stay discovery to incorporate and cite related dismissal motions, as Plaintiff's cases demonstrate. *See, e.g.*, Defs.' Mot. to Stay Disc. Pending a Ruling on Their Mot. to Dismiss, *Echevarria*, 2025 WL 3496164 (citing the dismissal motion throughout the stay motion), ECF No. 39. Plaintiff further complains that Defendants' Motion to Dismiss is "narrowly spaced," Opp. at 5 n.2, but Local Rule 5.1 expressly permits one-and-one-half spacing. *See* S.D. Fla. L.R. 5.1(a)(4).

[4] Plaintiff bemoans that Defendants filed their Motion "nearly a month after the discovery was propounded." Opp. at 19. As Plaintiff's authorities confirm, however, if Defendants filed their stay motion *before* their Motion to Dismiss, the Court could not take a "preliminary peek" at the merits of the dismissal motion, which would have been "reason enough" for the Motion to Stay to be premature. *Trump v. Brit. Broad. Corp.*, 2026 WL 403823, at *1 (S.D. Fla. Feb. 12, 2026).

[5] Notably, the Court would have to undertake an individualized statute-of-limitations inquiry for *each putative class member* to evaluate whether their claims are time barred, which would defeat Federal Rule 23(b)(3)'s predominance requirement, if the case proceeded to that stage.

51 (emphasis added). Nowhere does Plaintiff assert that *current* students were deceived by AUC's USMLE pass rate to continuously re-register in classes. Furthermore, even if the Complaint advanced that distinct theory, it would not cure the fact that Plaintiff's "[tuition] purchases made [before] January 2022 [] are not within the limitations period." Opp. at 6 (citation omitted). Consequently, even under this never-before-pled claim about "separate purchase transaction[s]," Opp. at 6, claims based on Plaintiff's initial *enrollment* at AUC are time-barred.[6] At that point, Plaintiff would not even be a member of the putative class she purports to represent, which consists of "[a]ll persons who, between 2018 and the present, *enrolled* at AUC and did not pass Comp on their first try[.]" Compl. ¶ 56 (emphasis added). Defendants should not be forced to undertake burdensome discovery in such a circumstance.

    **B.    Plaintiff's Complaint Is Governed By, And Falls Short of Rule 9(b)**

Citing *Pop v. LuliFama.com LLC*, Plaintiff argues that Rule 9(b) does not apply because the "core allegations" here do not track the elements of common-law fraud. *See* Opp. at 6-7 (citing 145 F.4th 1285, 1292–94 (11th Cir. 2025)). *Pop* holds that common-law fraud "targets . . . misrepresenting or concealing material facts." *Pop*, 145 F.4th at 1294–95. Of course, Plaintiff's Complaint alleges such misrepresentations and concealments. *See* MTD at 8-9 (citing Compl. ¶¶ 4-5, 9, 11, 46, 68, 73). Indeed, even the Opposition states that the "gravamen of this case is that Defendants [] *used deceptive practices to lure* students in." Opp. at 7 (emphasis added). Plaintiff claims that the FDUTPA "can apply where conduct is deceptive even if not fraudulent." Opp. at 7. Even if that is true, Plaintiff alleges deceptive *and* fraudulent conduct, triggering Rule 9(b). *See* Mot. to Dismiss at 8-9; Compl. ¶¶ 4, 5, 9, 11, 34, 46, 51, 68, 73.

Plaintiff then claims that, should Rule 9(b) apply, she satisfied it because she included a screenshot of one alleged marketing statement from a 2020-2021 Acceptance Packet. *See* Opp. at 8-9. Citing a single paragraph in the Complaint, Plaintiff contends that "the misleading claim AUC published in its 2020-2021 Acceptance Packet, *provided to Plaintiff*, is pasted in a screenshot

---

[6] Plaintiff's caselaw is inapposite. In *Star-Brite Dist., Inc. v. Gold Eagle Co.*, a defendant business counterclaimed against a plaintiff business under the FDUTPA, arguing that plaintiff business falsely advertised and marketed its fuel enzyme treatment for vehicles, harming defendant competitor by engaging in this unfair method of competition with each purchase. *See* Answer to Complaint and Counterclaim, *Star-Brite Distrib., Inc., v. Gold Eagle Co.*, Case No. 14-cv-61841, Dkt. 21 (Sept. 18, 2014). And *Nelson v. Mead Johnson Nutrition Co.* involved a *class certification* motion, and the class was specifically limited to consumers who purchased baby formula "within the applicable statute of limitations." 270 F.R.D. 689, 691 (S.D. Fla. 2010).

in the Complaint[.]" Opp. at 8-9 (citing Compl. ¶ 38) (emphasis added).  But the Complaint does not say that Plaintiff received this packet, nor any other statement, and otherwise omits required Rule 9(b) details throughout.  *See* Mot. to Dismiss at 8-12.  Defendants should not be forced to respond to discovery given the lack of specificity throughout Plaintiff's pleading.  *Id.*

### C.        Plaintiff Fails To Plead The Elements Of Her FDUTPA Claim

The Opposition does not (and cannot) cure Plaintiff's failure to plead a FDUTPA claim, and certainly does not support her effort to launch into extensive discovery.  To try to argue that she sufficiently alleged a deceptive act or unfair practice, Plaintiff claims that "whether a representation, omission, or practice is misleading presents a question of fact" that cannot properly be resolved through a dismissal motion.  Opp. at 10. Yet Plaintiff ignores numerous Eleventh Circuit and Florida state court decisions dismissing FDUTPA claims for failure to plead a deceptive act.  *See* Mot. to Dismiss at 14-17 (collecting cases).

Plaintiff then argues that to grant Defendants' motion to dismiss for failing to assert a deceptive act, the "Court would have to credit" that Defendants published "the correct pass rates" and "methodology used." Opp. at 10.  That is what Defendants did, as is apparent on the face of Plaintiff's Complaint.  *See* Mot. to Dismiss at 3-4, 10, 16-17; Compl. ¶ 39.  With such information disclosed, as alleged by Plaintiff, Plaintiff's FDUTPA claim is unlikely to survive, let alone support discovery at this stage.  *See* Mot. to Dismiss at 14-17.

To dance around this result, Plaintiff contends that the Complaint "also contains representations where neither the passage rates nor the methodology are disclosed."  Opp. at 10 (citing Compl. ¶¶ 38, 40).  Yet the paragraphs Plaintiff cites for that proposition *include pass rates*.  *See* Compl. ¶¶ 38, 40.  If there are some other, yet-to-be-identified marketing claims propping up Plaintiff's claims, Plaintiff has not identified them.  Regardless, Defendants should not be forced to respond to discovery related claims of deceptive conduct when Plaintiff did not adequately allege such misconduct.

*Second*, Plaintiff argues that "[c]ausation and [d]amages are [a]dequately [p]led" because FDUTPA plaintiffs "need not show actual reliance" and because her conclusory damages allegation satisfies the pleading standard.  Opp. at 11.  Plaintiff is wrong.  As for causation, the statute is clear: to recover damages, a person must have "suffered a loss *as a result* of a violation" of the FDUTPA.  Fla. Stat. Ann. § 501.211(2) (emphasis added).  The Complaint, however, does not allege that Plaintiff (or any putative class member) viewed *any* of the alleged marketing claims

5

before enrolling.  *See* Mot. to Dismiss at 18-19.  At most, it alleges that "USMLE passage rate[s] … are material to prospective students' decision to enroll at AUC as evinced by, *inter alia*, AUC's own marketing."  Compl. ¶ 46.  But such circular reasoning does not meet Plaintiff's burden to allege that *she*—and the thousands of putative class members she seeks to represent—"was exposed to the Defendants' advertising and marketing materials" and that such exposure "caused [them] damage."  *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229–30 (S.D. Fla. 2002).

As to damages, Plaintiff admits that FDUTPA damages are "measured by the difference in the market value" of something received as opposed to how it "should have been delivered."  Opp. at 12 (citation and internal quotation omitted).[7]  But what she fails to do is tether that standard to any allegation in the Complaint.  Instead, she points to a conclusory allegation that "[e]ach Class member has sustained damage as a result of Defendants' wrongful conduct[.]"  Opp. at 12; Compl. ¶ 60.  That is not a theory of damages sufficient to support a FDUTPA claim or discovery into it.  *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1099–1101 (11th Cir. 2021); Mot. to Dismiss at 19-20.

## D.      Plaintiff Cannot Avail Herself Of The FDUTPA

Plaintiff's attempt to avail herself of the FDUTPA will fail, which further erodes her attempt to rush discovery.  *See* Mot. to Dismiss at 12-14.  As Plaintiff acknowledges, there is a conflict in Florida courts regarding whether the statute applies to non-residents.  Opp. at 13.  As cited by Defendants, the Second and Fourth District Court of Appeals have held that the statute may *not* apply to non-Florida residents.  *See* Mot. to Dismiss at 12 (collecting cases).  Plaintiff, however, latches onto a contrary holding from the Third District Court of Appeals.  *See* Opp. at 13.  The Court should reject the invitation to adopt the reasoning from that court, *see* Mot. to Dismiss at 12-14, particularly given that AUC's administrative office is in Miramar, Florida, which is bound by the Fourth District Court of Appeals.

Even if the non-resident Plaintiff *could* avail herself of the FDUTPA, it still does not apply here based on the facts she alleged.  Plaintiff does not allege how Defendants' offending conduct or the purported injury caused by it "took place predominantly or entirely in Florida" as is required to support a FDUTPA claim.  *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F.

---

[7] As discussed below, this measure of damages runs afoul of the educational malpractice doctrine. *See infra* at 8.

Supp. 3d 1183, 1211–12 (S.D. Fla. 2022) (citation omitted); Mot. to Dismiss at 12-14.[8] Defendants, therefore, should not be burdened with having to respond to broad discovery in response to a claim that Plaintiff cannot bring.

> **E.      Plaintiff's Unjust Enrichment Claim Does Not Support Initiating Broad Discovery**

Plaintiff cannot rely on her unjust enrichment claim as a hook for discovery because it will fail alongside her statutory claim. *See* Mot. to Dismiss at 20-21 (collecting cases). Plaintiff makes the unremarkable point that parties in Florida may bring unjust enrichment claims even where adequate legal remedies exist. *See* Opp. at 15. But that misses the point. Plaintiff does not even attempt to distinguish her statutory claim from her unjust enrichment claim—nor can she given the allegations in her Complaint—which is fatal to the claim. Plaintiff's unjust enrichment claim thus is likely to fail on this basis alone, reinforcing Defendants' request to stay discovery. *See* Mot. to Dismiss at 20-21.

Plaintiff also cannot patch over her failure to plead an essential element of her unjust enrichment claim: that it would be "inequitable" for Defendants to retain any alleged payments from her. Mot. at 8. The Opposition cites allegations in the Complaint that merely recite the applicable standard. *See* Opp. at 15 (citing Compl. ¶¶ 73-74). But it is silent as to how Plaintiff was purportedly harmed as a result of Defendants' conduct, thus Plaintiff failed to plead a harm that requires equitable relief. *See* Mot. to Dismiss at 21. Accordingly, like her statutory claim, Plaintiff's unjust enrichment claim is unlikely to survive dismissal, and thus should not salvage Plaintiff's discovery requests.

> **F.      Plaintiff's Claims Violate Florida's Educational Malpractice Doctrine**

Plaintiff contends that her claims evade the educational malpractice doctrine because they will not require the Court to "measure [] the effectiveness of the education [received] compared to

---

[8] Plaintiff's reference to a 14-year-old case in which AUC availed itself of a Florida court is unpersuasive. *See* Opp. at 13 n.10. To begin, the Coral Gables office at issue in that case no longer exists. That case further noted that AUC is "in the Netherland Antilles with a *satellite office* in Coral Gables, Florida." *Am. Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc.*, 484 F. App'x 322, 324 (11th Cir. 2012) (emphasis added). And, unlike here, that case dealt with personal jurisdiction over the defendant rather than the applicability of a Florida statute to non-resident Defendants and a non-resident Plaintiff. *See Am. Univ. of the Caribbean, N.V.*, 484 F. App'x at 327 ("AUC's amended complaint made a number of allegations sufficient to state a prima facie case of personal jurisdiction.").

what was advertised." Opp. at 15. But that is *exactly* the inquiry the Court would have to undertake if her claims survive dismissal. For example, and as Plaintiff admits, "FDUTPA damages are measured by the difference in the market value of the product or service in the condition in which it was delivered"—here, her education—"and its market value in the condition in which it should have been delivered." Opp. at 12 (citing *Carriuolo v. General Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016)). Such an evaluation is "precisely what Florida's educational malpractice doctrine prohibits." *See* Mot. to Dismiss at 21-22 (citing *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 649 F. Supp. 3d 1245, 1255 (S.D. Fla. 2022)).[9]

### III. PLAINTIFF'S OVERBROAD DISCOVERY REQUESTS FORTIFY DEFENDANTS' STAY REQUEST

Trying to justify initiating discovery before pleadings are set, Plaintiff accuses Defendants of "exaggerat[ing]" the burden resulting from the 130 discovery requests she issued. Opp. at 17. They did not. For instance, Plaintiff admits that she served some "duplicative" requests on each Defendant. *Id.* While that duplication may have eased the burden on Plaintiff to draft and serve her requests, it does not relieve the burden on each Defendant, which would need to provide separate responses and objections specific to that entity. And those responses and objections will be a significant undertaking, as Defendants estimate that responding to Plaintiff's requests could take more than 500 hours and cost more than $1,000,000. Mot. at 10.

Plaintiff then tries—and fails—to run from the broad scope of the discovery she served. For example, Plaintiff does not even purport to explain how documents from an unrelated matter before the Northern District of California involving the Department of Education are relevant, *cf.* Mot. at 4; nor does she try to justify how all documents involving "investigations, audit, subpoenas, civil investigative demands, or enforcement actions" broadly related to marketing or recruiting is proportionate to the needs of the case. *Cf. id.* (citing Ex. A at 11-14, 41).

---

[9] Plaintiff's out-of-circuit cases are inapt. *FTC v. DeVry Educ. Grp., Inc.* involved two claims under federal law and had nothing to do with the educational malpractice doctrine. *See* 2016 WL 6821112, at *1 (C.D. Cal. May 9, 2016). *Makaeff v. Trump University, LLC*, in turn, held that the doctrine did not apply because Plaintiff alleged that Trump University, LLC wholly failed to "provide an education in real estate investment *at all*" (and instead provided a "3-day long infomercial"), which necessarily would not require the court to evaluate the adequacy of the education that was (not) offered. 2010 WL 3988684, at *1, *3 (S.D. Cal. Oct. 12, 2010).

Instead, Plaintiff claims that Defendants mischaracterized one of her requests. *See* Opp. at 18. But Defendants stated that Plaintiff seeks "all documents and communications regarding" certain statements in Adtalem Global Education, Inc.'s (now Covista's) SEC filings, Mot. at 4, which is what the relevant request seeks. *See* Mot. at Ex. A at 11-14 (seeking "[a]ll documents and communications relating to the representation You made in your Form 10-K" related to certain pass rates). Contrary to Plaintiff's assertion, that request is not "tailored," Opp. at 18, nor does Plaintiff explain how documents responsive to it would have any bearing on what may have "induced" or "lure[d]" students to enroll at AUC. Mot. at 4 (citing Ex. A at 11-14); Compl. ¶¶ 4, 5, 34, 49.

In a last-ditch attempt to initiate discovery, Plaintiff contends that a discovery stay would prejudice her "and the sizable putative class" she purports to represent by "delaying their meritorious, fact-driven claims." Opp. at 20. Plaintiff has it backwards. Defendants instituted a litigation hold to preserve relevant documents should this case proceed. And if the case proceeds to discovery, then, according to their proposed schedule, the parties would have over a year to complete it. *See* Mot. at 9. By contrast, if forced to respond to Plaintiff's discovery requests before the Court resolves Defendants' dismissal motion, Defendants would have to answer scores of overbroad discovery requests while grappling with international data laws, which may cost upwards of $1,000,000. *See* Mot. at 9-10. The prejudice facing the parties is not equal, and firmly supports granting Defendants' request for a discovery stay.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order that temporarily stays discovery pending the resolution of the Motion to Dismiss.

Dated: April 13, 2026

Respectfully submitted,

*/s/ Lynnette Cortes Mhatre*
MARTIN B. GOLDBERG
Florida Bar No. 827029
Primary: mgoldberg@lashgoldberg.com
Secondary: rdiaz@lashgoldberg.com

Lynnette Cortes Mhatre
Florida Bar No. 1052015
Primary: lmhatre@lashgoldberg.com
Secondary: obencomo@lashgoldberg.com

**LASHGOLDBERG**
Lash Goldberg Fineberg LLP
Miami Tower, Suite 1200
100 S.E. 2nd Street
Miami, FL 33131
Telephone: (305) 347-4040
Fax: (305) 347-4050

Sean M. Berkowitz (*pro hac vice*)
Eric R. Swibel (*pro hac vice*)
Caitlin E. Dahl (*pro hac vice*)
Shelby L. Dedo (*pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
sean.berkowitz@lw.com
eric.swibel@lw.com
caitlin.dahl@lw.com
shelby.dedo@lw.com

Delia Tasky (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
delia.tasky@lw.com

*Attorneys for Defendants*

11