IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 1:26-cv-20504-MD

NALEXUS SHIELDS,

       Plaintiff,

v.

ADTALEM GLOBAL EDUCATION INC.
and ADTALEM GLOBAL HEALTH INC.
d/b/a AMERICAN UNIVERSITY OF THE
CARIBBEAN SCHOOL OF MEDICINE,

       Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS, INCORPORATED
<u>MEMORANDUM OF LAW, AND REQUEST FOR HEARING</u>**

## TABLE OF CONTENTS

Background                                                                                    1

Motion to Dismiss Standard                                                                    4

   1.  Statute of Limitations                                       5

   2.  The Complaint Need Not Satisfy Rule 9(b), But Does So Anyway.  7

   3.  The Complaint Adequately Alleges FDUTPA's Required Florida Nexus   13

   4.  Shields' Complaint Adequately States a Claim Under FDUTPA.  16

      a.  Whether a Reasonable Consumer Would Be Misled is a Fact Issue.   17

      b.  The Complaint Alleges Causation                 19

      c.  The Complaint Alleges Damages                   21

   5.  The Unjust Enrichment Claim is Well Pled                   22

   6.  The Educational Malpractice Assertion is a Red Herring     24

Conclusion                                                                                    25

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Allen v. Jacksonville Univ.*,
2022 WL 17668615 (M.D. Fla. Dec. 14, 2022) ........................................................................ 24

*American Airlines, Inc. v. Spada*,
2024 WL 2797380 (S.D. Fla. Feb. 23, 2024) .............................................................4, 5, 11, 12

*Am. Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc.*,
484 Fed.Appx. 322 (11th Cir. 2012) ................................................................................... 2, 15

*Armstrong v. Data Processing Inst., Inc.*,
509 So. 2d 1298 (Fla. Dist. Ct. App. 1987) .............................................................................. 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................................... 4

*Bank of America N.A. v. Zaskey*,
2016 WL 2897410 (S.D. Fla. May 18, 2016) ........................................................................... 14

*Barnext Offshore, Ltd. v. Ferretti Group, USA, Inc.*,
2012 WL 1570057 (S.D. Fla. May 2, 2012) ...................................................................... 14, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................................... 4

*Berenguer v. Warner-Lambert*,
2003 WL 24299241 (Fla. Cir. Ct. 13th Jud. Cir. Hillsborough Cty. July 31, 2003) ................. 21

*Bohlke v. Shearer's Foods, LLC*,
2015 WL 249418 (S.D. Fla. Jan. 20, 2015) .............................................................................. 22

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
116 F.3d 1364 (11th Cir. 1997) .........................................................................................10, 11

*Brown v. Adtalem Glob. Educ., Inc.*,
421 F. Supp. 3d 825 (W.D. Mo. 2019) ..................................................................................... 25

*Buckley v. Moore*,
2021 WL 3173185 (S.D. Fla. July 26, 2021) ........................................................................... 16

*Carrier v. Jordaan*,
746 F.Supp.2d 1341 (S.D. Ga. 2010) ..................................................................... 21

*Carriuolo v. General Motors Co.*,
823 F.3d 977, 983-84 (11th Cir. 2016)..................................................... 17, 18, 20, 24

*Carroll v. Walden Univ.*, LLC,
650 F. Supp. 3d 342 (D. Md. 2022) ....................................................................... 25

*Casey v. Florida Coastal School of Law, Inc,*
2015 WL 10096084 (M.D. Fla. Aug. 11, 2015)................................................... 17, 19

*Coleman v. CubeSmart*,
328 F.Supp.3d 1349 (S.D. Fla. 2018)..................................................................... 17

*Consentino v. Bridgestone Retail Op., LLC*,
2024 WL 3983985 (S.D. Fla. Aug. 29, 2024) ..................................................... 17, 21

*Cooper v. Blue Cross & Blue Shield of Fla., Inc.*,
19 F.3d 562 (11th Cir. 1994) ................................................................................11

*Debernardis v. IQ Formulations, LLC*,
942 F.3d 1076 (11th Cir. 2019) ............................................................................ 25

*Donohue v. Copiague Union Free Sch. Dist.*,
47 N.Y.2d 440 (1979) ......................................................................................... 25

*Durham v. Bus. Mgmt. Assocs.*,
847 F.2d 1505 (11th Cir. 1988). ....................................................................... 4, 12

*Eli Lilly & Co. v. Tyco Integrated Sec., LLC.*,
2015 WL 11251732 (S.D. Fla. Feb. 10, 2015)........................................................ 14

*Execu-Tech Business Systems, Inc. v. New Oji Paper Co. Ltd.*,
752 So.2d 582 (Fla. 2000)..................................................................................... 16

*F.T.C. v. Corpay, Inc.*,
164 F.4th 807 (11th Cir. 2026) ............................................................................. 17

*F.T.C. v. DeVry Education Group, Inc.*,
2016 WL 6821112 (C.D. Cal. May 9, 2016)..................................................... 12, 25

*Fitzpatrick v. General Mills, Inc.*,
263 F.R.D. 687 (S.D. Fla. 2010) ...................................................................... 6, 20

iii

*Fitzpatrick v. General Mills, Inc.*,
    635 F.3d 1279 (11th Cir. 2011) .................................................................................... 20

*Fruitstone v. Spartan Race Inc.*,
    464 F. Supp. 3d 1268 (S.D. Fla. 2020)......................................................................... 23

*Gilead Scis., Inc. v. AJC Med. Grp., Inc.*,
    2021 WL 8534243 (S.D. Fla. Nov. 29, 2021) .............................................................. 23

*Happy Tax Franchising LLC v. Hill*,
    2023 WL 2664261 (S.D. Fla. Jan. 25, 2023) ............................................................... 16

*Harris v. Nordyne, LLC*,
    2014 WL 12516076 (S.D. Fla. Nov. 14, 2014) ............................................................ 23

*Hennegan Co. v. Arriola*,
    855 F.Supp.2d 1354 (S.D. Fla. 2012).......................................................................... 21

*Heuer v. Nissan N. Am., Inc.*,
    2017 WL 3475063 (S.D. Fla. Aug. 11, 2017) .............................................................. 23

*Hipp v. Liberty Nat'l Life Ins. Co.*,
    252 F.3d 1208 (11th Cir. 2001) ...................................................................................... 6

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984)............................................................................................................ 5

*In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*,
    649 F. Supp. 3d 1245 (S.D. Fla. 2022)........................................................................ 25

*Inouye v. Adidas America, Inc.*,
    2023 WL 2351654 (M.D. Fla. March 3, 2023).......................................................... 21

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
    2021 WL 3666312 (S.D. Fla. Aug. 18, 2021).............................................................. 11

*Kahn v. Walmart, Inc.*,
    107 F.4th 585 (7th Cir. 2024)......................................................................................... 9

*Karhu v. Vital Pharmaceuticals, Inc.*,
    2013 WL 4047016 (S.D. Fla. Aug. 9, 2013) ................................................................ 14

*Koski v. Carrier Corp.*,
    347 F. Supp. 3d 1185 (S.D. Fla. 2017)........................................................................... 5

*Lendinara v. Swedish Match North America, LLC*,
  2025 WL 3699694 (S.D. Fla. December 15, 2025) ....................................................... 7, 8, 9, 10

*Makaeff v. Trump University*, LLC,
  2010 WL 3988684 (S.D. Ca. Oct. 12, 2010)............................................................................ 25

*Marty v. Anheuser-Busch Companies, LLC*,
  43 F. Supp. 3d 1333 (S.D. Fla. 2014)..................................................................................... 23

*Matthews v. Am. Honda Motor Co.*,
  2012 WL 2520675 (S.D. Fla. June 6, 2012) ............................................................................. 5

*Matus v. Sport Squad*,
  2024 WL 5135678 (S.D. Fla. Dec. 17, 2024). .................................................................. 22, 23

*MeterLogic, Inc. v. Copier Sols., Inc.*,
  126 F.Supp.2d 1346 (S.D. Fla. 2000)................................................................................... 4, 13

*Millennium Communications & Fulfillment, Inc. v. Office of Attorney General,*
  *Dept. of Legal Affairs, State of Florida*,
  761 So. 2d 1256 (Fla. 3d DCA 2000) ................................................................................. 13, 14

*Millner v. Plutus Enters., LLC*,
  2022 WL 2237404 (S.D. Fla. June 22, 2022) .......................................................................... 16

*Nelson v. Mead Johnson Nutrition Co.*,
  270 F.R.D. 689 (S.D. Fla. 2010) ................................................................................... 6, 7, 20

*Newman v. Socata SAS,*
  924 F. Supp.2d 1322 (2013).................................................................................................... 24

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
  558 F.3d 1210 (11th Cir. 2009) .............................................................................................. 16

*Point Blank Solutions, Inc. v. Toyobo America, Inc.*,
  2011 WL 2214357 (S.D. Fla. 2011) ......................................................................................... 7

*Pop v. LuliFama.com LLC*,
  145 F.4th 1285 (11th Cir. 2025). ..................................................................................... 7, 8, 9

*Reilly v. Amy's Kitchen, Inc.*,
  2013 WL 9638985 (S.D. Fla. Dec. 9, 2013) ........................................................................... 17

*Rodriguez v. JPay, Inc.*,
   2019 WL 11624312 (S.D. Fla. Oct. 21, 2019) .......................................................................... 21

*Rollins v. Heller*,
   454 So. 2d 580 (Fla. 3d DCA 1984) ................................................................................. 22, 25

*Saavedra v. Albin Mfg. Corp.*,
   2012 WL 254122 (M.D. Fla. Jan. 27, 2012) .............................................................................. 6

*Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*,
   208 F.3d 1308 (11th Cir. 2000) ................................................................................................. 5

*Simon v. Celebration Co.*,
   883 So. 2d 826 (Fla. 5th DCA 2004) ....................................................................................... 24

*Speier-Roche v. Volkswagen Grp. Of Am. Inc.*,
   2014 WL 1745050 (S.D. Fla. April 30, 2014) ........................................................................... 5

*Star-Brite Distributing Inc. v. Gold Eagle Co.*,
   2016 WL 4470093 (S.D. Fla. Jan. 25, 2016) ............................................................................. 6

*State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*,
   739 F.3d 579 (11th Cir. 2013) ................................................................................................. 23

*State Farm Mutual Automobile Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*,
   278 F.Supp.3d 1307 (S.D. Fla. Sept. 25, 2017) ................................................................. 17, 18

*State Farm Mutual Automobile Ins. Co. v. Physicians Injury Care Center, Inc.*,
   427 F. App'x 714 (11th Cir. 2011), ........................................................................................ 22

*State Farm Mutual Automobile Ins. Co. v. Williams*,
   824 F.3d 1311 (2014) ............................................................................................................... 22

*Sweeney v. Kimberly-Clark Corp.*,
   2016 WL 727173 (M.D. Fla. Feb. 22, 2016) ........................................................................... 22

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ................................................................................................................... 4

*Tubell v. Dade Cnty. Pub. Schs.*,
   419 So. 2d 388 (Fla. 3d DCA 1982) ........................................................................................ 25

*U.S. ex rel. Clausen v. Lab'y Corp. of Am.*,
   290 F.3d 1301 (11th Cir. 2002). ........................................................................................ 11, 13

*United States v. Feldman*,
   931 F.3d 1245 (11th Cir. 2019) ........................................................................................ 7

*Varcamp Properties, LLC v. City of Miami Beach*,
   2022 WL 19731865 (S.D. Fla. Dec. 22, 2022) ............................................................... 5

*Wainberg v. Mellichamp*,
   93 F.4th 1221 (11th Cir. 2024) ....................................................................................... 5

*Wright v. Capella Univ., Inc.*,
   378 F. Supp. 3d 760 (D. Minn. 2019) ........................................................................... 25

*Zarfati v. Artsana USA, Inc.*,
   2025 WL 373081 (S.D. Fla. Jan. 15, 2025) ............................................................ 8, 14, 23

*Ziemba v. Cascade Int'l, Inc.*,
   256 F.3d 1194 (11th Cir. 2001) ..................................................................................... 10

## Statutes

Fla. Stat. § 501.202 ........................................................................................................... 13

Fla. Stat. § 501.203 ........................................................................................................... 13

Fla. Stat. § 501.204 ........................................................................................................... 17

## Rules

Fed. R. Civ. P. 8(a) .............................................................................................................. 4

Fed. R. Civ. P. 9(b) ....................................................................................................... *passim*

Fed. R. Civ. P. 15(a) ............................................................................................................ 5

Defendants lack a single meritorious basis to dismiss this case. So, they choose quantity over quality, with a scattershot motion spraying six different arguments for dismissal. Like most scattershot, these six miss their target. Specifically, Defendants argue for dismissal based upon: (1) statute of limitations; (2) failure to satisfy Federal Rule of Civil Procedure 9(b); (3) failure to allege sufficient Florida specific facts to trigger FDUTPA; (4) failure to state a claim under FDUTPA; (5) failure to state a claim for unjust enrichment; and (6) educational malpractice immunity. Although Plaintiff will provide more detail below, all six claims can be easily swept aside. First, statute of limitations is typically an affirmative defense, not a basis for dismissal, and Plaintiff's Complaint alleges both an ongoing deception as well as purchases well within the applicable statute. Second, because Plaintiff's claims do not sound in fraud, Rule 9(b) is inapplicable and even if it were to apply, Plaintiff's Complaint contains more than enough detail to meet the Rule's specificity requirement. Third, contrary to Defendants' claim, FDUTPA does not apply solely to Florida residents and Plaintiff has alleged more than enough Florida based acts for its application here. Fourth, Defendants' argument that Plaintiff fails to state a claim under FDUTPA relies upon out of district caselaw while ignoring that, in the Southern District of Florida, whether a misrepresentation is likely to deceive a reasonable consumer is a fact issue inappropriate for a motion to dismiss. Under this Court's caselaw, Plaintiff's Complaint more than adequately alleges a FDUTPA violation, causation, and damages. Fifth, Defendants' claim that unjust enrichment cannot be pled along with FDUTPA is simply and unequivocally wrong under Eleventh Circuit precedent. Sixth, Plaintiff has not pled a claim for educational malpractice, so the educational malpractice immunity Defendants seek is unavailable.

## BACKGROUND

Defendant Adtalem Global Education, Inc. used to be known as DeVry Education Group, Inc. ("DeVry") (*Compl.* ¶ 14). While operating as DeVry, a United States Senate committee found that while DeVry "promised quality training and high-paying careers [it] actually delivered worthless products that left students ill equipped to find jobs in their course of study and saddled them with thousands of dollars of debt, damaged credit, and depleted access to federal student aid." (*Id.* ¶ 55) (citation omitted). Behavior like that led to DeVry entering into a $100 million

1

settlement with the Federal Trade Commission for fraudulent misrepresentations to students. (*Id.* ¶ 15). DeVry Education Group, Inc. changed its name to Adtalem in or about 2017. (*Id.* ¶ 15). After initiation of this lawsuit, Adtalem again changed its name to "Covista Inc." ("Covista") (ECF No. 22, Defs.' MTD, p.1, n.1). All iterations of Defendant, be it DeVry, Adtalem, or Covista, owned and operated a for-profit medical school in the Caribbean called the American University of the Caribbean ("AUC") (*Compl.* ¶ 2).   Covista controls AUC through its senior executives and employees, as well as providing AUC with administrative assistance and oversight. (*Id.* ¶ 33). While Covista has its principal place of business in Illinois (*Id.* ¶ 13) and AUC is a corporation organized under New York law (*Id.* ¶ 16), AUC has its principal offices in Coral Gables and Miramar, Florida, both of which are in the Southern District of Florida (*Id.* ¶ 16).  As Defendants detail in the January 2020 Course Catalog and Student Handbook attached as Exhibit A to their Motion to Dismiss [ECF No. 22-1:11-12]:

> The administrative office for AUC is located in Pembroke Pines, Florida.  The Office of the Executive Dean is based within the administrative office along with several student service departments that assist current students with both the Medical Science and Clinical Sciences portions of their curriculum.  The following offices and/or functions are located within the administrative office in Pembroke Pines [in the Southern District of Florida].
> - Admissions
> - Office of the Registrar
> - Office of Undergraduate Medical Education (UME) Student Service
> - Office of Student and Professional Development
> - Student Communications
> - Student Housing

As AUC previously claimed in prior litigation, its United States satellite office where it negotiated contracts and received payments was in Florida.  *See American University of the Caribbean, N.V. v. Caritas Healthcare, Inc.,* 484 Fed.Appx. 322, 327 (11th Cir. 2012).

Knowing that all future doctors must pass the USMLE Step 1 and Step 2 tests, Defendants market and claim that "'AUC's School of Medicine's curriculum is designed to prepare students to succeed on all parts of the USMLE." (*Compl.* ¶ 35).  Defendants then "orchestrated a false marketing scheme to induce students—including Plaintiff and the members of the Class—to enroll in AUC's M.D. program, which is controlled by [Covista]" by, *inter alia,* "heavily promot[ing] a

92% to 96% first-time passage rate on the USMLE Step 1 exam [ ]." (*Id.* ¶ 34). Defendants created this misrepresentation by imposing an "undisclosed rule[ ] that AUC students must take and pass a [ ] 'Comprehensive Basic Medical Sciences Exam' ("Comp")…as a precondition to taking the USMLE exams." (*Id.* ¶ 48). Essentially, Defendants make students pass a practice USMLE Step 1 before they are allowed to take the actual USMLE Step 1. This profits Defendants in two ways. First, it "artificially inflate[s] AUC's USMLE passage rate [thereby] deceptively luring in new prospective students." Second, "students who do not pass Comp must either retake courses at AUC, which costs students money and profits AUC, or drop out of AUC, rendering students' payments worthless." (*Id.* ¶ 49). Shields enrolled at AUC in January 2020, meaning she would have received both the AUC 2020-2021 Acceptance Packet and the 2020 Student Handbook excerpted in the Complaint. (*Id.* ¶¶ 38, 50, 52). Shields failed the Comp in the Fall of 2022 and had to repeat and pay for her Fall 2022 classes again so she could try to pass Comp and be permitted to sit for the USMLE Step 1. (*Id.* ¶ 52).

Shields alleged "who" made these misrepresentations, asserting that "[both] Defendants'" participated in deceptive "activity and unlawful conduct." (*Compl.* ¶ 18). Shields disclosed "where" and "how" the misrepresentations were made, alleging that these misrepresentations were made on "AUC's website, social media pages, online advertisements, and in direct communications with potential students," (*Id.* ¶36), as well as in Acceptance Packets (*Id.* ¶ 38), the AUC Marketing Brochure "Preparing Tomorrow's Physicians for Every Community" (*Id.* ¶ 40), and the Student Handbook (*Id.* ¶ 50). To make it crystal clear "what" misrepresentations were made, Shields directly quoted the misrepresentations (*Id.* ¶ 37) and even provided screenshots (*Id.* ¶¶ 38-40). And, Shields disclosed "when" the misrepresentations were made. *See* (*Id.* ¶ 38) (providing screenshots from "AUC's 2020-2021 Acceptance Packet"); (*Id.* ¶ 40) (AUC's 2021 Marketing Brochure "Preparing Tomorrow's Physicians for Every Community"). Shields even alleged "why" Defendants made these misrepresentations. The misrepresentations were "material to prospective students' decision to enroll at AUC" (*Id.* ¶ 46) and resulted in Plaintiff and "each Class member [paying] for a medical education that was deceptively advertised by Defendants"

3

(*Id.* ¶ 60) that often required students like Plaintiff "to repeat (and pay for) additional classes" (*Id.* ¶ 52) allowing Defendants to "reap[ ] millions of dollars a year in profits." (*Id.* ¶ 53).

## MOTION TO DISMISS STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must only contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." This is notice pleading and "serves to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *American Airlines v. Spada*, 23-cv-21844, 2024 WL 2797380, at *3 (S.D. Fla. Feb. 23, 2024) (Damian, M.J.), *quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). "To survive a motion to dismiss, a complaint's 'factual allegations must be enough to raise a right to relief above the speculative level,' and must be sufficient 'to state a claim for relief that is plausible on its face.'" *Id. quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A plaintiff makes a facially plausible claim when she 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*, *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although not applicable here for reasons stated *infra,* "[a] heightened pleading standard applies to allegations of fraud or mistake." *Id.* (citation omitted). Those claims must meet Federal Rule of Civil Procedure 9(b), which requires the pleader to "state with particularity the circumstances constituting fraud or mistake." Rule 9(b) "is meant to prevent '[s]peculative suits against innocent actors for fraud' and, thus, can be satisfied by 'facts as to time, place, and substance of the defendant's alleged fraud' and 'details of the defendant['s] allegedly fraudulent acts, when they occurred and who engaged in them.'" *Id.* (citations omitted). "However, 'alternative means are also available to satisfy [Rule 9(b)].'" *Id.*, *quoting Durham v. Bus. Mgmt. Assocs.,* 847 F.2d 1505, 1512 (11th Cir. 1988). Importantly here, "Rule 9(b) may be 'applied less stringently' in cases in which 'the alleged fraud occurred over an extended period of time and the acts were numerous.'" *Id.*, *quoting MeterLogic, Inc. v. Copier Sols., Inc.*, 126 F.Supp.2d 1346, 1360 (S.D. Fla. 2000). "In such cases, plaintiffs need only allege 'some examples of actual false claims to lay a complete foundation for the rest of [the] allegations.'" *Id.* (citations omitted).

4

Regardless of whether Rule 8(a) or 9(b) applies, in considering a motion to dismiss the "Court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true." *Id.* at \*4, *citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Dismissal "is warranted 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.'" *Id., quoting Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000). Finally, should dismissal be granted, leave to amend under Federal Rule of Civil Procedure 15(a) is typically "freely given" absent a finding that amendment would be futile. Fed. R. Civ. P. 15(a); *Spada*, 2024 WL 2797380, at \*15 (granting leave to amend four times).

## 1. Statute of Limitations

Defendants' first argument (and presumably the one they believe strongest), statute of limitations, is rarely appropriate for a motion to dismiss. "A plaintiff is not required to negate an affirmative defense in its complaint." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (cleaned up); *see also, Varcamp Properties, LLC v. City of Miami Beach*, No. 22-cv-21371-KING/DAMIAN, 2022 WL 19731865 at \*4 (noting that "[g]enerally, the statute of limitations is raised as an affirmative defense rather than by way of a motion to dismiss.") (citation omitted). Consequently, "[a] court may dismiss a complaint as time barred only if it appears **beyond a doubt** that the plaintiff can prove no set of facts showing the claims are timely." *Id.* (emphasis supplied).

Nevertheless, Defendants argue that "Plaintiff's claims are barred because the Complaint alleges she enrolled at AUC in January 2020—two years before [the four year] limitations period" applicable to FDUTPA and unjust enrichment. (MTD p.7). Defendants' statute of limitations argument fails for three separate and independent reasons. First, Defendants provide no authority for their claim that the statute of limitations begins to run upon Shields' enrollment. Instead, they rely solely upon cases concerning the purchase of a product such as a car or HVAC system. (*Id.*) (*citing Speier-Roche v. Volkswagen Grp. Of Am. Inc.*, 2014 WL 1745050, at \*6 (S.D. Fla. April 30, 2014) (car); *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1195 (S.D. Fla. 2017) (HVAC); *Matthews v. Am. Honda Motor Co.*, 2012 WL 2520675, at \*4 (S.D. Fla. June 6, 2012) (car). Each of these cases concerns discrete representations, typically in the applicable warranties, leading to

5

a singular purchase.  None of the cases concern ongoing misrepresentations or multiple purchases such as alleged in the Complaint and are inapposite.

Second, when the deceptive acts and misrepresentations continue beyond the initial purchase, the starting date for the statute of limitations continues as well. *See Saavedra v. Albin Mfg. Corp.*, 2012 WL 254122, at *3-4 (M.D. Fla. Jan. 27, 2012) (holding that FDUTPA statute of limitations began to run after the date of sale for a yacht because of a continuing "series of deceptive acts"); *Star-Brite Distributing Inc. v. Gold Eagle Co.*, 2016 WL 4470093,  at *3 (S.D. Fla. January 25, 2016) (Cohn, J.) (holding that allegation that defendant's "false advertising campaigns" continued making the alleged violations ongoing and extending the FDUTPA and Florida common law statute of limitations).[1]  Shields' Complaint alleges numerous acts in 2022 and later, clearly within the four-year statute of limitations for both FDUTPA and unjust enrichment. *See* (*Compl.* ¶ 37) (Defendants represented "In 2022, students achieved a '92.4% USMLE first time pass rate'"); (*Id.*) (Defendants represented "In 2023, the 'USMLE pass rate is 88.5% from 2018-2022' and the '5 year cumulative first-time pass rate for the USMLE Step 1 exam is 92.4% from 2017-2021'").[2]  Because the Complaint alleges misrepresentations in 2022 and 2023, Defendants cannot show beyond a doubt that Shields' claims are untimely.

Third, any purchase within the statute of limitations, even if there are prior purchases outside the statute, suffices.  *Nelson v. Mead Johnson Nutrition Inc.*, 270 F.R.D. 689, 696 (S.D.

---

[1] In their Reply to the Motion to Stay, Defendants are reduced to arguing that "Eleventh Circuit law" does not permit Shields to utilize the continuous use doctrine here.  (ECF No. 26, p.7).  Shields cited FDUTPA cases *Saavedra* and *Star-Brite* above.  The authority of Defendants' claim is *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221-22 (11th Cir. 2001), a completely inapposite case analyzing the unique "piggybacking window" applicable to discrimination claims under the Age Discrimination in Employment Act of 1967.  Meanwhile, Defendants ignored *Saavedra* (a FDUTPA case) and distinguish *Star-Brite* merely by the fact the FDUTPA claim there was a counterclaim (which is irrelevant).

[2] As will be discussed more later, because FDUTPA employs an objective standard focused on whether a reasonable consumer would be deceived, a plaintiff is not required "to rely only on those representations, omissions, or practices experienced firsthand to prove that the defendant engaged in a deceptive act." *Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687, 693 (S.D. Fla. 2010), *rev'd on other grounds* 635 F.3d 1279 (11th Cir. 2011) (reversed solely to expand class definition); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 696 (S.D. Fla. 2010) (holding that "a Plaintiff need not have relief on the [particular] representations to prove a FDUTPA claim").

Fla. 2010) (finding statute of limitations met by later purchases even if initial purchase occurred outside the statute).  "Therefore, any FDUTPA claim based on purchases [ ] made after [January 26, 2022] are not time barred." *Point Blank Solutions, Inc. v. Toyobo America, Inc.*, 2011 WL 2214357, at *2 (S.D. Fla. 2011).  Because the Complaint alleges that "AUC forced [Shields] to repeat (and pay for) her Fall 2022 classes during the January 2023 semester before she could take the Comp exam again and sit for the USMLE Step 1," the Complaint is timely.  (*Compl.* ¶ 52).

### 2.  The Complaint Need Not Satisfy Rule 9(b), But Does So Anyway.

Defendants make no claim that Shields' Complaint cannot meet Rule 8(a). Instead, Defendants rest their entire argument on the belief that Rule 9(b) applies to Shields' claims. Defendants are mistaken.  So, if Rule 9(b) does not apply, Defendants' motion should be denied. And even if Rule 9(b) does apply, the motion should be denied because the Complaint meets Rule 9(b) anyway.

Defendants' mistaken assumption that Rule 9(b) applies comes largely from the recent Eleventh Circuit ruling in *Pop v. Lulifama.com LLC*, 145 F.4th 1285 (11th Cir. 2025).  Although ignored by Defendants, "*Pop* did not categorically find that all FDUTPA claims are subject to the 9(b) particularity standard." *Lendinara v. Swedish Match North America, LLC*, No. 24-cv-61371, 2025 WL 3699694, at *4 (S.D. Fla. December 15, 2025) (Dimitrouleas, J.).  Rather, Rule 9(b) only applies "[i]f a plaintiff's allegations closely track the elements of common law fraud." *Pop*, 145 F.4th at 1294.  Those elements include "a false representation of a material fact made by one who knew that it was false…, made to one who did not know that it was false, with intent to deceive such person and influence his action, which did deceive such person and influence his action to his damage." *Lendinara*, at *3, *quoting United States v. Feldman*, 931 F.3d 1245, 1266 (11th Cir. 2019) (W. Pryor, C.J. concurring).  Without allegations that the Defendants intentionally misled Plaintiff, the elements of common law fraud are not met. *Id.*  Specifically, when the "Plaintiff's allegations more closely track the elements of a FDUTPA claim, which requires (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages," Rule 9(b) is not implicated. *Id.* at *4.  Put differently, when Plaintiff's allegations "place the focus on the consumers, who,

7

regardless of Defendants' intention, were misled by Defendants' product," the Complaint is not subject to Rule 9(b). *Id.*

Shields' Complaint contains quintessential FDUTPA/unjust enrichment allegations akin to *Lendinara*. It does not sound in fraud and differs greatly from the claims in *Pop*. As a result, Rule 9(b) is not implicated. The allegations of illegality and fraud were central to the *Pop* complaint, serving as the explicit basis for the FDUTPA count. Specifically, the *Pop* complaint alleged a scheme between a swimsuit manufacturer and eight social media influencers whereby "the influencer defendants 'misrepresented the material relationship they have with [the swimsuit company] by promoting [the swimsuit company's] products without disclosing that they were paid to do it…[this resulted in] a scheme in which the influencers tag or recommend [the swimsuit company's] products pretending they are disinterested and unaffiliated consumers.'" *Id.* at 1290. Thus, the complaint in *Pop*, which alleged an overarching fraudulent scheme conducted by eight fashion influencers with a swimwear designer and manufacturer, sounded in fraud requiring Rule 9(b)'s particularity. And, because the entire *Pop* complaint "mentioned a specific defendant's (out of eight defendants) name and posts only three times" while never even specifying "which products the defendants were promoting" in the offending posts, Rule 9(b)'s requirements were not met and the complaint was dismissed. *Id.* at 1291-92.

Shields' allegations are far more akin to those in *Lendinara* than those in *Pop*. First, although not dispositive, it is probative that the Complaint never uses the words "fraud" or "fraudulent" or any iteration thereof. *See Zarfati v. Artsana USA, Inc.,* 2025 WL 373081, at *12 (S.D. Fla. Jan. 15, 2025) (Moore, J.) (finding FDUTPA allegations do not sound in fraud because "[t]he words 'fraud' and 'fraudulent' do not appear in the Complaint" and claim that defendant falsely advertised baby stroller as safe despite brake defect did not allege fraud). By contrast, in *Pop*, the complaint alleged that the defendants were "**engaging in fraud** and statutory violations" through their "very profitable **and very illegal**" advertising practices. *Pop*, 145 F.4th at 1291; *Pop v. Lulifama.com LLC*, 2024 WL 1194485, at *1 (M.D. Fla. Mar. 20, 2024) (emphasis supplied).

Second, the complaint in *Pop* focused on the defendants' intent. It alleged that the defendants "**disguise[d]** [their] advertising as honest consumer recommendation" resulting in the

8

swimsuit company making "tens of millions of dollars that can be attributed directly to the **disguised** Instagram advertising campaigns." *Id.* at 1289 (emphasis supplied). In short, the defendants "devised a **scheme** in which the influencers tag or recommend [swimsuit company's] products, **pretending** they are disinterested and unaffiliated consumers." *Id.* By contrast, Shields' Complaint is "'not necessarily premised on intentional deception' but instead on the consumer's experience with the product." *Lendinara*, at \*3, *quoting Kahn v. Walmart, Inc.*, 107 F.4th 585, 602 (7th Cir. 2024) (cited by *Pop*, 145 F.4th at 1293). In *Lendinara*, the plaintiff alleged that Zyn (a smoking cessation device) "'made misleading representations about and omitted the risks associated with Zyn generally'" by omitting "'that the nicotine in Zyn can cause cognitive and mental health injuries'" and that "'Zyn was powerfully addictive.'" *Id.* This Court found that these allegations, unlike those in *Pop*, lacked "assertions that the Defendants **intentionally** misled Plaintiff." *Id.* (emphasis supplied). Instead, the allegations "place[d] the focus on the consumers, who, regardless of Defendants' intention, were misled by Defendant's product." *Id.* at \*4. Thus, Rule 9(b) was not applicable. *Id.*

Similar to *Lendinara*, the allegations here focus on the consumers. The introduction to the Complaint summarizes Shields' claims. It alleges that "Defendants heavily promoted a 93% to a 96% first-time passage rate on the USMLE Step 1 exam by AUC students [ ] on AUC's website, social media pages, online advertisements, and in direct communications with consumers. **The effect of this [on consumers]** was to suggest that virtually every student at AUC passes the USMLE Step 1 on their first attempt." (*Compl.* ¶ 6) (emphasis supplied). However, "AUC's 'success' does not come from preparing students well, but from excluding the students it failed to prepare from its calculations" by requiring them to obtain a passing score on Comp before they are permitted to sit for the USMLE Step 1. *Id.* ¶¶ 7, 10. Ultimately, the Defendants' "representations **communicate to students** that paying significant money to attend AUC will be worth the risk because at AUC, they are near certain to pass the USMLE." (*Id.* ¶ 11) (emphasis supplied). In *Lendinara*, this Court analyzed plaintiff's claims that Zyn's representations communicate to a consumer that it was a smoking cessation device that is a reasonable alternative to e-cigarettes that is healthy and safe, and not addictive. This Court found those claims to be

9

"quintessential FDUTPA claims" that did not sound in fraud or require Rule 9(b) particularity. *Lendinara*, at \*4. So too here. Defendants' claims communicate that 93% to 96% of their students pass the USMLE Step 1 on their first try. Left unsaid by Defendants is that they require students to pass the Comp, which is a practice USMLE Step 1 test, before being permitted to sit for the USMLE Step 1 test. This artificially inflates Defendants' advertised passage rate by (1) greatly limiting the students permitted to sit for the Step 1 test (only approximately 20% pass Comp and are permitted to sit for Step 1) and (2) ensuring that those who do sit for Step 1 are highly likely to pass Step 1 since they just passed a Step 1 practice test. It also inflates Defendants' profits by forcing many students, like Shields, to pay for additional classes before they can retake Comp. Those claims are likely to deceive a reasonable consumer and, like *Lendinara,* are quintessential FDUTPA and unjust enrichment claims that do not sound in fraud. Thus, Rule 9(b) does not apply and Defendants' motion should be denied.

Even if Rule 9(b) applies, Shields' Complaint meets that standard. Defendants argue that the only way to satisfy Rule 9(b) is "if 'the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what defendants obtained as a consequence of the fraud.'" (MTD, p.8). In support of this standard, Defendants rely upon *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) and its predecessor *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364 (11th Cir. 1997). (MTD, p.8). However, Defendants either overlook or ignore that the sole standard they rely so heavily upon, and on which their cases rely, comes from a section of the district court opinion that the Eleventh Circuit did not affirm. *Brooks*, 116 F.3d at 1364 (affirming "based upon the holding and rationale contained in Part III.A of the district court's [ ] order…We have no occasion to reach the remaining issues addressed in other parts of that order and imply no view concerning any of them." Defendants' standard is in Part II.C). *See also Ziemba v. Cascade Int'l., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (*relying upon Brooks*' standard in a securities

10

fraud case); *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at \*4 (S.D. Fla. Aug. 18, 2021) (Bloom, J.) (*quoting Brooks'* standard).

As noted by this Court in *American Airlines, Inc. v. Spada*, Rule 9(b) "can be satisfied by 'facts as to time, place, and substance of the defendant's alleged fraud' and 'details of the defendant['s] allegedly fraudulent acts, when they occurred and who engaged in them.'" 2024 WL 2797380, at \*3 *quoting Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 566-68 (11th Cir. 1994); *see also U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1308 (11th Cir. 2002). Shields meets this standard. The Complaint alleges that Defendants "orchestrated a false marketing scheme to induce students—including Plaintiff and the members of the Class—to enroll in AUC's M.D. program, which is controlled by [Covista]" by, *inter alia,* "heavily promot[ing] a 92% to 96% first-time passage rate on the USMLE Step 1 exam [ ]." (*Compl.* ¶ 34). Defendants created this misrepresentation by imposing an "undisclosed rule[ ] that AUC students must take and pass a [ ] 'Comprehensive Basic Medical Sciences Exam' ("Comp")…as a precondition to taking the USMLE exams." (*Id.* ¶ 48). Requiring students to pass Comp (a Step 1 pre-test) before sitting for Step 1 "artificially inflate[s] AUC's USMLE passage rate [thereby] deceptively luring in new prospective students." (*Id.* ¶ 49). Further, "students who do not pass Comp must either retake courses at AUC, which costs students money and profits AUC, or drop out of AUC, rendering students' payments worthless." (*Id.* ¶ 49). Shields enrolled at AUC in January 2020, meaning she would have received both the AUC 2020-2021 Acceptance Packet and the 2020 Student Handbook excerpted in the Complaint. (*Id.* ¶¶ 38, 50, 52). Shields failed the Comp in the Fall of 2022 and had to repeat and pay for her Fall 2022 classes again so she could try to pass Comp and be permitted to sit for the USMLE Step 1. (*Id.* ¶ 52).[3]

---

[3] Contrary to Defendants' unsupported assertions, the Complaint contains numerous allegations directed at Defendant Covista. It alleges "AGE [now Covista] exercises control over AUC through its senior executives and employees and provides administrative assistance and oversight. Employees for AUC often perform tasks for both [Covista's] AUC and Ross University." (*Compl.* ¶ 33). Further, "AUC orchestrated a false marketing scheme to induce students—including Plaintiff and the members of the Class—to enroll in AUC's M.D. program, **which is controlled by [Covista]**, by lying to students about the nature of the program, the learning environment of the program, and the success of the program." (*Id.* ¶ 34) (emphasis supplied). "[Covista] exploits control over AUC **to orchestrate and profit** from this deceptive scheme against medical doctorate

Shields alleged "who" made these misrepresentations, stating that "[both] Defendants" participated in deceptive "activity and unlawful conduct." (*Compl.* ¶ 18). Shields disclosed "where" and "how" the misrepresentations were made, alleging that these misrepresentations were made on "AUC's website, social media pages, online advertisements, and in direct communications with potential students," (*Id.* ¶ 36), as well as in Acceptance Packets (*Id.* ¶ 38), the AUC Marketing Brochure "Preparing Tomorrow's Physicians for Every Community" (*Id.* ¶ 40), and the Student Handbook (*Id.* ¶ 50). To make it crystal clear "what" misrepresentations were made, Shields directly quoted the misrepresentations (*Id.* ¶ 37) and even provided screenshots (*Id.* ¶¶ 38-40). And Shields disclosed "when" the misrepresentations were made. *See* (*Id.* ¶ 38) (providing screenshots from "AUC's 2020-2021 Acceptance Packet"); (*Id.* ¶ 40) (AUC's 2021 Marketing Brochure "Preparing Tomorrow's Physicians for Every Community"). Shields even alleged "why" Defendants made these misrepresentations. The misrepresentations were "material to prospective students' decision to enroll at AUC" (*Id.* ¶ 46) and resulted in Plaintiff and "each Class member [paying] for a medical education that was deceptively advertised by Defendants" (*Id.* ¶ 60) that often required students like Plaintiff "to repeat (and pay for) additional classes" (*Id.* ¶ 52), allowing Defendants to "reap[] millions of dollars a year in profits." (*Id.* ¶ 53). Shields' detailed allegations meet even the strictest Rule 9(b) standard.

Shields, however, need not meet the strictest Rule 9(b) standard. Although completely overlooked by Defendants, "'alternative means are also available to satisfy [Rule 9(b)].'" *Spada*, 2024 WL 2797380, at *3 (*quoting Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1512 (11th Cir. 1988)). Specifically, when, as here, "'the alleged fraud occurred over an extended period of time and the acts were numerous,'" then "Rule 9(b) may be 'applied less stringently.'" *Id.* (*citing*

---

students." (*Id.* ¶ 51) (emphasis supplied). As a result, "AUC and **[Covista]** have reaped millions of dollars a year in profits from this scheme." (*Id.* ¶ 53) (emphasis supplied). These specific allegations against Covista, along with the allegations against both Defendants (*Id.* ¶¶ 35, 36, 55), are more than sufficient. *See F.T.C. v. DeVry Education Group, Inc.*, 2016 WL 6821112, at *8 (C.D. Cal. May 9, 2016) (denying motion to dismiss under Rule 9(b) filed by Defendant Covista's predecessor entity arguing plaintiff improperly "lumped" parent company with the university because "Defendant DEG is alleged to have both controlled the deceptive acts of its subsidiaries and directly participated in the dissemination of misleading advertisements…it [is] plausible that Defendant [DEG] engaged in the wrongful conduct at issue").

*MeterLogic, Inc. v. Copier Sols., Inc.*, 126 F.Supp. 2d 1346, 1360 (S.D. Fla. 2000)). "In such cases, plaintiffs need only allege 'some examples of actual false claims to lay a complete foundation for the rest of [the] allegations.'" *Id.* (*quoting U.S. ex rel. Clausen*, 290 F.3d at 1314 n.25). The Complaint contains well over twenty-five specific allegations stemming from 2017 through at least 2023. *See generally* (*Compl.* ¶¶ 30, 37-55). Clearly then, the Complaint easily meets this less stringent standard. Thus, for three separate and independent reasons, the Complaint's allegations are sufficient.

### 3. The Complaint Adequately Alleges FDUTPA's Required Florida Nexus

Defendants seek to paint themselves as foreigners to Florida to place this case beyond FDUTPA's reach. (MTD at pp. 12-14). But that is not the law. FDUTPA is to be construed broadly and applies to otherwise actionable conduct occurring in or emanating from Florida. The Act "shall be construed liberally" and is intended "[t]o protect the consuming public and legitimate enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of *any trade or commerce*," with "trade or commerce" defined broadly and without geographic restriction as "the advertising, soliciting, providing, offering, or distributing, whether by sale ... or otherwise, of any … service ... *wherever situated*." Fla. Stat. §§ 501.202-203 (emphasis supplied). This plain language and case law foreclose Defendants' effort to curtail FDUTPA's reach where their wrongful conduct occurred in part here.

The statute itself contains no language "which purports to confine the provisions of FDUTPA or limit the Department's enforcement authority to commercial transactions involving only Florida residents." *Millennium Commc'ns & Fulfillment, Inc. v. Office of Att'y Gen., Dep't of Legal Affs., State of Fla.*, 761 So. 2d 1256, 1261 (Fla. 3d DCA 2000). In *Millennium*, where a Florida corporation mailed misleading postcards around the country and made misleading statements by phone, the court made clear that FDUTPA is not limited to Florida consumers so long as the offending conduct has the requisite Florida nexus. 761 So. 2d at 1262 ("As we read FDUTPA, it seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state without limitation.").

13

That is also the rule in this District, where "all of the federal courts in the Southern District of Florida that have considered this issue have followed *Millennium* and held that 'FDUTPA applies to non-Florida residents if the offending conduct took place predominantly or entirely in Florida.'" *Bank of Am., N.A. v. Zaskey*, 2016 WL 2897410, at \*9 (S.D. Fla. May 18, 2016) (quoting *Karhu v. Vital Pharms., Inc.*, 2013 WL 4047016 (S.D. Fla. Aug. 9, 2013) ("The Court finds that the reasoning in *Millennium* and its progeny provides the fairest reading of FDUTPA's text and stated purpose. Nothing in the language of the statute suggests that it is limited to transactions involving Florida consumers.")); *see also Barnext Offshore, Ltd. v. Ferretti Group, USA, Inc.*, 2012 WL 1570057, at \*6 (S.D. Fla. May 2, 2012) (Altonaga, J.) ("The Court is unpersuaded that the FDUTPA provides relief only to Florida consumers....[N]othing in *Millennium* suggests that the FDUTPA applies only when conduct occurs entirely within Florida.").

The scope of FDUTPA is broad and courts in this District have repeatedly rejected attempts to confine the Act narrowly. *See Zaskey*, 2016 WL 2897410, at \*9 ("Nothing in the plain language of FDUTPA limits its application to injuries occurring in Florida."); *Zarfati*, 2025 WL 373081, at \*12 ("The fact that Defendant is not a Florida company does not mean that there is not a sufficient Florida nexus for the FDUTPA claim. Neither does the fact that defendant advertises, markets, and sells its products throughout the United States and not solely in Florida."); *Eli Lilly & Co. v. Tyco Integrated Sec., LLC.*, 2015 WL 11251732, at \*4 (S.D. Fla. Feb. 10, 2015) ("[FDUTPA] does not limit its protection to acts occurring exclusively in Florida.").

Applying the well-settled, broad scope of FDUTPA here, the Complaint plainly alleges a sufficient Florida nexus. Plaintiff alleges that AUC's "principal offices [are] in Coral Gables and Miramar, Florida." *Compl.* ¶ 16. Plaintiff also alleges that this Court has specific personal jurisdiction over both Defendants because Plaintiff's claims arise from their activity and unlawful conduct in Florida, and that both Defendants "continuously and systematically operate, conduct, engage in, and carry on business in Florida." *Id*. ¶ 18. Those allegations are at least as strong as the allegations in *Zaskey*, where the court held it was a "fair inference" that the misleading communications originated in Florida because the defendant was conducting business in Florida during the relevant time period. 2016 WL 2897410, at \*10. So too here, where AUC's "principal

14

office" was in Florida. Defendants' only rebuttal to those allegations is their claim that AUC's primary operations and objectives are "simply 'supported by administrative staff located in office space in Miramar, Florida." (MTD, p.13).  Not only is this argument improperly based upon evidence outside the Complaint, it is rebutted by the very Student Handbook that Defendants admit is incorporated by the Complaint.  That Handbook describes the wide variety of Defendants' activities in Florida that relate to allegations in the Complaint.  According to the Handbook, attached as Ex. A to Defendants' Motion [ECF No. 22-1:11-12]:

> The administrative office for AUC is located in Pembroke Pines, Florida.  The Office of the Executive Dean is based within the administrative office along with several student service departments that assist current students with both the Medical Science and Clinical Sciences portions of their curriculum.  The following offices and/or functions are located within the administrative office in Pembroke Pines [in the Southern District of Florida].
> - Admissions
> - Office of the Registrar
> - Office of Undergraduate Medical Education (UME) Student Service
> - Office of Student and Professional Development
> - Student Communications
> - Student Housing

Even worse than Defendants' misleading attempt to minimize their Florida activities is that these same Defendants argued for Florida law when it suited them, but now argue against Florida law when it does not (interestingly, without asserting what state's law would apply).  AUC availed itself of this District as the forum to bring a breach of contract case against a foreign (New York) corporation and argued the contractual obligations to provide clerkships to its students were undertaken and obligated from the very administrative offices whose import Defendants now seek to downplay. *See AUC v. Caritas*, 484 F. App'x 322, 324, 327, n.3 (11th Cir. 2012) (noting its satellite office was in Coral Gables, Florida, that "AUC alleged that the hospitals negotiated the contract in Florida, owed their guaranty obligation there" and that AUC's Florida "satellite office" was more central to the operations at issue than the "home office" in the Caribbean).

Clearly then, the Complaint alleges more than enough activities in Florida.  That is perhaps best evidenced by the fact that Defendants raise no personal jurisdiction challenge.[4]  And as this Court held in *Barnext*, "[g]iven the FDUTPA's broad, plain language, whether the FDUTPA applies to Defendants requires an inquiry into the Court's personal jurisdiction over them." 2012 WL 1570057, at *6 (citing *Execu–Tech Bus. Sys. Inc. v. New Oji*, 752 So.2d 582 (Fla. 2000) (requiring that both the Florida long-arm statute and the "minimum contacts test" be satisfied for there to be personal jurisdiction over defendants that would subject them to the FDUTPA)). On that basis, the court rejected the defendants' attempt to avoid FDUTPA where they "fail[ed] to explain why, if at all, personal jurisdiction [was] lacking over them such that the FDUTPA does not apply." *Id.* Courts in this District have followed *Barnext's* reasoning. *See Buckley v. Moore*, 2021 WL 3173185, at *8-9 (S.D. Fla. July 26, 2021) (denying motion to dismiss FDUTPA claim where defendant failed to challenge personal jurisdiction); *Happy Tax Franchising LLC v. Hill*, 2023 WL 2664261, at *18 (S.D. Fla. Jan. 25, 2023) (same at summary judgment); *Millner v. Plutus Enters., LLC*, 2022 WL 2237404, at *5 (S.D. Fla. June 22, 2022) (noting FDUTPA's lack of geographical or residential restrictions and rejecting defendant's insufficient-Florida-connection argument). Under that line of authority, Defendants' failure to contest personal jurisdiction is fatal to their attempt to geographically narrow FDUTPA here.

In short, Defendants' attempt to geographically narrow FDUTPA fails at every level. The statute's text does not impose the limitations they propose, the controlling and persuasive cases reject them, and the Complaint plainly alleges a sufficient Florida nexus. Defendants' failure to challenge personal jurisdiction only underscores the point. At the pleading stage, that is more than enough.

### 4.  Shields' Complaint Adequately States a Claim Under FDUTPA.

To state a FDUTPA claim, "a plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983-84 (11th

---

[4] Defendants therefore waive any objection on the basis of personal jurisdiction. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 n. 21 (11th Cir. 2009) ("[A] party's right to dispute personal jurisdiction is waived if the party fails to assert that objection in its first Rule 12 motion, other responsive pleading or general appearance.") (citing Fed. R. Civ. P. 12(h)).

Cir. 2016).  Defendants claim Shields' Complaint alleges none of the three elements.  Defendants' claims are based on a misstatement of the law, misrepresentations of the Complaint, and, oftentimes, both.

      a.   <u>Whether a Reasonable Consumer Would Be Misled is a Fact Issue</u>.

Defendants' argument gets off to a very bad start when they claim that "[w]hether an alleged act or practice is deceptive or unfair may be decided as a matter of law." (MTD, p.20). Defendants' authority for this claim is *Casey v. Fla. Coastal Sch. Of L. Inc.*, a 2015 case from the Middle District of Florida.  2015 WL 10096084 (M.D. Fla. Aug. 11, 2015).  But that is not the law in 2026. "Generally, whether an advertisement is likely to mislead reasonable consumers presents a question of fact." *F.T.C. v. Corpay, Inc.*, 164 F.4th 807, 834 (11th Cir. 2026).[5]  And it certainly is not the law in this District.  "Whether [specific] conduct constitutes an unfair or deceptive trade practice is a question of fact for the jury to determine." *Consentino v. Bridgestone Retail Op., LLC*, 2024 WL 3983985, at *3 (S.D. Fla. Aug. 29, 2024) (Leibowitz, J.); *see also Reilly v. Amy's Kitchen, Inc.*, 2013 WL 9638985, at *5 (S.D. Fla. Dec. 9, 2013) (Cohn, J.) ("Whether reasonable consumers were actually misled…are factual issues, inappropriate for resolution on a motion to dismiss"); *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F.Supp.3d 1307, 1316 (S.D. Fla. Sept. 25, 2017) (Moore, J.) ("whether [specific] conduct constitutes an unfair or deceptive trade practice is a question of fact for the jury to determine"); *Coleman v. CubeSmart*, 328 F.Supp.3d 1349, 1361 (S.D. Fla. June 21, 2018) (Martinez, J.) ("how a reasonable consumer would interpret a term is an issue of fact").  That alone ends Defendants' argument.

Even if the antiquated law from the Middle District that Defendants rely upon governed, the allegations here clearly establish that a reasonable consumer would be misled.  In *Casey,* the Middle District of Florida Report and Recommendation that Defendants rely heavily upon, the defendant, Florida Coastal School of Law ("Florida Coastal"), published data on its recent graduates.  "Like most or all law schools before August 2012, it included in the data part-time,

---

[5] When interpreting FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. § 501.204.

non-legal, temporary, voluntary, school-funded, and solo-practitioner jobs without saying so." 2015 WL 10096084, at *15.  Florida Coastal acted no differently than any other law school. Critically, Florida Coastal's website also "specified the salary data was based on responses supplied by only 29 percent of the employed graduates."  *Id.* Thus, a "reasonable consumer" had all the information necessary to deduce "from that small sampling that it [did not] reflect the average salary of all employed graduates."  *Id.*  The allegations here are very different.  First, there is no evidence that all other medical schools published the same information as Defendants. Second, Defendants did not disclose information necessary for students to understand the truth about AUC's USMLE Step 1 passage rate.  As alleged, Defendants "orchestrated a false marketing scheme to induce students—including Plaintiff and the members of the Class—to enroll in AUC's M.D. program, which is controlled by [Covista]" by, *inter alia,* "heavily promot[ing] a 92% to 96% first-time passage rate on the USMLE Step 1 exam [ ]." (*Compl.* ¶ 34). Defendants created this misrepresentation by imposing an "**undisclosed rule**[ ] that AUC students must take and pass a [ ] 'Comprehensive Basic Medical Sciences Exam' ("Comp")…as a precondition to taking the USMLE exams."  (*Id.* ¶ 48) (emphasis supplied).  Essentially, Defendants make students pass a practice USMLE Step 1 before they are allowed to take the actual USMLE Step 1.  This undisclosed prerequisite artificially inflated Defendants' passage rate and caused students to pay for useless semesters.

Defendants next argue that "students, who have college degrees and taken countless exams before the USMLE Step 1" should have known that the "test pass rate consists [only] of the students who actually take the exam."  (MTD, p.16). This claim fails both legally and factually. Legally, a plaintiff's prior experience or sophistication is irrelevant under FDUTPA.  *State Farm Auto. Ins. Co.*, 278 F.Supp.3d at 1316 ("the Court rejects the argument that Plaintiff's FDUTPA claim fails because Plaintiff—as an experienced insurance company—should be aware of the 'usual and customary' billing practices alleged and thus Plaintiff has failed to 'reasonable avoid the injury'"); *Carriuolo*, 823 F.3d at 985 ("Because a plaintiff asserting a FDUTPA claim 'need not show actual reliance on the representation or omission at issue,' the mental state of each class member is irrelevant."). Factually, Defendants completely ignore the allegation of "the

18

**undisclosed rule[ ]** that AUC students must take and pass [Comp]…as a precondition to taking the USMLE exams." (*Compl.* ¶ 48) (emphasis supplied). "Comp serves an undisclosed gatekeeping function for AUC" by "artificially inflat[ing] AUC's USMLE passage rate" and causing students to "retake courses at AUC, which costs students money and profits AUC." (*Id.* ¶ 49). "AUC fails to disclose this requirement to prospective students in its marketing material or Student Handbook." (*Id.* ¶ 50). Defendants claim that students could avoid being misled, "by the simple due diligence of looking up AUC's curriculum requirements, as detailed, for example, in the very Student Handbook Plaintiff cites, or a quick review of the very explanation AUC provided for its pass rate calculations as cited in this Complaint." (MTD, p.17). But Defendants claim is simply belied by the allegations in the Complaint and the very sources Defendants cite, none of which disclose the Comp requirement. [6] Thus, unlike in *Casey*, here there is an undisclosed Comp requirement that no student, no matter how diligent or sophisticated, could know about, and which inflated the pass rate and cost students money.

> b. The Complaint Alleges Causation

Defendants claim that Plaintiff "failed to plausibly allege that she was harmed by Defendants." (MTD, p.18). Specifically, Defendants argue that "Plaintiff fails to allege facts supporting the notion that the alleged misrepresentations would have deceived an objectively reasonable consumer under the circumstances—*i.e.*, a college-educated individual who is exploring medical schools and doing their due diligence—thereby eliminating any potential 'causation.'" (*Id.*). This is simply a rehash of Defendants' prior argument as evidenced by Defendants' citation to the prior section of their brief. (*Id.*). And it fails for the same reasons above. It is a fact issue inappropriate for a motion to dismiss and, regardless, no matter how sophisticated

---

[6] Defendants artfully attempt to avoid this truism by arguing that "Defendants **did explain** that the pass rate was made up of students who attempted the exam" and that "the Student Handbook [ ] goes into great detail about the requirements students must pass to sit for the USMLE exams." (ECF No. 22, p.17). But, of course, the allegation is not that Defendants failed to disclose that the pass rate was made up of students who attempted the exam, but rather that Comp was an undisclosed prerequisite to sit for the exam that weeded out students who did not pass Comp (which was basically a USMLE practice exam), thereby artificially inflating the pass rate. (*Compl.* ¶¶48, 49). And, the "great detail" in the Student Handbook completely omits the Comp requirement. (*Id.* ¶ 50); ECF No. 22-1, Ex. A.

Plaintiff or any other Class member was, they could not know of the undisclosed Comp requirement and its impact on the USMLE Step 1 passage rate (or their pocketbooks).

Next, Defendant asserts that "Plaintiff fails to allege she (or any plaintiff for that matter) even viewed any of the misrepresentations at all before enrolling, let alone details surrounding such viewing, which is fatal under the causation prong." (*Id.*).  Defendants either misunderstand or misstate FDUTPA law which does not require the reliance element they seek to impose.  Defendants made precisely the same argument in *Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687, 693 (S.D. Fla. 2010) (Huck, J.) (*remanded solely to expand class definition, Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011).  There, the yogurt manufacturer claimed "that a plaintiff must have been subjected to each specific representation, omission, or practice which the plaintiff claims was likely to mislead an objective reasonable consumer; a plaintiff cannot cite a representation, omission, or practice to which she was not personally exposed." *Id.*  However, this Court noted that there is "no authority for this exacting standing requirement." *Id.*  A plaintiff is not "forced to rely only on those representations, omissions or practices experienced firsthand to prove that a defendant engaged in a deceptive act." *Id.* Rather, a plaintiff "seeking to prove that [Defendants'] message is 'deceptive' may rely on any evidence concerning that message, including advertisement to which he or she was not personally exposed." *Id.* at 694.  Put another way, "Plaintiff need not prove that she relied on any particular representation when she decided to purchase [an AUC education]." *Nelson*, 270 F.R.D. at 696.[7]

A "plaintiff asserting a FDUTPA claim 'need not show actual reliance on the representation or omission at issue.'" *Carriuolo*, 823 F.3d at 985.  Rather, "a plaintiff must simply prove that an objective reasonable person would have been deceived." *Fitzpatrick*, 635 F.3d at 1283.  "[O]n a motion to dismiss, a plaintiff need only allege that she suffered a loss that was proximately caused by the defendant's deceptive, misleading, or unfair trade practices under the FDUTPA."

---

[7] Although not required as shown *infra*, Shields does in fact allege that: (1) AUC induced her to enroll through a "false marketing scheme" (*Compl*. ¶ 34); (2) the misleading Step 1 passage rate was material to the decision to enroll (*Id*. ¶ 46); (3) leading to her enrolling, failing Comp, and being forced to pay for repeat classes (*Id*. ¶ 52).

*Consentino*, 2024 WL 3983985, at *3.  Because Shields alleged that and more, the motion should be denied.[8]

> c.   The Complaint Alleges Damages

Defendants claim the Complaint should be dismissed because Plaintiff fails to plausibly allege actual damages because "nowhere does Plaintiff plead the market value of the education she received in light of the alleged deceptive advertising."  (MTD, p.19).  According to Defendants, Plaintiff needed to "point to any medical school tuition that might serve as a comparator or substitute in the market or any method by which a theoretical difference could be calculated." (*Id.*). Once again Defendants misstate the allegations in the Complaint and ignore the law in this District.

Defendants seek to rewrite Shields' Complaint, as perhaps best evidenced by the fact that Defendants never cite, much less quote, the Complaint in support of their strawman claim.  The damages alleged in the Complaint are not "the market value of the education [Shields] received in light of the alleged deceptive advertising." Instead, as actually alleged in the Complaint, "AUC orchestrated a false marketing scheme to induce students—including Plaintiff and members of the Class—to enroll in AUC's M.D. program." (*Compl.* ¶ 34).  Later, only after the students were enrolled and taking classes in the Caribbean, Defendants informed Plaintiff and the Class that they "must take and pass [ ] 'Comp' as a precondition to taking the USMLE exam." (*Id.* ¶ 48). Students, like Shields, who failed Comp had to "either retake courses at AUC, which costs students money

---

[8] Once again, Defendants rely predominately on cases outside this District.  (MTD, p. 18-19).  And those out-of-District cases are materially different.  *See Berenguer v. Warner-Lambert*, 2003 WL 24299241, at *3 (Fla. Cir. Ct. 13th Jud. Cir. Hillsborough Cty. July 31, 2003) (Florida state trial court dismissing FDUTPA complaint because the cited "advertisements do not contain the advertising claims that [plaintiffs] assert violate FDUTPA"); *Carrier v. Jordaan*, 746 F.Supp.2d 1341, 1351 (S.D. Ga. 2010) (Georgia court dismissing FDUTPA count because plaintiffs pled that they relied on misrepresentations but never pled that a reasonable consumer would be misled); *Inouye v. Adidas America, Inc.*, 2023 WL 2351654, at *4 (M.D. Fla. March 3, 2023) (plaintiff was unclear about where the misrepresentations emanated, alleging that he "viewed the alleged misrepresentations on either [the defendant's] or third parties websites").  The only case from this District that Defendants cited is inapplicable because it was not on a motion to dismiss, but rather after ten months of discovery and a bench trial.  *See Hennegan Co. v. Arriola*, 855 F.Supp.2d 1354, 1358 (S.D. Fla. 2012) (King, J.).  Because that finding followed discovery and trial, it is inapplicable to a motion to dismiss. *Rodriguez v. JPay, Inc.*, 2019 WL 11624312, at *7, n.8 (S.D. Fla. Oct. 21, 2019) (Maynard, M.J.)

[ ], or drop out of AUC, rendering students' payments worthless." (*Id.* ¶ 49).  Shields failed Comp in 2022 and was "forced to repeat (and pay for) her Fall 2022 classes." (*Id.* ¶ 52). Thus, Shields and the Class had to pay for semesters that were completely useless because they either had to be repeated (and paid for a second time) or never led to students being able to sit for the USMLE Step 1, much less become a doctor.

"For defining 'actual damages' under FDUTPA, *Rollins v. Heller*, 454 So. 2d 580 (Fla. 3d DCA 1984), is the seminal case." *Bohlke v. Shearer's Foods, LLC,* 2015 WL 249418, at *7 (S.D. Fla. Jan. 20, 2015) (Rosenberg, J.).  *Rollins* held that "[a] notable exception to the [difference in market value] rule may exist when the product is rendered valueless [ ]—then the purchase price is the appropriate measure of actual damages."  *Rollins*, 454 So. 2d at 585.  As a result, a Complaint, like this one, that alleges the product at issue "has been rendered valueless" is sufficient to defeat dismissal.  *Bohlke*, 2015 WL 249418, at *8.[9]

**5.   The Unjust Enrichment Claim is Well Pled**

A claim for unjust enrichment has three elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained the benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Matus v. Sport Squad*, 2024 WL 5135678, at *4 (S.D. Fla. Dec. 17, 2024). Defendants lodge two challenges to the count, arguing there are no allegations of (i) an inadequate remedy at law; and (ii) their retention of the benefit would be inequitable. MTD at 20.

Defendants misrepresent the law when arguing the "claim fails because Plaintiff does not allege that (i) she lacks an adequate remedy at law." MTD at 20. In fact, Defendants' claim is squarely contradicted by binding Eleventh Circuit law.  *See State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.*, 427 F. App'x 714 (11th Cir. 2011), *rev'd in part on other grounds*, 824 F.3d 1311 (11th Cir. 2014).  In *State Farm*, a case glaringly ignored by Defendants, the

---

[9] Defendants again rely upon an out of District case, *Sweeney v. Kimberly-Clark Corp.*, 2016 WL 727173 (M.D. Fla. Feb. 22, 2016). *Sweeney* is also inapposite.  *Sweeney* had a different damages theory than here, alleging a price inflation theory that the Middle District previously found too speculative. *Id.* at *6.  Moreover, in *Sweeney*, unlike here, the plaintiffs continued to purchase the flushable wipes they claimed defective "for reasons unrelated to" the defect.

Eleventh Circuit expressly held that the rule that "equitable remedies are not available under Florida law when adequate legal remedies exist .... does not apply to unjust enrichment claims." *Id*. at 722. *See also Matus*, 2024 WL 5135678, at *4 ("[Plaintiff] may allege, in the alternative, a claim for unjust enrichment even though [his] FDUTPA claim might provide an adequate legal remedy."); *Harris v. Nordyne, LLC*, 2014 WL 12516076, at *7 n.5 (S.D. Fla. Nov. 14, 2014) (rejecting the notion that there must be a "complete absence of an adequate remedy at law," meaning different factual predicates between the unjust enrichment claim and the legal causes of action, in order to state a claim for unjust enrichment); *Heuer v. Nissan N. Am., Inc.*, 2017 WL 3475063, at *6 (S.D. Fla. Aug. 11, 2017) (same); *Zarfati*, 2025 WL 373081, at *15 (same).[10]

The remaining argument – that Plaintiff did not plead circumstances that would render it inequitable for Defendants to retain the benefits they received – fares no better. The allegations plead Defendants received consideration in the form of tuition payments obtained "through misrepresentations and deception." *Compl*. at ¶¶ 73-74. When combined with the Complaint's detailed allegations, including that their "deceptive[] market[ing]" was "material to prospective students' decision to enroll" (*Id*. ¶ 46), as incorporated (*Id*. ¶ 72), this states a claim for unjust enrichment. *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1289-91 (S.D. Fla. 2020) (denying dismissal of unjust enrichment claim where plaintiff alleged defendant retained money obtained through deceptive representations and omissions). A cause of action for unjust enrichment exists when "an entity accepts and retains benefits that it is not legally entitled to receive in the first place." *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013); *see also*, *Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333, 1351 (S.D. Fla. 2014) ("Based on the allegations of [misrepresentations of the product], the plaintiffs in the instant case did not receive the benefit of that bargain and have alleged a cause of action for unjust enrichment.").[11]

---

[10] Alternate pleading of FDUTPA and unjust enrichment claims does not require different factual predicates. *See Gilead Scis., Inc. v. AJC Med. Grp., Inc.*, 2021 WL 8534243, at *22 (S.D. Fla. Nov. 29, 2021) ("Defendants' argument that Gilead's unjust enrichment claim is factually duplicative fails because plaintiffs may plead unjust enrichment claims in the alternative to legal causes of action, even if they rely on identical factual predicates.") (collecting cases).

[11] Plaintiff is no longer seeking punitive damages for Count II.

23

**6.** **<u>The Educational Malpractice Assertion is a Red Herring</u>**

Defendants attempt to rewrite Plaintiff's claims as impermissible educational malpractice claims. MTD at 21-22. In doing so, Defendants mischaracterize what this case is actually about. Plaintiff is not asking the Court to measure the quality of AUC's teaching or second-guess pedagogical decisions. The issue is whether Defendants' marketing practices—used to induce students to enroll and pay tuition—were misleading such that they would deceive an objectively reasonable consumer. *Carriuolo*, 823 F.3d at 986. The inquiry, then, is not into pedagogical methods, but deceptive advertising.

Florida courts have refused to apply the educational malpractice bar unless the quality of the education itself is the subject of the suit. *Simon v. Celebration Co.*, 883 So. 2d 826, 832 n.5 (Fla. 5th DCA 2004) ("cases involving educational malpractice deal with plaintiffs who allege that their school failed to teach them reading, or failed to properly diagnose a learning disability."). In *Simon*, the court held it was error to dismiss a complaint that, while "inartfully drafted… sought to allege claims for fraud and misrepresentation, not educational malpractice." *Id.* at 832. Citing *Simon*, the court in *Newman v. Socata SAS* refused to extend the doctrine to a "for-profit flight school," recognizing there should be "limited application of the educational malpractice bar" in Florida. 924 F. Supp. 2d 1322, 1329 (M.D. Fla. 2013). And contrary to Defendants' assertions, "calculating market damages in this context does not necessarily violate the educational malpractice doctrine." *See Allen v. Jacksonville Univ.*, 2022 WL 17668615, at \*10 (M.D. Fla. Dec. 14, 2022). There, the school shifted from in-person learning to online classes during the pandemic, which led to the lawsuit. The court noted that ascertaining the value difference in these pedagogical methods need not implicate the educational malpractice doctrine. "Factual development could reveal that Allen's damages depend solely upon a quantitative calculation—for example, a cost comparison between the in-person degree program at JU and an online degree program at a comparable university." *Id*. Here, the damages calculation is also quantitative: the plaintiff paid for a program based on advertising with a net effect "suggest[ing] virtually every student at AUC passes the USMLE Step 1 on their first attempt." *Compl.* ¶ 6. For the plaintiff, and other putative class members, the factual development is likely to show the quantum of damages is this sunk cost

where the product is worthless to them.  "When a plaintiff receives a worthless product, his benefit of the bargain damages will be equal to the entire purchase price of the product." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) (citing *Rollins*, 454 So. 2d at 585).

Defendants ask this Court to do something none of the inapposite cases they cite do: extend a narrow doctrine to shield a for-profit educational institution from liability for allegedly deceptive marketing.[12]  Neither the law nor public policy supports that result. Were the doctrine as broad as Defendants suggest, educational institutions would be effectively insulated from fraud, FTC, and FDUTPA claims based on misrepresentations made to prospective students, which they are not.[13]

## CONCLUSION

Defendants' scattershot Motion to Dismiss relies upon misstatements of the law in the Southern District of Florida, misrepresentations of the allegations in the Complaint, and oftentimes both.  It should be denied.

---

[12] *Tubell v. Dade Cnty. Pub. Schs.*, 419 So. 2d 388 (Fla. 3d DCA 1982) (claim school negligently tested and classified student, resulting in improper placement in a special educational program); *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 649 F. Supp. 3d 1245 (S.D. Fla. 2022) (claims based on denial of "full on-campus experience" during pandemic); *Armstrong v. Data Processing Inst., Inc.*, 509 So. 2d 1298 (Fla. Dist. Ct. App. 1987) (stating that "educational malpractice ... is not cognizable in Florida," citing *Tubell* and *Donohue v. Copiague Union Free Sch. Dist.*, 47 N.Y.2d 440 (1979) where the claim that a high school student was not taught how to use written English was not cognizable).  Defendants seek to extend this narrow doctrine; none of their authorities involve deceptive advertising or for-profit schools.

[13] *See Compl.* ¶ 15 and *F.T.C. v. Devry Educ. Grp., Inc.*, 2016 WL 6821112 (denying MTD where for-profit educational institution advertised income and employment claims based on claims with fine-print disclaimers); *Brown v. Adtalem Glob. Educ., Inc.*, 421 F. Supp. 3d 825 (W.D. Mo. 2019) (false and misleading advertising campaign regarding placement and income of graduates was actionable); *Makaeff v. Trump Univ.*, LLC, 2010 WL 3988684, at *3 (S.D. Cal. Oct. 12, 2010) ("[r]uling on these issues would not require an inquiry into pedagogical methods, the quality of Defendant's instructors and curriculum, or an evaluation of Plaintiffs' 'progress or achievement, or the reasons for their success or failure.'"); *Wright v. Capella Univ., Inc.*, 378 F. Supp. 3d 760, 771-72 (D. Minn. 2019) ("This doctrine does not bar allegations that the institution failed to perform on specific promises… the Court need not assess the general quality of [Plaintiff]'s instructors nor the effectiveness of [the for-profit college]'s programs. Instead, the relevant inquiry would be tied to objective enrollment statistics."). *Carroll v. Walden Univ.*, LLC, 650 F. Supp. 3d 342, 375 (D. Md. 2022) (where for-profit university "deliberately hid" costs and "understat[ed] the number of credits required to complete the program … [t]he educational malpractice doctrine does not bar any of Plaintiffs' claims.").

25

Dated: April 20, 2026.                    Respectfully submitted,

                                          BUCKNER + MILES
                                          2020 Salzedo Street, Ste. 302
                                          Coral Gables, Florida 33134
                                          Tel.: (305) 964-8003
                                          Fax: (786) 523-0585

                                          /s/Seth Miles, Esq.
                                          Seth Miles, Esq., FBN 385530
                                          seth@bucknermiles.com
                                          David M. Buckner, Esq. FBN 60550
                                          david@bucknermiles.com
                                          Brett E. von Borke, Esq., FBN 0044802
                                          vonborke@bucknermiles.com
                                          Jonathan E. Kobrinski, Esq., FBN 1029120
                                          jkobrinski@bucknermiles.com

                                                  and

                                          DOLAN DOBRINSKY ROSENBLUM BLUESTEIN LLP
                                          2665 S. Bayshore Drive, Suite 603
                                          Miami, Florida 33133
                                          Tel.:. (305) 371-2692
                                          Fax: (305) 371-2691

                                          Manuel Leon Dobrinsky, Esq., FBN 775525
                                          MDobrinsky@DDRLawyers.com
                                          Eric Bluestein, Esq., FBN 58240
                                          EBluestein@DDRLawyers.com
                                          Laura Navia, Esq., FBN 1058283
                                          LNavia@DDRLawyers.com

                                          *Counsel for Plaintiff and the Proposed Class*

26

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and served electronically on April 20, 2026 on all counsel or parties of record on the Service List below.

/s/ Seth Miles
Seth Miles, Esq., FBN 385530
seth@bucknermiles.com

27

## SERVICE LIST

Martin B. Goldberg, Esq.
Lash & Goldberg
100 SE 2nd Street, Suite 1200
Miami, Florida 33131
mgoldberg@lashgoldberg.com

Caitlin E. Dahl, Esq.
Eric R. Swibel, Esq.
Sean M. Berkowitz, Esq.
Shelby L. Dedo, Esq.
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
caitlin.dahl@lw.com
eric.swibel@lw.com
sean.berkowitz@lw.com
shelby.dedo@lw.com

Delia Tasky, Esq.
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
delia.tasky@lw.com

Lynnette Cortes Mhatre, Esq.
Lash Goldberg Fineberg LLP
2500 Weston Road, Suite 220
Weston, Florida 33331
lmhatre@lashgoldberg.com

*Counsel for Defendants Adtalem Golbal Education Inc.
and Adtalem Global Health, Inc.*

28