**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case Number: 1:26-cv-20504-MD**

**NALEXUS SHIELDS and**
**AYSHAH ZAMAN, on behalf**
**of themselves and all others**
**similarly situated,**

       **Plaintiffs,**

**v.**

**COVISTA INC., and**
**COVISTA GLOBAL HEALTH, INC., d/b/a**
**AMERICAN UNIVERSITY OF THE CARIBBEAN**
**SCHOOL OF MEDICINE,**

       **Defendants.**
_____/

**AMENDED COMPLAINT**

Plaintiffs, Nalexus Shields and Ayshah Zaman, on behalf of themselves and all others similarly situated (herein referred to as the "Plaintiffs"), hereby sue Defendants Covista Inc. ("Covista"), and Covista Global Health, Inc., d/b/a American University of the Caribbean School of Medicine ("AUC"), and state as follows:

**INTRODUCTION**

1. This action seeks damages against Covista and AUC for deceptive and unfair practices in the promotion of AUC to potential students.

2. From their offices in the Southern District of Florida, Defendants operate a for-profit medical school in the Caribbean called The American University of the Caribbean which is in turn owned and controlled by Covista.

3. Caribbean medical schools provide students an alternative pathway to

becoming a doctor, typically admitting applicants with lower GPAs and MCAT scores than their United States counterparts. As a result, Caribbean medical schools are often perceived as less attractive to students than their mainland counterparts.

4.      To overcome these negative perceptions, since at least 2015, Defendants induced students to enroll at AUC with false assurances of success by advertising inflated and misleading outcomes that were calculated by excluding large numbers of unsuccessful students.

5.      Defendants have and continue to lure potential students with false assurances of passing the United States Medical Licensing Examination ("USMLE"), a multi-step examination that medical students must pass before obtaining their medical license. Typically, and as marketed by Defendants, students complete two years of coursework and then take the USMLE Step 1, followed by an additional two years of clinical work and the USMLE Step 2.  Students must pass both the USMLE Step 1 and 2 to earn a medical degree. Defendants specifically advertised that "AUC School of Medicine's curriculum is designed to prepare students to succeed on all parts of the USMLE."

6.      Throughout the Class Period, as defined below, Defendants heavily promoted a 93% to a 96% first-time passage rate on the USMLE Step 1 exam by AUC students.  They touted these results on AUC's website, social media pages, online advertisements, and in direct communications with consumers.  The effect of this was to suggest that virtually every student at AUC passes the USMLE Step 1 on their first attempt and that the passage rate is a testament to the AUC education.

7.      What Defendants do not disclose is that only about 20% of the students who enroll at AUC ever sit for the USMLE Step 1 exam because they either drop out of the program or

because Defendants—in an effort to make their exam passage percentages appear higher—bar students from taking the exam by requiring them to obtain a certain score on an AUC-administered pretest (or third-party pretest) also referred to as "Comp," something not disclosed to students prior to enrollment.

8.      If students do not pass AUC's pretest, they are either required to pay for and repeat AUC courses prior to additional attempts to pass the pretest, or they are dismissed from the program with no opportunity to ever sit for the USMLE Step 1 exam.

9.      By concealing the fact that students must pass Comp before sitting for Step 1 which means Defendants' USMLE passage rate calculation excludes the many students who do not take the exam, Defendants deceive prospective and current students about the cost and value of AUC's education.

10.     In fact, AUC's USMLE "success" does not come from preparing students well, but from excluding the students it failed to prepare from its calculations and/or making students spend additional money taking repeat courses.

11.     These representations communicate to students that paying significant money to attend AUC will be worth the risk because at AUC, they are near certain to pass the USMLE. But both AUC and Covista know that most of the students who enroll will not make it through even the first half of the USMLE, rendering their tuition worthless, and even those who do will only do so after paying for repeat courses.

**PARTIES**

12.     Plaintiff Nalexus Shields is a resident of Lubbock, Texas, currently residing in Saint-Cyr-sur-Loire, France.

13.     Plaintiff Ayshah Zaman is a resident of Delray Beach, Florida and at all times

3

material to the Amended Complaint was a resident of Florida.

14. Defendant Covista is a for-profit corporation organized under the laws of the State of Delaware and traded on the New York Stock Exchange under the symbol CVSA. Its principal place of business is located at 500 West Monroe St., Chicago, Illinois 60661.

15. Covista was formerly known as Devry Education Group, Inc. (hereinafter Devry), which acquired Defendant AUC in 2011.[1]

16. Devry changed its name to Adtalem Global Education, Inc., in or around 2017 as part of a "rebranding" after Devry was sued by the Federal Trade Commission for fraudulent misrepresentations to students associated with its Devry University, which resulted in a $100 million settlement. Within weeks of the filing of the initial Complaint in this action, Adtalem Global Education, Inc. rebranded to Covista Inc.

17. Defendant AUC is a for-profit corporation organized under the laws of the State of New York with principal offices in Coral Gables, Plantation, Pembroke Pines, and Miramar, Florida.

### JURISDICTION AND VENUE

18. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") (codified at 28 U.S.C. §§ 1332(d)(2)). At least one member of the Class is a citizen of a different state than the Defendants, there are more than one hundred members of the Class, and the aggregate amount in controversy exceeds five-million dollars ($5,000,000).

19. This Court has specific personal jurisdiction over AUC and Covista because Plaintiffs' claims arise out of AUC's and Covista's activity and unlawful conduct in Florida and in this District, including the conduct by which Plaintiffs were damaged. Accordingly, Covista

---

[1] https://www.buzzfeednews.com/article/mollyhensleyclancy/troubled-colleges-rebrand-under-faux-latin-names

and AUC are subject to Florida's long arm jurisdiction under Fla. Stat. § 48.193. This Court has general personal jurisdiction over Covista and AUC because Covista and AUC continuously and systematically operate, conduct, engage in, and carry on business in Florida.

20.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Covista and AUC transact business, engaged in misconduct, and/or may be found in this District.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because Ms. Zaman's cause of action accrued within this judicial district and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred here, Ms. Zaman is a resident and citizen of this District, and Defendants' wrongful acts in the District have impacted the general public of this District, including the Plaintiffs.

22.     All conditions precedent to this action have occurred, been performed, or been waived.

## **FACTS**

23.     All facts alleged herein are based upon personal knowledge as to Plaintiffs, and upon information and belief as to all other matters.

24.     Throughout the Class Period, AUC operated a four-year medical school which conferred a medical doctoral (M.D.) degree to its graduates upon successful completion of its M.D. program curriculum.

25.     AUC's administrative office is located in the Southern District of Florida and houses its Executive Dean, student service departments, and other functions, which include Admissions, Office of the Registrar, Office of Undergraduate Medical Education Student Service, Office of Student and Professional Development, Student Communications, and Student Housing. At times relevant to this Amended Complaint, the Defendants' employees and agents, including

5

personnel responsible for recruiting and marketing, worked from the Southern District of Florida.

26.     AUC directs its prospective students, who are the subjects of Defendants' misleading marketing, to send application materials by mail to its administrative office in the Southern District of Florida.

27.     In its Acceptance Packets, AUC called for its admitted students to send materials to its administrative office in the Southern District of Florida in order to complete their registration with AUC.

28.     In 2022, Covista's institutions including AUC enrolled over 77,000 students resulting in revenue of over $1.4 billion.

29.     All medical school graduates seeking to practice in the United States are required to pass a series of USMLE exams before obtaining their medical license.

30.     Medical students typically take the USMLE Step 1 exam after they take their basic medical science courses, usually after their first two years of medical school.  This exam is a prerequisite to beginning the clinical sciences portion (clinical rotations) of the M.D. program at medical facilities in the United States.

31.     AUC conducts the first two years (represented as five semesters) of its basic sciences medical school curriculum on the island of St. Maarten and is considered a "foreign medical school."  The second two years of medical school (5 semesters) commences after students successfully pass the USMLE Step 1 exam and is completed at affiliated hospitals in the United States.

## ACADEMICS

American University of the Caribbean School of Medicine (AUC) offers comprehensive medical training designed to prepare aspiring physicians for practice in the United States, Canada, and beyond.

### A US-Modeled Medical School Curriculum

You'll start out on AUC's supportive campus in St. Maarten—a warm, collegial academic environment that emphasizes collaboration, empathy, and team-based care. Here, you'll work closely with medical school faculty and your peers to engage in concentrated study of the medical sciences over five semesters. You'll be exposed to the clinical side of medicine as early as semester two, with an increased clinical emphasis in semester five. During your time here, you'll leverage advanced technology to enhance your medical school experience, such as our high-tech simulation center and anatomy lab. Learn more via a virtual tour of our campus.

### Clinical Rotations in US Teaching Hospitals; UK Rotations Available

After completing the medical sciences portion of the curriculum, AUC students move on to clinical rotations in the United States, Canada, or the United Kingdom at AUC-affiliated teaching hospitals. During this portion of the program, you'll serve as a member of a team comprised of students, residents, and attendings. You'll examine laboratory results, undertake certain procedures, perform histories and physicals, and more. Students proceed to residency placement through the National Resident Matching Program after completing the clinical program.

32.     AUC noted the importance of passing the USMLE as part of advancing in its M.D. program.



6 | AUC SCHOOL OF MEDICINE

7

33.     The USMLE does not require a pretest prior to taking the USMLE Step 1 exam.

34.     From at least January 1, 2017, AUC admitted and enrolled a new class of students on a rolling basis during three separate enrollment periods occurring in January, May, and September semesters each year.

35.     The number of students enrolled per semester varies.

36.     Upon information and belief, AUC admitted more than 200 students in January 2022, 150 students during the May 2022 semester, and more than 300 students in the fall of 2022, with similar enrollments in other semesters for an estimated annual student enrollment of more than 600 new students matriculating annually.

37.     Tuition and housing at AUC for the basic medical sciences curriculum is more than $33,000 per semester.

38.     Covista exercises control over AUC through its senior executives and employees and provides administrative assistance and oversight.  Employees for AUC often perform tasks for both Covista's AUC and Ross University.

39.     AUC conditionally admits students, like Plaintiffs Shields and Zaman, subject to their attendance and successful completion of the Medical Education Readiness Program ("MERP"), which it administers from the Southern District of Florida.

40.     AUC orchestrated a false marketing scheme to induce students—including Plaintiffs and the members of the Class—to enroll and remain in AUC's M.D. program, which is controlled by Covista, by misleading students about the nature of the program, the Comp requirement, and the success of the students on the Step 1 test.

41.     Defendants claimed that "AUC School of Medicine's curriculum is designed to prepare students to succeed on all parts of the USMLE."

42.     Defendants heavily promoted a 92% to a 96% first-time passage rate on the USMLE Step 1 exam. They touted these results on AUC's website, social media pages, online advertisements, and in direct communications with potential students.

43.     AUC has consistently and repeatedly marketed its basic sciences program as "successful" and touts that it successfully prepares students to pass the USMLE Step 1.  This includes making USMLE Step 1 passage rate representations in an Acceptance Packet brochure which AUC sends to admitted students, such as Plaintiffs Shields and Zaman, who are deciding whether to enroll, and in other marketing material AUC publishes.  For example, AUC made the following statements:

- "In 2017, 96 percent of AUC students passed Step 1… on the first attempt" and the "five-year cumulative first-time pass rate for the USMLE Step 1 exam is 94 percent"[2]
- "In 2018, 94.63 percent of AUC students passed Step 1 … on the first attempt" and the "five-year cumulative first-time pass rate for the USMLE Step 1 exam is 93.2%[3]"
- "The first-time USMLE Step 1 pass rate for AUC in 2017 was 96%"[4]
- "The first-time USMLE Step 1 pass rate for AUC in 2018 was 95%"[5]
- "The first-time USMLE Step 1 pass rate for AUC in 2019 was 94%"[6]
- "The first-time USMLE Step 1 pass rate for AUC in 2020 was 93%"[7]
- "The first-time USMLE Step 1 pass rate for AUC in 2021 was 84%"[8]

---

[2] In content it copyrighted in 2019, AUC published this statistic on its website, www.aucmed.edu, under a title "Facts & Statistics on AUC's Medical School" and again under a title "Get to Know Our Medical School, We're 6900+ graduates strong: A Leading Caribbean Medical School."

[3] AUC published this statistic on its website, www.aucmed.edu, and it was available for review on March 31, 2020 under a title "A US-Modeled Doctor of Medicine Program: AUC School of Medicine Academic Outcomes."

[4] AUC published this statistic in its 2018-2019 Acceptance Packet.

[5] AUC published this statistic in its 2019-2020 Acceptance Packet.

[6] AUC published this statistic in its 2020-2021 Acceptance Packet.

[7] AUC published this statistic in its 2022-2023 Acceptance Packet.

[8] AUC published this statistic on its website, www.aucmed.edu, under a title "Are Caribbean Medical Schools Good? dated March 20, 2025.  AUC also published this statistic in its 2024 Acceptance Packet.

- "81% Step 1 Pass Rate … USMLE 1st-time Pass Rate for Step 1 2020-2024"[9]
- "The AUC medical school curriculum [is] designed to prepare students to succeed on … important exams"
- "AUC students five-year cumulative first-time pass rate for the USMLE Step 1 exam is 92.4% from 2017-2021"
- AUC offers a "US Modeled doctor of medicine program"
- AUC's "program offers rigorous academic experience designed to prepare students to succeed on all parts of the USMLE" and
- AUC provides "expert faculty and small class sizes"

44.     The advertised USMLE Step 1 passage rate AUC promoted was a significant factor in leading Plaintiffs Shields and Zaman to identify AUC as a medical school to which they would apply.

45.     AUC's 2020-2021 Acceptance Packet, sent to and reviewed by Plaintiffs Shields and Zaman, and other admitted students, has a section entitled "Know Before You Go: Fact Sheet" in which AUC makes certain claims, including as depicted below:



46.     Before enrolling at AUC, Shields and Zaman each received and reviewed the 2020–2021 Acceptance Packet, which included AUC's representation that 94% of its students passed

---

[9] As of January 1, 2026, AUC published this statistic on its website, www.aucmed.edu, under a title "AUC Helps You Achieve Excellence."

USMLE Step 1 on their first attempt.

47.     In 2021, AUC advertised:[10]



48.     Covista has made similar claims touting the quality of the education AUC provides, such as publicly stating "AUC's … medical education program[] [is] comparable to the educational programs offered at U.S. medical schools as evidenced by student performance on the U.S. Medical Licensing Examination ('USMLE') tests." [11]

49.     Covista has also made representations about AUC's students and their USMLE Step 1 passage rate. For example, Covista publicly made the following claims:

- "AUC students achieved a 95 and 94% first-time pass rate on the USMLE Step 1 exam in 2018 and 2019, respectively" [12]

- "AUC students achieved a 94 and 93% first-time pass rate on the USMLE Step 1 exam in 2019 and 2020, respectively" [13]

- "AUC students achieved a 93% and 84% first-time pass rate on the USMLE Step 1 exam in 2020 and 2021, respectively" [14]

---

[10] AUC Marketing Brochure "Preparing Tomorrow's Physicians for Every Community" 2021 at p. 23.
[11] 2023 Adtalem Global Education Inc. Annual Report (Covista's predecessor) Form 10-K.
[12] 2020 Adtalem Global Education Inc. Annual Report (Covista's predecessor) Form 10-K.
[13] 2021 Adtalem Global Education Inc. Annual Report (Covista's predecessor) Form 10-K.
[14] 2022 Adtalem Global Education Inc. Annual Report (Covista's predecessor) Form 10-K.

- "AUC students achieved an 84% and 77% first-time pass rate on the USMLE Step 1 exam in 2021 and 2022, respectively" [15]

50.    In truth, however, AUC's success rate is extremely low, with very few students successfully completing the basic sciences curriculum and even fewer students given an opportunity to take the USMLE Step 1 even if they successfully complete the basic science courses.

51.    Based on AUC's consumer reports to the United States Government for the period of 2019 to 2023, only an average of 138 students per year graduate from AUC's medical program over the course of the three separate semesters.  This information is omitted from AUC's marketing materials and can only be found by researching government data.

52.    Even if prospective and current students knew to research this government data, they still would not learn AUC's attrition rate prior to enrollment.  AUC does not disclose the number of students who enroll in the consumer report documents so prospective and current students have no way of calculating AUC's high attrition rate.  Current students only start to become generally aware of the attrition rate anecdotally as they notice that students from previous semesters have left the program.

53.    Without knowing AUC's high attrition rate (as well as the significant number of students forced to retake courses), prospective and current students cannot contextualize AUC's highly misleading USMLE passage rate.

54.    For comparison, United States medical schools have a twenty-year average attrition rate of 3.1% and average overall graduation rate of 96.1%.[16]

55.    In making representations to prospective students and Class members, AUC

---

[15] 2023 Adtalem Global Education Inc. Annual Report (Covista's predecessor) Form 10-K.
[16] *See* AAMC October 2024 Snapshot at https://www.aamc.org/media/48526/download.

deceptively marketed an inflated USMLE passage rates and failed to disclose its high attrition rate. These facts are material to prospective students' decision to enroll and remain enrolled at AUC as evidenced by, *inter alia*, AUC's own marketing.

56. AUC's true success rate is unknown because AUC omits this information from its marketing materials. The failure of the curriculum only becomes evident to students anecdotally as they see their class sizes shrink each semester and/or when they are told by AUC that they will never be permitted to take the USMLE based upon unpublished rules.

57. Neither Shields nor Zaman knew before enrolling that only a fraction of entering AUC students ultimately became eligible to sit for Step 1, that passing Comp at a required threshold operated as a prerequisite to Step 1 eligibility, or that students who failed to satisfy that requirement could be required to purchase and repeat courses. Those facts were not disclosed in the Acceptance Packet, AUC's marketing materials, or the Student Handbook provided to Plaintiffs and could not be determined from the information AUC made publicly available.

58. One of the undisclosed rules is that AUC students must take and pass a comprehensive basic sciences exam it refers to as "Comprehensive Basic Medical Sciences Exam" (referred to as "Comp") which AUC administers to students after they have successfully passed all five of AUC's individual basic sciences courses. Defendants implemented "Comp" as a precondition to taking the USMLE exams.

59. Comp serves an undisclosed gatekeeping function for AUC. Students who do not pass Comp cannot sit for the USMLE Step 1. As a result, students who do not pass Comp must either retake courses at AUC, which costs students money and profits AUC, or drop out of AUC, rendering students' payments worthless. Comp also serves to artificially inflate AUC's USMLE passage rate by ensuring that only students who pass Comp, which is basically a Step 1 pre-test,

13

can sit for the actual Step 1 test, thereby deceptively luring in new prospective students.

60.     AUC fails to disclose this requirement to prospective students, including Plaintiffs Shields and Zaman, in its marketing materials or Student Handbook.  Instead, AUC stated in its Student Handbook the only qualification to take the USMLE Step 1 was that a student be "officially enrolled."

**ECFMG CERTIFICATION**

The ECFMG is the agency that registers foreign medical students for the purpose of taking the USMLE Steps 1–3. Passing USMLE Steps 1–3 is a requirement for licensure in the United States. To qualify to sit for the USMLE exams, students must be certified by AUC as "officially enrolled" (with exception of the USMLE Step 3).

61.     Elsewhere in its Student Handbook, AUC disclosed only that "[i]n addition to the requirements for ECFMG certification, the criteria for certification of an application to take the USMLE Step 1 is that a student must complete the Medical Sciences portion of the curriculum with an AUC cumulative GPA greater than or equal to 70 percent."  Defendants never disclosed that students must specifically pass Comp before being permitted to sit for the Step 1 exam.

62.     Although the Handbook referenced comprehensive examinations as part of the medical-sciences curriculum, it did not disclose that Comp was a separate requirement whose pass or fail score independently barred advancement regardless of a student's GPA or results in classes. It also did not disclose that students who failed to attain that score would be excluded from AUC's advertised Step 1 pass-rate calculation and could be required to pay for and repeat courses before receiving another opportunity to qualify.

63.     Merely identifying Comp as an examination administered during the curriculum did not disclose its separate gatekeeping function, the score required to pass it, the consequences of failing it, or its effect on the population included in AUC's advertised Step 1 pass rate.

64.     Covista exploits control over AUC to orchestrate and profit from this deceptive

scheme against medical doctorate students.  Many of the employees who market to prospective AUC students also handle tasks for Covista's Ross University. Covista requires its subsidiaries, including AUC, to review and conform all promotional, advertising, and marketing materials to policies and standards it sets for its subsidiaries.  These policies and standards include express guidance to its subsidiaries on how to present data-based claims.  Among other things, Covista directs its subsidiaries to use qualifying language when they use statistics in their promotional, advertising, and marketing materials.  The Step 1 passage rate claims described above are presented as data-based claims.

65.     Ms. Shields and Ms. Zaman were each conditionally admitted to AUC, subject to their respective successful completion of MERP.  Each was required to pay for and attend a months-long in person training in Broward County, co-administered by AUC and its sister school, the Covista-owned Ross University, and taught by faculty on behalf of both institutions.  During the MERP, recruiters and other representatives working in the Southern District of Florida on behalf of both institutions explained to the prospective students that upon successful completion of MERP, these students, including Plaintiffs, could choose to study medicine at either Ross University or AUC, which would effectively render their conditional admission effective at either Covista-owned institution.  Ms. Shields and Ms. Zaman successfully completed MERP.

66.     Covista describes MERP as a "15-week medical school preparatory program focused on enhancing the academic foundation of prospective AUC and RUSM [Ross University] students and providing them with the skills they need to be successful in medical school and to achieve their goals of becoming physicians. Upon successful completion of the MERP program students are guaranteed admission to AUC or RUSM."[17]  In 2019, the MERP Acceptance Packet

---

[17] 2024 Adtalem Global Education Inc. Annual Report (Covista's predecessor) Form 10-K.

specified that it would be held for US Students at DeVry University Campus, 2300 SW 145th Avenue, Miramar, Florida. DeVry University is Covista's predecessor.

67.     Ms. Shields enrolled at AUC in January 2020. She took the Comp exam in the Fall 2022 semester but was unable to pass. As a result, AUC forced her to repeat (and pay for) her Fall 2022 classes during the January 2023 semester before she could take the Comp exam again and sit for the USMLE Step 1.

68.     Ms. Zaman enrolled at AUC in January 2020. She took the Comp exam in the Fall 2022 semester but was unable to pass. As a result, AUC forced her to repeat (and pay for) her Fall 2022 classes during the January 2023 semester before she could take the Comp exam again and sit for the USMLE Step 1.

69.     During the class period, AUC and Covista have reaped millions of dollars a year in profits from this scheme.

70.     AUC has a history of misrepresenting the quality of the education it provides and loading its students up with student loan debt. In a class action filed against the United States Department of Education for student loan debt relief related to Borrower Defense to Repayment processing, the parties' joint preliminary approval motion explained that "because the Department has identified common evidence of institutional misconduct by the schools, programs, and school groups identified in Exhibit C [including AUC] . . ., it has determined that every Class Member whose Relevant Loan Debt is associated with those schools should be provided presumptive relief under the settlement due to strong indicia regarding substantial misconduct by the listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools." *Sweet v. Cardona*, Case 3:19-cv-03674-WHA (N.D. Cal.), Prelim. Approval. Mot. at 17-18 (Doc. No. 246); *see also* Doc. 246-1 at 38 (Exhibit C, listing

16

American University of the Caribbean).

71.     Defendants' scheme is not new.  A United States Senate committee, in its review of for-profit educational institutions (including Covista's predecessor DeVry University), looked into practices over several decades, where hundreds of thousands of students borrowed federal student loans to attend various for-profit institutions, including ITT, Corinthian Colleges, Inc., Capella University, DeVry Inc., and more. These schools promised quality training and high-paying careers. Under the Department's watch, the companies actually delivered worthless products that left students ill equipped to find jobs in their course of study and saddled them with thousands of dollars in debt, damaged credit, and depleted access to federal student aid. *See* Staff of S. Health, Education, Labor, and Pensions Comm., 112th Cong., For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success at pp. 3-8 (2012), available at https://perma.cc/37F4-Q2QC (HELP Report).

## CLASS ACTION ALLEGATIONS

72.     Plaintiffs bring this action against Defendants pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all other persons similarly situated.  Plaintiffs seek to represent the following Class:

Class

All persons who, between 2018 and the present, enrolled at AUC and did not pass Comp on their first try.  Excluded from the Class are (a) Covista, AUC, and their principals, officers, directors, and employees and (b) any governmental entity.

73.     Plaintiff Zaman seeks to represent the following Florida Class:

All persons who, between 2018 and the present, enrolled at AUC from Florida and did not pass Comp on their first try.  Excluded from the Class are (a) Covista, AUC, and their principals, officers, directors, and employees and (b) any governmental entity.

17

## NUMEROSITY

74.     The members of the Class and the Florida Class consists of thousands of individuals and joinder of all Class and Florida Class members in a single action is impracticable.

75.     The names and addresses of all Class and Florida Class members can be identified in the business records maintained by Defendants.  The precise number of Class and Florida Class members will be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint, and it is impractical for each to bring suit individually.  Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

## COMMONALITY

76.     There are questions of law and fact that are common to the claims of Plaintiffs and the Class and Florida Class members' claims.  These common questions predominate over any questions that are particular to any individual Class and Florida Class member.  Among such common questions of law and fact are the following:

      a.     How many students matriculating at AUC during the Class and Florida Class Period were not permitted to take the USMLE Step 1 because they did not pass Comp;

      b.     Whether AUC deceptively inflated its students' USMLE Step 1 passage rate in its marketing to prospective students;

      c.     Whether Comp was a deceptively undisclosed requirement for students to sit for the USMLE Step 1 exam;

      d.     Whether AUC used the Comp to inflate its students' USMLE Step 1 passage rate; and

      e.     Whether AUC's representations about its students' USMLE Step 1 passage

rate would deceive an objective consumer.

## TYPICALITY

77.     Plaintiffs' claims are typical of the claims of the Class and Florida Class because of the similarity, uniformity, and common purpose of Defendants' unlawful conduct.  Each Class and Florida Class member has sustained damage as a result of Defendants' wrongful conduct in the same manner as Plaintiffs – that is, each Class and Florida Class member paid for a medical education that was deceptively advertised by Defendants to allow the overwhelming majority of students to pass the USMLE Step 1 after two years of coursework.

## ADEQUACY OF REPRESENTATION

78.     Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.  Similarly, Plaintiff Zaman is an adequate representative of the Florida Class and will fairly and adequately protect the interest of the Florida Class.  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them.  There is no hostility between Plaintiffs and the unnamed Class and Florida Class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

79.     To prosecute this case, Plaintiffs have chosen the law firms of Buckner & Miles, P.A., and Dolan Dobrinsky Rosenblum Bluestein LLP.  These firms are experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

## LEGAL CLAIMS

### COUNT I:
### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (For Both Nationwide and Florida Classes)

80.     Plaintiffs Shields and Zaman repeat and re-allege the allegations contained in paragraphs 1 through 79 above, as if fully set forth herein.

81.      This Count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

82.     At all times material, Plaintiffs Shields and Zaman, and the members of the Class and Florida Class were consumers within the meaning of Section 501.203, Fla. Stat., and are entitled to relief under FDUTPA in accordance with Section 501.211, Fla. Stat.

83.     At all times material, Defendants conducted trade and commerce within the meaning of Section 501.203, Fla. Stat.

84.     Defendants have engaged in unlawful schemes and courses of conduct through one or more of the unfair and deceptive acts and practices alleged above.

85.     The concealment and omissions of material facts and misrepresentations and deceptions alleged in the preceding paragraphs occurred in connection with Defendants' trade and commerce in Florida.

86.     Defendants' unfair and deceptive acts and practices violated FDUTPA, Sections 501.201 and 501.211, Fla. Stat.

87.     As a direct and proximate result of Defendants' FDUTPA violations, Plaintiffs and the members of the Class and Florida Class have been damaged in an amount to be proven at trial.

88.     Plaintiffs and the Class and Florida Class are entitled to actual damages, attorneys' fees and costs, and all other remedies available under FDUTPA.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated individuals, demands judgment against Defendants for compensatory damages, pre- and post-judgment interest, attorneys' fees, costs incurred in bringing this action, and any other relief the Court deems just and proper.

## Jury Trial Demanded

Plaintiffs hereby demand trial by jury for all issues so triable.

Dated:  August 4, 2026.

Respectfully submitted,

BUCKNER + MILES
2020 Salzedo Street, Ste. 302
Coral Gables, Florida 33134
Tel.: (305) 964-8003
Fax: (786) 523-0585

/s/Seth Miles, Esq.
**Seth Miles, Esq.**
Fla. Bar No. 385530
seth@bucknermiles.com
**David M. Buckner, Esq.**
Fla. Bar No. 60550
david@bucknermiles.com
**Brett E. von Borke, Esq.**
Fla. Bar No. 0044802
vonborke@bucknermiles.com
**Jonathan E. Kobrinski, Esq.**
Fla. Bar No. 1029120
jkobrinski@bucknermiles.com

and

DOLAN DOBRINSKY ROSENBLUM BLUESTEIN
2665 S. Bayshore Drive, Suite 603
Miami, Florida 33133
Tel.:. (305) 371-2692
Fax: (305) 371-2691

**Manuel L. Dobrinsky, Esq.**
Fla Bar No. 775525
MDobrinsky@DDRLawyers.com
**Eric Bluestein, Esq.**
Fla Bar No. 58240
EBluestein@DDRLawyers.com
**Laura Navia, Esq.**
Fla Bar No. 1058283
LNavia@DDRLawyers.com

*Counsel for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 4, 2026, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.

/s/Seth Miles, Esq.
Seth Miles, Esq.,  FBN 385530
seth@bucknermiles.com