**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:26-cv-20504-DAMIAN/D'ANGELO**

NALEXUS SHIELDS and AYSHAH ZAMAN, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

COVISTA INC., and COVISTA GLOBAL HEALTH, INC., d/b/a AMERICAN UNIVERSITY OF THE CARIBBEAN SCHOOL OF MEDICINE,

Defendants.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, INCORPORATED MEMORANDUM OF LAW, AND REQUEST FOR HEARING**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND ....................................................................................3

A. AUC Has A Rigorous Medical School Program ........................................3

B. AUC Disclosed The USMLE Step 1 Prerequisites Before Plaintiffs Enrolled ........................................................................................4

C. The Named Plaintiffs Learned Of The Prerequisites To Sit For The USMLE Step 1 Before January 26, 2022 And Chose To Continue Enrolling At AUC ........................................................................5

**1.** Plaintiff Shields Knew The USMLE Step 1 Prerequisites Before January 26, 2022 ........................................................5

**2.** Plaintiff Shields Purchased Courses After January 26, 2022 Knowing The Prerequisites To Sit For The USMLE Step 1 ........................6

**3.** Plaintiff Zaman Knew The USMLE Step 1 Prerequisites Before January 26, 2022 ........................................................8

**4.** Plaintiff Zaman Purchased Courses After January 26, 2022 Knowing The Prerequisites To Sit For The USMLE Step 1 ........................8

PROCEDURAL BACKGROUND ............................................................................9

LEGAL STANDARD ..............................................................................................11

ARGUMENT ..........................................................................................................12

I. THERE IS NO GENUINE DISPUTE OF MATERIAL FACT THAT PLAINTIFFS' CLAIMS ARE TIME-BARRED ..........................................12

A. The Named Plaintiffs First Purchased Their AUC Education Six Years Ago ..........................................................................................12

B. The Named Plaintiffs Lack Standing To Pursue A FDUTPA Claim For Post-January 2022 Purchases ...............................................13

II. WITHOUT A NAMED PLAINTIFF WHO HAS AN ACTIONABLE FDUTPA CLAIM, THE COURT LACKS JURISDICTION OVER THE PUTATIVE CLASS MEMBERS' CLAIM ................................................15

CONCLUSION ........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Chapman v. AI Transp.*,
229 F.3d 1012 (11th Cir. 2000) .......... 11

*Ellerbee v. Ethicon, Inc.*,
2020 WL 5230595 (M.D. Fla. Sept. 2, 2020) .......... 13

*Giuliani v. Send Enters., LLC*,
2024 WL 5664721 (S.D. Fla. Dec. 31, 2024) (Damian, J.) .......... 12

*Just. v. Rheem Mfg. Co.*,
2014 WL 12845414 (S.D. Fla. Aug. 22, 2014) .......... 12

*Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa*,
505 F. App'x 899 (11th Cir. 2013) .......... 12, 13

*Millennium Commc'ns & Fulfillment, Inc. v. Off. of Att'y Gen.*,
761 So. 2d 1256 (Fla. 3d DCA 2000) .......... 13, 15

*Prado-Steiman ex rel. Prado v. Bush*,
221 F.3d 1266 (11th Cir. 2000) .......... 2, 15

*Prohias v. Pfizer, Inc.*,
485 F. Supp. 2d 1329 (S.D. Fla. 2007) .......... 14

*Ramirez v. Kraft Heinz Foods Co.*,
684 F. Supp. 3d 1253 (S.D. Fla. 2023) .......... 13, 15

*S. Motor Co. of Dade Cnty. v. Doktorczyk*,
957 So. 2d 1215 (Fla. 3d Dist. Ct. App. 2007) .......... 12

*Simmons v. Ford Motor Co.*,
2023 WL 5978081 (S.D. Fla. Sept. 13, 2023) .......... 12, 13

*Smith v. Wm. Wrigley Jr. Co.*,
663 F. Supp. 2d 1336 (S.D. Fla. 2009) .......... 14

*Sweeney v. Kimberly-Clark Corp.*,
2016 WL 727173 (M.D. Fla. Feb. 22, 2016) .......... 13, 14, 15

*Vallina v. Mansiana Ocean Residences LLC*,
2011 WL 11674441 (S.D. Fla. June 17, 2011) .......... 15

*Weitz v. Genting New World LLC*,
661 F. Supp. 3d 1208 (S.D. Fla. 2023) ........................................................................ 15

**STATUTES**

Fla. Stat. § 95.11(3)(f)................................................................................................... 12

**RULES**

Fed. R. Civ. P. 56(a) ..................................................................................................... 11

# INTRODUCTION

Plaintiffs filed suit years too late. Plaintiffs' Florida Deceptive & Unfair Trade Practices Act ("FDUTPA") claim—the lone claim they bring—is subject to a four-year statute of limitations. Named Plaintiffs Nalexus Shields and Ayshah Zaman (together, "Named Plaintiffs") each purchased their medical school education in January 2020, but they did not file their Complaint until January 26, 2026. Their FDUTPA claim is time-barred. And while the Named Plaintiffs purchased certain courses within the limitations period, they did so knowing of Defendants' allegedly deceptive conduct, which strips them of standing for a FDUTPA claim based on such purchases. Without a Named Plaintiff with an actionable FDUTPA claim, the Court lacks jurisdiction over the putative class members' claim. Summary judgment is appropriate.

Plaintiffs' case rests on the premise that prospective medical students were duped into enrolling at American University of the Caribbean School of Medicine ("AUC") because AUC promoted the high rates at which its students pass "Step 1" of a multistep licensing exam—the United States Medical Licensing Examination ("USMLE"). According to Plaintiffs, AUC misled prospective students by failing to disclose the prerequisites to sit for the USMLE—specifically, that students must pass certain courses and exams before taking the USMLE Step 1. Setting aside the factual inaccuracies underpinning the core of Plaintiffs' case,[1] the FDUTPA claim is untimely. FDUTPA claims accrue when the plaintiff purchased the product at issue. Here, that product is a medical school education. Both Named Plaintiffs purchased that education in January 2020, and they sued Defendants six years later. That is too late.

Even assuming the relevant product is an individual course—which makes no sense considering AUC does not sell one-off courses—the Named Plaintiffs still do not have an actionable FDUTPA claim. As to any course purchased within the limitations period—*i.e.*, after January 26, 2022—there is no credible dispute that both Named Plaintiffs knew of the requirements to sit for the USMLE Step 1 at the time they purchased that course. Consequently, they could not have been misled during the limitations period, undermining their standing to bring

---

[1] While Defendants dispute many of the allegations in the Amended Complaint, this motion focuses on the undisputed material facts that support dismissal of the entire case on timeliness grounds. For the avoidance of doubt, however, Plaintiffs' case fails on the merits because AUC accurately disclosed its USMLE Step 1 pass rate and the requirements to take that test. *See infra* at 6-8. The case thus would fail even if a named plaintiff had a timely claim.

a timely FDUTPA claim. By January 26, 2022, both Named Plaintiffs acknowledged receipt of a Student Handbook that told students they must pass certain courses and exams—including the "Comp" exam—before they could sit for the USMLE Step 1, and that failure to do so may require students to repeat courses or face academic dismissal. Also by January 26, 2022, Plaintiff Shields had [redacted]. She also swore under penalty of perjury that she learned in *September 2020* that students could be "dismissed for failing the [C]omp exam" and they "never even g[e]t the chance to take the USMLE Step 1." As for Plaintiff Zaman, she had [redacted] before January 26, 2022. Accordingly, while the Named Plaintiffs purchased courses after January 26, 2022, those purchases were made with a clear-eyed understanding of AUC's course requirements. The Named Plaintiffs thus lack standing to bring a FDUTPA claim for purchases within the limitations period.

Without an actionable FDUTPA claim, the Named Plaintiffs cannot represent their putative classes. A putative class action may proceed only if at least one named plaintiff has standing to pursue each class claim. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class."). Here, the Named Plaintiffs lack standing to pursue a timely FDUTPA claim premised on AUC's purportedly misleading USMLE pass rates. Because absent class members cannot pursue the FDUTPA claim on the Named Plaintiffs' behalf, there is no live controversy for the Court to resolve. Summary judgment on the Named Plaintiffs' individual FDUTPA claim thus disposes of the entire action.

With no genuine dispute regarding the untimeliness of the Named Plaintiffs' FDUTPA claim, Defendants move for summary judgment months before the close of fact discovery. At the hearing on Defendants' Motion to Dismiss, the Court stated that the timeliness issue raised questions of fact that could not be resolved at the pleading stage. That discovery gap has been filled. The limited discovery taken to date confirms that there is no credible dispute about when the Named Plaintiffs enrolled, when they learned of the prerequisites to sit for the USMLE Step 1 exam, and when they filed suit. Those core facts are fatal to Plaintiffs' case, and neither deposition testimony nor further written discovery can change them. Given the stale nature of Plaintiffs' FDUTPA claim, early adjudication of the case will save the Court and the parties resources and

costs litigating fact discovery, expert discovery, and class certification. There is no need for the case to proceed further.

## FACTUAL BACKGROUND

### A. AUC Has A Rigorous Medical School Program

AUC provides a medical doctoral program on the island of Sint Maarten. Statement of Material Facts In Support of Defendants' Motion for Summary Judgment ("SMF") ¶¶ 1-2.[2] It trains aspiring doctors for practice in the United States and around the world. SMF ¶ 3. AUC's mission is to "expand[] access to medical careers by empowering aspiring physicians to reach their full potential and preparing them to serve globally with excellence, compassion, and social accountability." *Id.* As Plaintiffs acknowledge, Caribbean medical schools like AUC "provide students an alternative pathway to becoming a doctor." ECF No. 54 ¶ 3. But expanding access does not mean lowering standards; AUC's curriculum is designed to ensure that students advance only after demonstrating the knowledge required to treat patients. SMF ¶ 6.

AUC's medical doctoral program is divided into two parts: (1) Medical Sciences and (2) Clinical Sciences. SMF ¶ 7. One purpose of the Medical Sciences phase is to prepare students to take and pass the USMLE Step 1. SMF ¶ 9. Because failing the USMLE Step 1 can affect students' eligibility for licensure in the United States, AUC sequences its courses to best equip its students to pass the exam on their first try. SMF ¶¶ 12-13. To that end, the final semester of the Medical Sciences phase consists of the Introduction to Clinical Medicine VI ("ICM VI") course,[3] which offers students multiple opportunities to take and pass a "Comp" exam that is intended to simulate the USMLE Step 1. SMF ¶¶ 14-17. If students cannot pass the Comp, they cannot pass ICM VI. SMF ¶ 15. AUC requires students to pass each Medical Sciences course, including ICM VI, before sitting for the USMLE Step 1 and proceeding to Clinical Sciences. SMF ¶¶ 11, 18-19.

The Clinical Sciences phase consists of five semesters of clinical rotations at affiliated teaching hospitals in the United States and abroad. SMF ¶ 20. This clinical portion culminates in

---

[2] Consistent with the Court's Pretrial Order, ECF No. 29, Defendants intend to file a Joint Statement of Undisputed Fact with their reply brief.

[3] The title of this course has changed over time, but for convenience and clarity, Defendants use the title when Named Plaintiffs first enrolled at AUC.

students taking "Step 2" of the USMLE. SMF ¶ 21. Students who complete both phases of the curriculum and pass both steps of the USMLE graduate with a medical degree. SMF ¶ 22.

**B. AUC Disclosed The USMLE Step 1 Prerequisites Before Plaintiffs Enrolled**

AUC discloses the requirements to sit for the USMLE Step 1 to students before they set foot on the island. AUC's Student Handbooks are publicly available online and AUC sends them to its incoming students. SMF ¶¶ 23-24. Indeed, both Named Plaintiffs executed an "Acknowledgement of Receipt" confirming that they received the January 2020 Student Handbook, which AUC emailed to them on January 5, 2020, before they started their first course. SMF ¶¶ 24, 31-32, 66-67. That Handbook articulated the prerequisites for students to take the USMLE Step 1. SMF ¶¶ 25-27. It provided that students sit for the USMLE Step 1 only "[a]fter completing Medical Sciences." SMF ¶ 25. The Handbook specifies that the Medical Sciences curriculum, in turn, consists of over 20 courses, including ICM VI, taken across five semesters:

| SEMESTER 5 | CREDIT HRS |
|---|---|
| Behavioral Science | 5 |
| ICM V | 6 |
| ICM VI | 3 |
| Medical Ethics | 1 |

*(Includes National Board of Medical Examiners® (NBME) Subject and Comprehensive Exams)*

SMF ¶ 26. As stated in the Handbook, ICM VI culminates in the "Comp" exam:

> Students are provided with several resources to test their knowledge base. At the start of the course, each student will be provided with a self-assessment exam not unlike the NBME CBSE, which allows for in-depth analysis of their strengths and weaknesses. Results of this CBSSA exam will be used for one-on-one student/faculty discussions and advising sessions tailor-made for each individual student. Regular USMLE question and answer practice sessions will occur throughout the course. The course will culminate with two NBME Comprehensive Basic Science Exams (i.e., Comp 1 and Comp 2) and a full-length USMLE Step 1 simulation exam.: Physiology and Pathology and two USMLE CBSE in the last three weeks of the course. In addition, a simulated USMLE Step 1 exam will be offered so students can get a good idea of their equivalent USMLE Step 1 score.

SMF ¶ 27 (emphasis added).

The Handbook also warns that "multiple attempts on any USMLE examination may have long-term consequences with respect to eligibility for licensure in certain states." SMF ¶ 12. The Comp exam thus is used to help prepare AUC students to pass the USMLE Step 1 on their first attempt. SMF ¶ 16.

The Handbook also makes clear the consequences of failing ICM VI and/or the Comp exam. SMF ¶¶ 28-29. In a section titled "Academic Dismissal," the January 2020 Student Handbook stated:

> - If a student fails both the Comprehensive Exam I (Comp 1) and the Comprehensive Exam II (Comp 2) during the first time he/she takes the ICM 6 course, he/she will receive an (I) grade for the course, be placed on an LOA during the next semester, be required to take a review course, and then sit for the Comprehensive Exam a third time (Comp 3). If a student passes Comp 3, their ICM 6 grade will be updated to a (P). If he/she fails Comp 3, their ICM 6 grade will be changed to an (F) and the student will be dismissed from AUC with the right to appeal. If the student successfully appeals his/her dismissal, he/she must return to the Medical Sciences campus to register for and repeat ICM 6. Failure to pass the Comprehensive Exam within two attempts to be completed during this appeal term when they are taking ICM 6 for the second time will result in the permanent dismissal of the student without the right to appeal.

*Id.* The January 2020 Student Handbook thus explained that failing the Comp exam three times will result in "dismissal from AUC with the right to appeal." *Id.*

AUC's marketing materials likewise disclose that not every AUC student sits for the USMLE Step 1. Indeed, an AUC brochure quoted in Plaintiffs' original Complaint—but, tellingly, deleted from their Amended Complaint—explained how AUC calculated its pass rate: "the number of students passing the USMLE Step 1 exam on the first attempt divided by the number of students whose first attempt was in 2017-2021." ECF No. 1 ¶ 39. That ad also stated that "to sit for the USMLE Step 1 exam students must successfully complete the Medical Sciences curriculum." *Id.* AUC thus disclosed both how it calculates its pass rate and the students who are included in it.

### C. The Named Plaintiffs Learned Of The Prerequisites To Sit For The USMLE Step 1 Before January 26, 2022 And Chose To Continue Enrolling At AUC

#### 1. <u>Plaintiff Shields Knew The USMLE Step 1 Prerequisites Before January 26, 2022</u>

Even without the Handbook, Plaintiff Shields knew soon after she started at AUC that she had to pass each of her Medical Sciences courses before she could sit for the USMLE Step 1. On January 14, 2020, days after she started her first semester, Plaintiff Shields [redacted]. SMF ¶¶ 32-33. Then, during her first semester, Plaintiff Shields [redacted]. SMF ¶ 34. To [redacted] Plaintiff Shields [redacted] in May 2020. SMF ¶ 35. [redacted], SMF ¶ 35, but Plaintiff Shields took [redacted]

November 2020. SMF ¶ 39. [redacted], SMF ¶ 40, [redacted]. SMF ¶¶ 41-42. [redacted], SMF ¶ 42, [redacted]. SMF ¶ 43. [redacted] SMF ¶ 44. By January 26, 2022, therefore, Plaintiff Shields knew that [redacted] before progressing to the USMLE Step 1. SMF ¶ 47.

Before January 2022, Plaintiff Shields also knew that failing the Comp exam in particular would prevent her from sitting for the USMLE Step 1. Under penalty of perjury, Plaintiff Shields stated in a Borrower Defense to Repayment ("BDR") application to the Department of Education that "in her third semester" she "first learned that many students were dismissed for failing the comp exam. They never even got the chance to take the USMLE Step 1." SMF ¶¶ 37-38. Plaintiff Shields' third semester was in *September 2020*. SMF ¶ 36.

**2.** Plaintiff Shields Purchased Courses After January 26, 2022 Knowing The Prerequisites To Sit For The USMLE Step 1

[redacted], knowing that she would have to take and pass ICM VI—and the Comp—before she could sit for the USMLE Step 1. SMF ¶¶ 44-48, 103.

She [redacted]. SMF ¶ 49. The syllabus for that course outlined the course requirements:

> To pass ICM 6, students must achieve the following:
> 1. Pass one of the Comp exams (criteria above)
> 2. Complete **ALL** posted weekly UWorld quizzes and earn a minimum cumulative score of 40%. Must enter scores in appropriate Canvas Assignment.
> 3. Participate in the Mandatory Orientation to Clinical Sciences in which you fill out your ECFMG application to apply for a Step 1 permit.
> 4. Participate in the weekly small group discussions until passing a CBSE (Comp) exam.
> 5. Write the NBME Comprehensive Basic Science Examination (CBSE) Comp 3,

SMF ¶ 51. The syllabus also reiterated the consequences of failing:

> **Failing ICM 6**
>
> Students who fail ICM 6 will face the same consequences as for failing any Medical Science course at AUC. This means that most students who fail ICM 6 will not be dismissed but will retake ICM 6 the following semester. However, an automatic dismissal will be triggered for students in the following situations:
>
> (a) Failure of 17 or more credit hours in the Medical Sciences curriculum.
> (b) Failure to meet the terms of an appeal or academic plan.
> (c) Students who fail ICM 6 for the second time. This includes students who fail ICM 6 for the first time and upon subsequent enrollment in the next semester are unable to pass the repeated course for any reason, including but not limited to, an approved voluntary leave of absence.

SMF ¶ 52. Plaintiff Shields [redacted]. SMF ¶ 54. [redacted]. SMF ¶¶ 55-57. [redacted]. SMF ¶ 58.

On April 1, 2025—a few days after filing her BDR application complaining about AUC—Plaintiff Shields reapplied to AUC. SMF ¶¶ 37, 59. [redacted]” SMF ¶ 60[redacted]. SMF ¶ 61. Consistent with the Handbook's policy requiring the dismissal of students who fail too many courses, however, AUC denied Plaintiff Shields' readmission request. SMF ¶ 62. Dissatisfied, Plaintiff Shields contacted AUC in May 2025, threatening legal action if she was not readmitted. SMF ¶ 63. AUC did not readmit her and Plaintiff Shields threatened legal action again. SMF ¶ 64. Eight months later, she sued Defendants. *See generally* ECF No. 1.

Plaintiff Shields' academic history is summarized below:



**3.** Plaintiff Zaman Knew The USMLE Step 1 Prerequisites Before January 26, 2022

As with Plaintiff Shields, even apart from the January 2020 Student Handbook, Plaintiff Zaman learned about the prerequisites for taking the USMLE Step 1 before January 26, 2022. Plaintiff Zaman [redacted] in May 2021. SMF ¶ 68. The May 2021 syllabus described ICM VI as a "USMLE Step 1 preparatory course" designed to "[m]easure a student's preparedness to take USMLE Step 1." SMF ¶ 70. It explained that to pass ICM VI, students must "[p]ass one of the four [Comp] Exams," SMF ¶ 71, and that "Students who fail ICM [VI] will be eligible for the same consequences as for failing any Medical Science course at AUC. This means that most students who fail ICM [VI] will not be dismissed but will retake ICM [VI] the following semester." SMF ¶ 72.

During the May 2021 semester, Plaintiff Zaman [redacted]. SMF ¶ 73. Accordingly, consistent with the syllabus (and the Handbook), Plaintiff Zaman [redacted]. SMF ¶ 75. Like the prior syllabus, the September 2021 syllabus explained that students who failed ICM VI may have to retake the course or be subject to academic dismissal. SMF ¶¶ 78-79. Plaintiff Zaman [redacted]. SMF ¶ 80. She then [redacted]. SMF ¶ 81.

By January 26, 2022, Plaintiff Zaman had [redacted]. SMF ¶ 82. She knew that she had to pass this course, and the Comp, before she could sit for the USMLE Step 1. SMF ¶ 104.

**4.** Plaintiff Zaman Purchased Courses After January 26, 2022 Knowing The Prerequisites To Sit For The USMLE Step 1

In January 2022, Plaintiff Zaman [redacted], knowing AUC's requirements for students to sit for the USMLE Step 1. SMF ¶¶ 83, 104. Like the syllabi that preceded it, the January 2022 syllabus reiterated that students must pass a Comp exam to pass ICM VI, and that failing it may result in repeat courses or academic dismissal. SMF ¶ 85. Before Plaintiff Zaman [redacted]. SMF ¶ 86.

In May 2022, Plaintiff [redacted]. SMF ¶ 87. At the start of that semester, she received a presentation that again made clear that students must pass the

Comp exam to pass ICM VI and sit for the USMLE Step 1. SMF ¶ 88. Plaintiff Zaman [redacted]. SMF ¶ 89.

[redacted]. SMF ¶ 90. [redacted]. SMF ¶ 91. In September 2022, [redacted]. SMF ¶¶ 92-94.

[redacted]. SMF ¶¶95-96. [redacted], SMF ¶ 97, and Plaintiff Zaman again [redacted]. SMF ¶ 98. AUC [redacted]. SMF ¶ 98. [redacted], SMF ¶ 99, and [redacted]. SMF ¶ 100.

Plaintiff Zaman's academic history is summarized below:




## PROCEDURAL BACKGROUND

On January 26, 2026, six years after first enrolling at AUC, Plaintiff Shields filed this lawsuit on behalf of herself and a putative class of AUC students who enrolled at AUC "between 2018 and the present" and failed the Comp exam on their first try. ECF No. 1. Plaintiff Shields brought two causes of action: (1) FDUTPA and (2) unjust enrichment. *See id.* ¶¶ 63-74. On March 31, 2026, Defendants timely moved to dismiss the Complaint, arguing, among other things, that the FDUTPA claim was untimely. *See* ECF No. 22 at 7-8.

On July 31, 2026, days before the hearing on Defendants' Motion to Dismiss, Plaintiff Shields moved for leave to file an amended complaint. *See* ECF No. 51. In relevant part, the amended pleading added Plaintiff Zaman as a Named Plaintiff; dropped the unjust enrichment claim; and added a proposed "Florida Class," which is the same as the previous class but limited to students who "enrolled at AUC from Florida." *Id.* ¶¶ 65, 68, 73.

On August 4, 2026, the Court held a hearing on Defendants' Motion to Dismiss and Plaintiffs' request for leave to amend. With respect to Defendants' motion, Defendants explained the FDUTPA claim is untimely because the clock started to run in January 2020 when the Named Plaintiffs first purchased the product at issue—their medical school education. August 4, 2026 Hr'g Tr. ("Hr'g Tr.") at 7:1-8:5. Alternatively, if the Court credited the argument that the product at issue is a specific course, and that the Named Plaintiffs purchased certain *courses* within the last four years, Defendants argued that the FDUTPA claim still fails. *Id.* at 16:1-18:5. For such purportedly "timely" purchases to support an actionable FDUTPA claim, the Named Plaintiffs had to have alleged that AUC continued to deceive them about the prerequisites for sitting for the USMLE Step 1 within the limitations period. *Id.* But, as Defendants noted, neither the Complaint nor the Amended Complaint alleged when the Named Plaintiffs learned of this supposedly deceptive conduct: "What they are not alleging is the date they learned of this requirement. If that's outside the statute of limitations period, [Y]our Honor, then they have a real timeliness issue." *Id.* at 17:10-13.

The Court acknowledged the "big gap" in Plaintiffs' pleading: "you are saying they didn't know before enrolling about this information. But you're not saying they didn't know before taking the comp or before January 2022." *Id.* at 30:20-31:8. The Court further recognized Defendants' concern about forging into a lengthy (and costly) discovery phase only to learn during a deposition that the Named Plaintiffs knew of the USMLE Step 1 prerequisites before the limitations period and warned Plaintiffs against "hiding the ball." *Id.* at 26:25-27:3.

In response, Plaintiffs stated "Okay. Maybe—I don't think that's going to happen"—*i.e.*, they did not believe that discovery would reveal that Named Plaintiffs knew about the purportedly deceptive conduct before January 26, 2022.[4] *Id.* at 27:4-5. Plaintiffs further claimed that the alleged deception was "not simply that the plaintiffs did not know there was this comp exam." *Id.* at 27:9-11. It was that AUC supposedly hid that students must "pass[] the comp with a score that

---

[4] That proved untrue. The day before the hearing, Plaintiffs produced Plaintiff Shields' BDR application, in which she swore under penalty of perjury that she learned in September 2020 that failing the Comp may prevent students from taking the USMLE Step 1. SMF ¶¶ 36-38. As for Plaintiff Zaman, the Amended Complaint alleged that she "took the Comp exam in the Fall 2022 semester but was unable to pass," ECF No. 54 ¶ 68, without *also* stating that [redacted]. SMF ¶¶ 73, 80, 82.

we don't disclose[5] . . . [a]nd, by the way, if you don't pass it, you get to either pay for another semester or you get to withdraw." *Id.* When the Court asked whether Plaintiffs' claim is that the deception "culminated in having to pay for this extra semester of school," counsel responded: "Well, that is our argument now." *Id.* at 33:7-12. Plaintiffs also stressed that the statute of limitations is "an affirmative defense," *id.* at 26:13-22, and that timeliness should be resolved through "a fact-based analysis," *id.* at 40:19-22.

Following significant argument, the Court granted Plaintiffs' request for leave to amend and denied Defendants' motion as moot, noting that "statute of limitations really is a summary judgment issue, or a fact-intensive issue." *Id.* at 39:7-9. At the same hearing, the Court granted the parties' joint motion to continue trial and extend pretrial deadlines, setting the summary judgment deadline for September 21, 2027. *See* ECF No. 55 at 2.

Defendants move for summary judgment 10 months before the deadline because discovery confirms that there is no genuine dispute that the Named Plaintiffs' FDUTPA claim is untimely. Nor is there a genuine dispute that the Named Plaintiffs lack standing to pursue a FDUTPA claim based on any course purchased within the limitations period. Without standing to pursue a class claim, neither Plaintiff Shields nor Plaintiff Zaman can represent the putative classes that they seek to represent. Accordingly, it is in the interest of judicial economy to resolve this case now, before the Court and the parties devote significant time and resources litigating a putative nationwide class action that is definitively time-barred.

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where, as here, "the movant shows that there is no genuine dispute as to any material fact." *Id.* "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

[5] The allegation that Defendants did not disclose the score needed to pass an exam offered during one of its courses appears nowhere in either the Complaint or Amended Complaint and therefore cannot form the basis for a claim against Defendants. *See generally* ECF Nos. 1 and 54.

there must be evidence on which the jury could reasonably find for the plaintiff." *Giuliani v. Send Enters., LLC*, 2024 WL 5664721, at *2 (S.D. Fla. Dec. 31, 2024) (Damian, J.) (citation omitted).

## ARGUMENT

### I. THERE IS NO GENUINE DISPUTE OF MATERIAL FACT THAT PLAINTIFFS' CLAIMS ARE TIME-BARRED

Summary judgment is appropriate because the applicable four-year statute of limitations bars the Named Plaintiffs' FDUTPA claim. *See* Fla. Stat. § 95.11(3)(f). The statute-of-limitations clock for FDUTPA claims "begins to run from the date of sale." *Simmons v. Ford Motor Co.*, 2023 WL 5978081, at *3 (S.D. Fla. Sept. 13, 2023) (citation omitted); *see also Just. v. Rheem Mfg. Co.*, 2014 WL 12845414, at *6 (S.D. Fla. Aug. 22, 2014) ("FDUTPA claims are subject to a four-year statute of limitations, which accrues on the date of the sale of the subject product."). And it is well settled that the discovery rule does not apply to FDUTPA claims. *See, e.g.*, *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa*, 505 F. App'x 899, 906 (11th Cir. 2013) (holding that the delayed discovery rule does not extend to FDUTPA claims).

Here, the "date of the sale of the subject product" is either the date when the Named Plaintiffs *first* purchased their medical school education, or the date when they purchased each separate course. Either way, the Named Plaintiffs do not have an actionable FDUTPA claim.

#### A. The Named Plaintiffs First Purchased Their AUC Education Six Years Ago

There is no genuine dispute that the "subject product" here is a medical school education, *Just.*, 2014 WL 12845414, at *6, and that the Named Plaintiffs purchased it six years ago. *See supra* at 3-5, 8.

The Named Plaintiffs each applied for admission to AUC's Doctor of Medicine program in the hope of becoming licensed doctors. SMF ¶¶ 30, 65. They did not apply to take individual, one-off courses. *Id.* Nor would that have made sense because AUC does not offer single courses as standalone products, SMF ¶ 4, and no single AUC course, on its own, qualifies a student to practice as a physician. SMF ¶¶ 5, 22. Rather, AUC offers a Doctor of Medicine program wherein students must complete the 21-course Medical Sciences curriculum in sequence before advancing to clinical rotations. SMF ¶¶ 5, 8, 18-19. The Named Plaintiffs, like all medical students, paid for their education over time, but that does not change the nature of the subject product, or the date when the Named Plaintiffs first purchased it. *See S. Motor Co. of Dade Cnty. v. Doktorczyk*, 957

So. 2d 1215, 1218 (Fla. 3d Dist. Ct. App. 2007) ("The payments made for such warranty would merely go to the amount of damages, but the cause of action accrued on the date of sale.").

The clock on the Named Plaintiffs' FDUTPA claim thus started to run in January 2020—when they first enrolled at AUC—and it expired in January 2024. *See supra* at 4-5, 8. But they did not file suit until January 26, 2026—six years after enrollment. Courts routinely grant summary judgment in similar circumstances where, as here, the undisputed purchase date of the subject product falls more than four years before filing. *See, e.g.*, *Marlborough Holdings*, 505 F. App'x at 906 (affirming summary judgment of FDUTPA claim "[b]ecause the limitations period expired long before Marlborough filed its FDUTPA claims"); *Simmons*, 2023 WL 5978081, at *3 (granting summary judgment on FDUTPA claims where plaintiffs bought the subject vehicles more than four years before they filed suit); *Ellerbee v. Ethicon, Inc.*, 2020 WL 5230595, at *5 (M.D. Fla. Sept. 2, 2020) (granting summary judgment on FDUTPA claim regarding medical devices purchased in 2006 because plaintiff sued nine years later and the limitations period "begins to run when the product is purchased").

**B. The Named Plaintiffs Lack Standing To Pursue A FDUTPA Claim For Post-January 2022 Purchases**

That the Named Plaintiffs purchased certain courses within the limitations period does not save their FDUTPA claim. To start, the theory is fiction because it changes the character of the subject product. In any case, the Named Plaintiffs lack standing for a FDUTPA claim propped up by a course purchased after January 26, 2022.

An actionable FDUTPA claim requires (1) a deceptive or unfair trade practice, (2) causation, and (3) actual damages. *See Millennium Commc'ns & Fulfillment, Inc. v. Off. of Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000). Once the consumer discovers the allegedly deceptive conduct, however, the alleged deception cannot have caused the consumer harm, so the plaintiff "lacks standing for her FDUTPA" claim. *Ramirez v. Kraft Heinz Foods Co.*, 684 F. Supp. 3d 1253, 1256-60 (S.D. Fla. 2023) ("Plaintiff continued to pay the alleged price premium knowing [the alleged deception]. . . . Therefore, Plaintiff has failed to demonstrate an injury and lacks standing for her FDUTPA and tag-along claims."). That is the case here.

*Sweeney v. Kimberly-Clark Corp.* is instructive. 2016 WL 727173 (M.D. Fla. Feb. 22, 2016). There, plaintiffs brought a putative class action alleging that manufacturers of "flushable wipes" violated FDUTPA because the wipes were not flushable, as advertised. *Id.* at *5-6. The

named plaintiffs, however, "continue[d] to purchase and use the [d]efendants' 'flushable' wipes" after discovering that they may not be flushable. *Id.* at *5. Accordingly, the court granted summary judgment for defendants because "the undisputed facts and record evidence demonstrate that the [p]laintiffs lack standing to create a triable issue on the third element of FDUTPA, i.e., that they have suffered 'actual damages'." *Id.* As the court explained, actual damages under FDUTPA "is the difference between the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Id.* (citing *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009)). Neither of plaintiffs' actual damages theories, however, satisfied Article III standing requirements. Their "price premium" theory—*i.e.*, that they paid more for "flushable wipes" than the cheaper non-flushable alternative—failed because "the undisputed facts and record evidence demonstrate that they continue[d] to pay the alleged 'price premium' despite their knowledge and belief that the wipes are not flushable." *Id.* at *6. And plaintiffs' "price inflation" theory—*i.e.*, the "*hypothetical* price the 'flushable' wipes should sell for if marketed as non-flushable"—was "too speculative to be the premise of an 'actual injury' under Article III." *Id.* (quoting *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1337 (S.D. Fla. 2007)). The court thus disposed of their FDUTPA claim for lack of standing.

The same analysis dooms the Named Plaintiffs' FDUTPA claim. There is no credible dispute that both Plaintiff Shields and Plaintiff Zaman knew about the alleged deception undergirding their FDUTPA claim by January 26, 2022. On January 5, 2020, both Named Plaintiffs acknowledged receipt of AUC's January 2020 Student Handbook, which explained the requirements to sit for the USMLE Step 1. SMF ¶¶ 25-29, 31, 66. Plaintiff Shields, for her part, [redacted] by January 26, 2022. *See supra* at 5-6. Worse, she admitted under penalty of perjury in her BDR application that she learned in her "third semester" that "many students were dismissed for failing the comp exam. They never even got the chance to take the USMLE Step 1." *Supra* at 6. Plaintiff Shields' [redacted]. *Id.* Nonetheless, she continued paying for AUC courses—[redacted]. *Id.* at 7. As for Plaintiff Zaman, by January 26, 2022, she had [redacted]. *See supra* at 8-9. She also had received multiple course syllabi stating that she must pass the Comp exam to pass the course, and that an inability to pass the course may result in academic

dismissal. *See supra* at 8-9. Nonetheless, Plaintiff Zaman, too, continued paying for AUC courses—[redacted]. *See supra* at 9. Any of these facts standing alone demonstrate that both Named Plaintiffs understood AUC's requirements to sit for the USMLE Step 1 by January 26, 2022, and collectively, they remove any genuine dispute about it.

The "record evidence thus demonstrate[s] that" the Named Plaintiffs "continue[d] to pay" for their AUC education "despite their knowledge" of AUC's requirements for them to take the USMLE Step 1. *Sweeney*, 2016 WL 727173, at *6; *see also supra* at 6-9. Like the *Sweeney* plaintiffs, therefore, the Named Plaintiffs "lack standing to create a triable issue . . . that they have suffered 'actual damages'" from the allegedly deceptive conduct here. *Id.* at *5. Put another way, the Named Plaintiffs "were not deprived of the benefit of [their] bargain" regarding any course purchased after January 26, 2022, so they cannot "demonstrate an injury and lack[] standing" for a FDUTPA claim premised on any such purchase. *Ramirez*, 684 F. Supp. 3d at 1258, 1260 (dismissing FDUTPA claim where plaintiff continued to purchase product after discovering the alleged misrepresentation); *see also Millennium*, 761 So. 2d at 1263-64 (no deception where the allegedly omitted information was disclosed to consumers).

## II. WITHOUT A NAMED PLAINTIFF WHO HAS AN ACTIONABLE FDUTPA CLAIM, THE COURT LACKS JURISDICTION OVER THE PUTATIVE CLASS MEMBERS' CLAIM

Summary judgment on the FDUTPA claim as to each Named Plaintiff resolves this entire putative class action. "If no named plaintiff has standing in the instant class action lawsuit, as here, the Court lacks jurisdiction to consider the putative class members'[] claim." *Weitz*, 661 F. Supp. 3d 1208, 1213 (S.D. Fla. 2023) (granting motion to dismiss); *see also See Vallina v. Mansiana Ocean Residences LLC*, 2011 WL 11674441, at *10 n.9 (S.D. Fla. June 17, 2011) ("[I]t is well-settled that when a claim fails, the class, as it relates to the claim, also fails."). Here, neither Named Plaintiff has an actionable FDUTPA claim. There is no genuine dispute that they first purchased their medical school education six years ago. *See supra* at 4-5, 8. Accordingly, any FDUTPA claim based on their initial enrollment is untimely. *See supra* at 12-13. There also is no genuine dispute that the Named Plaintiffs learned about the prerequisites for sitting for the USMLE Step 1 before January 26, 2022. *See supra* at 4-6, 8. The Named Plaintiffs thus lack standing to pursue any FDUTPA claim based on any course purchased within the limitations period. *See supra* at 13-15. Since neither "of the named class representatives possess[es] the requisite individual or associational standing to bring each of the class's legal claims," the claims

as to the class fail alongside the Named Plaintiffs' individual FDUTPA claims. *Prado-Steiman*, 221 F.3d at 1279.

## CONCLUSION

Defendants request that the Court grant their Motion for Summary Judgment, enter final judgment for Defendants, and grant Defendants such other and further relief as the Court deems appropriate.

## REQUEST FOR HEARING

In accordance with Local Rule 7.1(b)(2), Defendants respectfully request that the Court hear oral argument on their Motion to Dismiss because Defendants believe oral argument would further the Court's understanding of the grounds for dismissal with prejudice. Defendants submit that thirty minutes per side is sufficient for the parties to argue the issues presented.

Dated: November 5, 2026

Respectfully submitted,

*/s/Martin B. Goldberg*
MARTIN B. GOLDBERG
Florida Bar No. 827029
Primary: mgoldberg@lashgoldberg.com
Secondary: rdiaz@lashgoldberg.com

Lynnette Cortes Mhatre
Florida Bar No. 1052015
Primary: lmhatre@lashgoldberg.com
Secondary: obencomo@lashgoldberg.com

LASHGOLDBERG
Lash Goldberg Fineberg LLP
Miami Tower, Suite 1200
100 S.E. 2nd Street
Miami, FL 33131
Telephone: (305) 347-4040
Fax: (305) 347-4050

Sean M. Berkowitz (*pro hac vice*)
Eric R. Swibel (*pro hac vice*)
Caitlin E. Dahl (*pro hac vice*)
Katherine L. Griffitts (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700

sean.berkowitz@lw.com
eric.swibel@lw.com
caitlin.dahl@lw.com
katherine.griffitts@lw.com

*Attorneys for Defendants*